1          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLUMBIA
2

3    SARA AVIEL,
                                    Civil Action No.
4              Plaintiff,           1:25-cv-0778

5         vs.                       Washington, DC
                                    March 19, 2025
6    SERGIO GOR, et al.,
                                    11:04 a.m.
7              Defendants.
     _____/
8

9          TRANSCRIPT OF STATUS CONFERENCE
        BEFORE THE HONORABLE LOREN L. ALIKHAN
10            UNITED STATES DISTRICT JUDGE

11
     APPEARANCES:
12
     For the Plaintiff:    AARON ZELINSKY
13                         Zuckerman Spaeder, LLP
                           100 E. Pratt Street, Suite 2440
14                         Baltimore, MD 21202

15                         AARON CHOU
                           M. MOORE
16                         Zuckerman Spaeder, LLP
                           1800 M Street, NW, Suite 1000
17                         Washington, DC 20036

18
     For the Defendants:   JOHN BARDO
19                         JOHN TRUONG
                           DOJ-USAO
20                         601 D Street, NW
                           Washington, DC 20530
21

22

23   Court Reporter:       JEFF HOOK
                           Official Court Reporter
24                         U.S. District & Bankruptcy Courts
                           333 Constitution Avenue, NW
25                         Washington, DC 20001

1              **P R O C E E D I N G S**

2              **DEPUTY CLERK:**  We're now on the record for Sara

3    Aviel vs. Sergio Gor, et al.; civil action 25-cv-778.

4    Counsel, would you please come forward and note your

5    appearance for the record, beginning with the plaintiff.

6              **MR. ZELINSKY:**  Good morning, Your Honor.  Aaron

7    Zelinsky, Aaron Chou and M. Moore on behalf of Ms. Aviel who

8    is present today in the courtroom.

9              **THE COURT:**  Good morning.

10             **MR. BARDO:**  Good morning, Your Honor.  John Bardo,

11   Assistant U.S. Attorney, on behalf of the defendants.  I'm

12   joined at counsel table by civil division deputy John

13   Truong.

14             **THE COURT:**  Good morning.  And good morning,

15   Ms. Aviel.  The public line has been opened for the purpose

16   this hearing.  As the minute order noted, any broadcasting

17   or recording is forbidden and may result in contempt

18   sanctions.  And if the parties at any point need to discuss

19   anything in confidence, we will need to turn off the public

20   line.

21             So we are here today for a scheduling conference

22   on Ms. Aviel's motion for a temporary restraining order or

23   preliminary injunction.  I have some questions about this

24   schedule, but I would want to hear just briefly about where

25   we are in terms of the status of this case.  My

1    understanding is that there is a deadline today by which

2    grantees are supposed to return their funds to the IAF, and

3    I'm wondering is that some sort of drop-dead deadline that

4    requires swift action or whether there is a timeline by

5    which the parties can brief this, certainly on an expedited

6    schedule, but somewhat less expedited possibly than midnight

7    today.

8            So Mr. Zelinsky, I'll hear from you first.

9            **MR. ZELINSKY:**  Thank you, Your Honor.  Obviously

10   we're at a bit of an information disadvantage given my

11   client's inability to access this information, but it is our

12   understanding that that 14-day deadline is a firm deadline

13   today.  It is also, again, my understanding that that will

14   create, as we put in our complaint, some real irreparable

15   injury.  So we are in favor of briefing this as quickly as

16   possible.

17           In a similar situation with the ADF, Judge Leon

18   put an administrative stay into place to allow a little bit

19   of time for briefing.  We have no objection and, in fact,

20   are seeking a short administrative stay to allow for

21   briefing and the opportunity to consider these important

22   issues carefully while simultaneously balancing the

23   potential harms.

24           **THE COURT:**  And what is the irreparable harm that

25   results from this money being refunded?  Is it immediately

1    going back to the Treasury or does it remain with the IAF?

2        **MR. ZELINSKY:**  So my understanding is it's gone at

3    that point; that is, it's -- first of all, it's not entirely

4    clear because the -- our client is not able to oversee the

5    proper functioning of the IAF.  So all of this is we're

6    operating at a bit of a loss because we're looking through a

7    cloudy glass.  But my understanding is once that money is

8    gone, it's gone.  I don't think that it's going to be in a

9    position to be able to be refunded.

10        And more importantly, it's not just a matter of

11    returning funds to grantees, some of this is for work that's

12    already been performed.  It irreparably harms the

13    relationship of those grantees to the sponsoring

14    organizations and the ability to be able to carry out the

15    important strategic work of the IAF, which is to build

16    relationships with these grantees, to be able to continue to

17    foster relationships, and to promote the strategic interests

18    of the United States.  If they return those funds, even if

19    they're switched back on at a later point in time, those

20    grantees -- these are not massive organizations that are --

21    we're talking small, on-the-ground grassroots organizations

22    which is why the IAF was created the way it was.

23        And so taking the money from them, returning them,

24    even if they were to somehow get the money back later,

25    they're not going to be able to meet payroll.  Some of these

1    may in fact dissolve, and that's incredibly concerning to

2    us, and that's why we favor a short administrative stay for

3    briefing.

4          **THE COURT:**  And Ms. Aviel, if I'm pronouncing that

5    correctly --

6          **MR. ZELINSKY:**  Aviel.

7          **THE COURT:**  Aviel?

8          **MR. ZELINSKY:**  Yes, Your Honor.

9          **THE COURT:**  Ms. Aviel is the only plaintiff in

10    this case.  So how do you tie the harm to these grantees

11    back to her?

12          **MR. ZELINSKY:**  It's -- she is the only plaintiff

13    in the case, but she is also the president of the

14    organization.  And we believe that in her role as president,

15    she has an important statutory right to be able to function

16    as president.  If the -- all of the grants that she has

17    spent years working on -- and this organization has spent

18    decades building relationships, if the rug is pulled out

19    from under all the work that they have done, her ability to

20    function as president, even were she to be reinstated, is

21    severely harmed.  The job isn't the same and the

22    relationships aren't the same.

23          She has a unique role as president of this

24    organization.  We're not talking about an employee, somebody

25    who runs a subdivision, this is the president of the agency.

1    And the agency will really, in a fundamental way, cease to

2    exist in the same environment if every grantee has their

3    money all pulled and returned.

4         **THE COURT:**  And Ms. Aviel was told, I think, on

5    February 26th that she was being ousted from her position,

6    but you only brought this suit this week.  So what explains

7    the delay?

8         **MR. ZELINSKY:**  I don't want to -- I want to be

9    careful on how I phrase it.  I think we moved as quickly as

10   we could.  As the Court is well aware, there's a number of

11   legal matters that have been under litigation in this court

12   involving the actions of the executive branch.  It takes

13   time to find and secure counsel, you know, through no

14   shortcoming of the defendant's.  She also, I think, sought

15   in good faith to try to determine what the situation was.

16   And frankly, as our complaint lays out, to actually work

17   with the administration to be able to achieve the strategic

18   interests of the United States.

19         Ms. Aviel was not looking to throw sand in the

20   gears.  Ms. Aviel was not looking to lead a resistance

21   movement; she was looking to do her job and to be able to

22   run this organization, and so it took her a little bit of

23   time, time to find counsel.  I can tell you that once we

24   were retained, we moved as quickly as possible to get this

25   in front of the Court, and we moved as fast as we could.

1    There's a lot of uncertain times right now in Washington in

2    this time.  It takes people time to find lawyers.  It takes

3    them time to decide to stick with those lawyers, and then we

4    have to advise our client.

5         So I do not want the Court to read anything into

6    that delay other than a dedicated public servant who was

7    trying her best to balance doing her job with figuring out

8    how she was going to be able to bring a lawsuit.

9         **THE COURT:**  Thank you.  And was she cut from the

10   payroll on February 26th, or is she being carried on the

11   payroll through April 4th like other employees?

12        **MR. ZELINSKY:**  She's been cut from the payroll.

13        **THE COURT:**  And do you know the specific date?

14        **MR. ZELINSKY:**  I believe it's April 26th, but I

15   can check.  She's present in the courtroom today, and if I

16   have the Court's indulgence, I can make sure of it.

17        **THE COURT:**  I think you mean February 26th?

18        **MR. ZELINSKY:**  Yes, Your Honor.

19        **THE COURT:**  All right.  Yes, if you could check

20   with her, I'd appreciate that.  But stay up there for at

21   least now, I'll give you time to check with her before I

22   hear from the defendants.

23        My understanding is that all but three employees

24   have received RIF notices that contemplate their separation

25   on April 4th; is that correct?

1          **MR. ZELINSKY:**  That is our understanding.  Again,

2    we're operating at somewhat of a disadvantage because we

3    haven't -- she can't access her e-mails, she can't access

4    any information, she's not allowed in the building.  But

5    that's our understanding.

6          **THE COURT:**  And do you know who the three

7    employees are?  I don't need their names, but their

8    positions.

9          **MR. ZELINSKY:**  I believe one is the director of

10   the IT department who is still there.  I believe one is, I

11   believe, the chief operating officer.  And I'm not sure who

12   the third is, but I can, again, get that information to you

13   very shortly.

14         **THE COURT:**  All right, thank you.  I'll give you a

15   moment to speak with your client, and then I'll want to hear

16   from Mr. Bardo.

17         **MR. ZELINSKY:**  Thank you, Your Honor.

18        (Discussion off the record)

19         **MR. ZELINSKY:**  Your Honor, again, with the caveat

20   that my client is obviously operating at a substantial

21   information disadvantage, she was cut off on February 26th,

22   of that we are confident.  And our best understanding is

23   that the three employees are, who we indicated to you, the

24   IT head, who is called the chief information security

25   officer, the CISO; the second employee is the chief

1    operating officer; and the third employee is the finance

2    manager.

3              THE COURT:  And my understanding is the board sets

4    the term for the president, and she was appointed in

5    April of 2022.  When does her term expire under the board's

6    rules?

7              MR. ZELINSKY:  I believe that she -- I can

8    check -- I need to check with that for a moment, Your Honor.

9    If I could have --

10             THE COURT:  I should have given you all of my

11   questions at once, but that one I missed on my list.

12             MR. ZELINSKY:  I don't want to answer without

13   being certain.  But it's on her contract, and we can

14   definitely determine that for you very quickly.

15             THE COURT:  All right, thank you very much.

16   Mr. Bardo.

17             MR. BARDO:  Good morning, Your Honor.  Did the

18   Court have specific questions or would you like to just --

19   for me to give a rundown?

20             THE COURT:  Well, I'll start you off with what's

21   your position on a brief administrative stay?

22             MR. BARDO:  We would oppose an administrative

23   stay, Your Honor.  District courts do not have authority to

24   order administrative stays.  The two types of relief that

25   are available preliminarily are temporary restraining orders

1  and preliminary injunctions.  And the administrative stay is

2  not contemplated in any of the statutes or case laws.

3          But we are prepared to oppose plaintiff's motion

4  for a TRO and preliminary injunction, and we would ask for

5  the opportunity for -- to file a response one week from

6  today.

7          **THE COURT:**  I think we'll have to agree to

8  disagree on the Court's authority to enter administrative

9  stays.  I don't know if you've been in my courtroom in one,

10  but I certainly think that they are available to the Court

11  in order to receive full briefing from the parties.  And

12  certainly the other option is I could grant a TRO, but I

13  think that would be less favorable to your side.

14          So if you were opposing an administrative stay and

15  I were to consider not granting one, I would need your

16  response much more quickly than a week from today.  So what

17  would be the earliest you could get it to me?

18          **MR. BARDO:**  May I confer with Mr. Truong?

19          **THE COURT:**  Sure.

20      (Discussion off the record)

21          **MR. BARDO:**  Your Honor, we can get a response to

22  the TRO Friday, by the end of the day Friday, 11:59.

23          **THE COURT:**  All right.  And what is your

24  understanding of this March 19th deadline for returning the

25  funds?

1    **MR. BARDO:**  I don't have that information from my

2    client, Your Honor, but we can certainly -- I can certainly

3    follow up with them and submit additional facts, if the

4    Court would like.  We just got this case yesterday.  We

5    prepared as best we could with the information we had, but I

6    don't have the most up to date information on that.

7    **THE COURT:**  Would your client be willing to

8    represent that it would not do anything with those funds

9    that would be irrevocable?

10    **MR. BARDO:**  I don't have the authority to make

11    that agreement here today, Your Honor, but we can certainly,

12    if the Court would like, submit something today or tomorrow

13    responding to that.

14    **THE COURT:**  Well, tomorrow seems too late given

15    that the deadline is today.  So that also indicates that

16    perhaps a brief administrative stay, to just keep things on

17    ice, would be worthwhile to allow us to get to the bottom of

18    what's going on.

19    Do you have a sense of whether this March 19th

20    deadline is merely for the funds to be returned or whether

21    at that point they go back to the Treasury or is that

22    something you need further information on?

23    **MR. BARDO:**  That's something I would need further

24    information on, Your Honor.

25    **THE COURT:**  What information do you have for me?

1      **MR. BARDO:**  I don't have any information on the

2   status of the funds.  What I do have is that Ms. Aviel was

3   removed from her position as president of the foundation on

4   February 28th by Pete Marocco.  Pete -- Mr. Marocco was

5   appointed as an acting member of the board by President

6   Trump, and President Trump exercised his authority to

7   terminate the board members who are -- who were on the board

8   currently.

9           And I will note there's no for cause removal in

10  the statute that creates the board, so Mr. Marocco, as an

11  acting member of the board, had the authority to terminate

12  Ms. Aviel.

13      **THE COURT:**  And so you'd said February 28th.  Is

14  it February 28th or February 26th?

15      **MR. BARDO:**  February 28th is the date that

16  Mr. Marocco terminated Ms. Aviel.

17      **THE COURT:**  And my reading of the statute is that

18  the board controls who the president is, and that the

19  members of the board need to be appointed by the president

20  and confirmed by the Senate.

21          And so what is your basis for the authority of

22  Mr. Marocco to have displaced Ms. Aviel?

23      **MR. BARDO:**  Well, we're of the -- we would

24  certainly want the opportunity to lay this out further in

25  our brief.  But we believe that the president has the

1    inherent Article II authority to appoint acting board

2    members that these -- he has the authority to remove the

3    board members, and in the meantime somebody has to be

4    running the foundation.

5             So in the -- you know, I will note, too, that the

6    president has nominated Russell Vought to be a permanent

7    member of the board.  That was submitted to the Senate on

8    March 10th, and he's awaiting confirmation.  So this is

9    temporary.

10           **THE COURT:**  It seems like Mr. Vought is pulling

11   double duty, as is Mr. Marocco.  And there's nothing in the

12   statute about removal of board members, correct, it's that

13   they serve for terms of six years and then they stay until

14   their successor is appointed?

15           **MR. BARDO:**  That's correct, Your Honor.

16           **THE COURT:**  But you think there's an

17   extra-statutory Article II gloss on this?

18           **MR. BARDO:**  Yes, there's case law going back to

19   Humphrey's Executor that unless there's a statute that says

20   otherwise, the president has the authority to remove

21   executive branch appointees at his discretion.  And here,

22   there's no for cause removal that places guardrails on the

23   president's authority.

24           **THE COURT:**  And your current understanding of the

25   situation on the ground is that the only board member is

1    Mr. Marocco?

2         **MR. BARDO:**  That's correct, Your Honor.

3         **THE COURT:**  And what is your understanding of the

4    authority of the president to appoint him as acting?

5    Because I think this is not covered by the Vacancies Act.

6         **MR. BARDO:**  That's correct, Your Honor.  The

7    Vacancies Act has a carve out for boards and commissions.

8    And again, Your Honor, we'll go into more detail on that in

9    our filing.

10        **THE COURT:**  Well, that wasn't quite the answer.

11   So you agree that the Vacancies Act doesn't apply?

12        **MR. BARDO:**  That's correct.

13        **THE COURT:**  So what is the source of the authority

14   to appoint Mr. Marocco without the advice and consent of the

15   Senate?

16        **MR. BARDO:**  The president's authority to take care

17   that the laws be faithfully executed under Article II.

18        **THE COURT:**  All right.  Is there anything else you

19   wish to discuss today?

20        **MR. BARDO:**  Yes, Your Honor, just regarding the

21   irreparable harm -- and I know we're going to have the

22   opportunity to respond.  But this theory that being deprived

23   of a statutory right to function in a position, that's been

24   directed -- rejected by several of your colleagues,

25   including Judge Leon in the Brehm vs. Marocco case, and also

1    in the -- by the D.C. Circuit in, I believe it was, Harris

2    vs. Bessent.  Yes, that's something we are -- we anticipate

3    highlighting in our opposition, the lack of irreparable

4    harm.

5            Because even assuming for argument's sake that

6    removing the plaintiff here was improper, the remedy is just

7    reinstating her and she can go back and do her job as she

8    has been.  There's no irreparable harm for being out of a

9    job for the very brief time the Court will be considering

10   this issue.

11           **THE COURT:**  I believe Mr. Zelinsky was in the

12   circuit just yesterday arguing that precise issue before the

13   D.C. Circuit about the statutory right.  It seems like in

14   reviewing Judge Leon's order, he distinguished the board at

15   issue there with this case, because there's reason to

16   believe there might not be an agency to return to in the

17   event that Ms. Aviel is reinstated.

18           Do you have a response to that?

19           **MR. BARDO:**  That's -- our intention, Your Honor,

20   is to comply with the president's executive order which

21   makes the agency go to its core statutory functions.

22           **THE COURT:**  And what about the congressional

23   language in the appropriations that any downsizing needs to

24   be done in consultation with the appropriations committees?

25           **MR. BARDO:**  I would have to -- that's not an

1   issue, Your Honor, that I've looked into.  I'd have to

2   discuss that with my client.

3          **THE COURT:**  All right.  Anything else?

4          **MR. BARDO:**  Nothing else, Your Honor.

5          **THE COURT:**  All right.  Thank you very much,

6   Mr. Bardo.

7          Mr. Zelinsky.

8          **MR. ZELINSKY:**  Thank you, Your Honor.  At the risk

9   of breaking the old rule of never correcting the Court,

10  there is one thing that I just want to set the record clear

11  on.  Mr. Zelinsky did argue that yesterday in the D.C.

12  Circuit.  That was my brother, Nathaniel.  This is the other

13  Mr. Zelinsky.

14         **THE COURT:**  I see.  You're all out there doing the

15  same work.  Is he your twin brother?

16         **MR. ZELINSKY:**  I have a twin brother, but he is,

17  in fact, my younger brother.  My twin brother is a

18  mathematician, he's not arguing anything.

19         **THE COURT:**  So he's not in the family business,

20  okay.  Well, so you were not arguing; your brother was

21  arguing.  Good to know.

22         **MR. ZELINSKY:**  Just to be clear, as the Court

23  knows because the Court is clearly familiar with that, there

24  hasn't been a ruling issued in that matter.  What's in is

25  actually the district court ruling in favor of Ms. Harris

1    below and saying that, in fact, there could be a preliminary

2    injunction and there was irreparable harm.  So the D.C.

3    Circuit has not issued a ruling on that matter, it's issued

4    briefing on it.  But the panel has not issued, to the best

5    of my knowledge, anything.  I just think that was an

6    inadvertent misstep by my colleague.

7            I want to highlight --

8        **THE COURT:**  Do you think that in, I believe --

9    it's hard to keep these cases straight, but the Dellinger

10   case, there was the panel's -- the motions panel's rejection

11   of that argument.  But my understanding is that that is not

12   binding because it was an unpublished panel decision; is

13   that correct?

14       **MR. ZELINSKY:**  Correct, and also Dellinger is

15   distinguishable on its facts from what we have here.  So

16   part of the issue in Dellinger is that there wasn't the

17   total gutting of the organization that we see in this case.

18   So in Dellinger's case, he was being removed from his

19   position, but he was not in a situation where he was going

20   to come back to a wasteland that no longer existed.  And

21   that was part of the reliance.  We actually address -- we

22   address some of those issues and distinguish Dellinger in

23   our TRO motion.

24           The other point I wanted just to hit quickly for

25   the Court, if I may, is the argument that my friend brought

1    up at the beginning regarding the ability to remove the

2    members of the board, and then the argument regarding the

3    ability to vacancy appoint them.  We are not arguing that

4    the president lacks authority to remove members of the

5    board.  We grant that the case law allows that and that the

6    board members can be removed.

7          What the law does not allow the president to do is

8    to appoint members of the board without advice and consent

9    of the Senate, absent one important exception that is in the

10   Constitution.  And I think that that proves the weakness of

11   this -- what is frankly a staggering arrogation of executive

12   power at the cost of Congress, the notion that the president

13   may, in his residual Article II power, just do away with

14   hundreds of years of precedent and law.

15         And not only would it fly in the face of precedent

16   and make the Vacancies Act functionally meaningless --

17   because what's the point of a Vacancies Act if you can just

18   use your Article II power to put in acting people, but it

19   also undermines the fundamental structure of the

20   Constitution and the Recess Appointments Clause.  James

21   Madison understood that there would be circumstances in

22   which the president would have to put people in, and that's

23   why they created the Recess Appointments Clause.  Noel

24   Canning explores at some length the contours of this, the

25   practice over time.  And that was something the founders

1   were very aware of.  They specifically did not give the

2   president the power to do what the government is arguing

3   today.  They didn't grant him that power.  And again, we are

4   not saying he's without the power to appoint new members to

5   the board, he certainly is, but he has to follow the law.

6          **THE COURT:**  And so what is your view, if you're

7   not taking issue with Humphrey's Executor and you say that

8   the president has the power to remove the board members, do

9   they continue to serve until the confirmation of their

10  successors or is there just no board in that circumstance?

11         **MR. ZELINSKY:**  It's an interesting question.  I

12  think, in this case, the statute certainly indicates some

13  desire to have a continuing board presence, because it has

14  that language the Court alluded to earlier that they

15  continue to serve until their successors are confirmed.  At

16  this point in time, it is entirely possible there is no

17  board presence, that the president does have the power to

18  fire the board, but does not have the power to appoint

19  someone.  And, in fact, that's probably part of why Congress

20  created the statute the way they did, which is the board

21  persists until someone is confirmed.  And it's an attempt to

22  keep this important institution running in spite of the fact

23  that the executive might not have, you know, a full

24  complement ready to go.

25         The other thing I want to talk to briefly is this

1    issue of when and who fired my client.  My client was fired

2    on February 26th.  We put the e-mail in the complaint.  She

3    was fired by the PPO and by the White House.  She was not

4    fired by Mr. Marocco, she was fired -- and it's all in our

5    complaint.  That Mr. Marocco, after the fact, may have

6    attempted to paper the issue over by firing an already fired

7    government employee and inferior officer is possible, but

8    she was clearly fired on the 26th.  And even if she were

9    fired by Mr. Marocco again on the 28th, the double firing,

10    in that circumstance, Mr. Marocco, as we've just discussed,

11    is clearly ultra vires.

12        **THE COURT:**  And just going back to the question

13    before.  Even if there's no board, at this point your client

14    would still be the rightful president because she had a

15    term.  Do you know when that term ends?

16        **MR. ZELINSKY:**  If I could get the Court's

17    indulgence, I can find that out very quickly.

18        **THE COURT:**  Thank you.

19        (Discussion off the record)

20        **MR. ZELINSKY:**  Your Honor, my understanding is

21    that the president serves at the pleasure of the board and

22    does not have a term.  So, again, we concede that she is

23    fireable by the board at will.  We concede that the

24    president can remove the board.  We just believe that the

25    president needs to follow the law, and the law says that

1    there cannot be an interim vacancy appointment made to that

2    board and that only the board can fire the president of the

3    IAF; the president of the United States cannot.

4         **THE COURT:**  So the president can fire board

5    members, but the president cannot directly fire the

6    president?

7         **MR. ZELINSKY:**  Correct, and that's Free Enterprise

8    Fund.  There's -- and a number of other cases that we cite

9    in our brief.  But the holding in Free Enterprise Fund is

10   you can't have a double for cause removal, but you can have

11   a situation where the president is able to fire the board.

12   And then the inferior officer -- the simple way they put it

13   is the power to hire is the power to fire.  And so that

14   allows -- and there are -- which we can explore more in our

15   briefing.  There are important legislative reasons for that,

16   particularly in the space of foreign aid agencies and for

17   continuity purposes, and that's the law across the

18   government.

19         **THE COURT:**  All right, thank you very much.

20         **MR. ZELINSKY:**  Thank you.

21         **THE COURT:**  So the plaintiffs think they are

22   lacking information.  I think I'm also lacking information,

23   Mr. Bardo, about what your client intends to do and at what

24   point they have crossed a line that cannot be undone.  I

25   take your point that if we don't think that Ms. Aviel has a

1    statutory duty to hold the position, that there might not be

2    irreparable harm in the event that she could receive

3    backpay.  But if there's no agency to go back to, I think

4    this is a very different situation than what we see in

5    Dellinger or what we saw in Judge Leon's opinion.

6            I think Judge Leon distinguished the IAF from the

7    agency at issue there because there weren't the types of

8    allegations that the agency was going to cease to exist.

9    And I believe that was because the defendants made

10   representations that they would maintain at least a board

11   member and some of the grant programs, and we don't have

12   those types of representations here.  In the absence of

13   those kinds of representations, it's very difficult for me

14   to even make a preliminary assessment at this stage.

15           And, of course, we have the plaintiffs claiming

16   that the irreparable harm sort of crosses the rubicon

17   tonight warranting either an administrative stay or a TRO.

18   And while you maintain there's not irreparable harm, I think

19   in the absence of declarations or even representations about

20   what your client intends to do, it comes up short.

21           So what do you think is the earliest you'd be able

22   to get me either a declaration or at least your

23   representations about what your client's position is as it

24   applies to this March 19th deadline and any continued

25   operations of the program beyond March 19th and beyond

1    April 4th?

2            **MR. BARDO:**  Your Honor, we can contact our client

3    right now and get an answer as soon as possible.

4            **THE COURT:**  All right.  I'm going to ask that you

5    file something on the docket -- well, I guess, I suppose, is

6    your client available now by phone?

7            **MR. BARDO:**  We can try, Your Honor.

8            **THE COURT:**  Why doesn't the Court take a brief

9    recess until 11:45 to allow you to contact your client.  And

10   if you're unable to get them, then I'll set a deadline this

11   afternoon for any sort of declaration.

12           **MR. BARDO:**  Understood, Your Honor.  11:45?

13           **THE COURT:**  Yes, so we'll reconvene in about 15

14   minutes.

15           **MR. BARDO:**  Sounds good.  Thank you, Your Honor.

16           **THE COURT:**  All right, thank you.

17       (Recess taken at 11:33 a.m.)

18       (Back on the record at 11:47 a.m.)

19           **THE COURT:**  Mr. Bardo, were you able to get ahold

20   of your client?

21           **MR. BARDO:**  I was, Your Honor.

22           **THE COURT:**  And what representations do you have

23   for me?

24           **MR. BARDO:**  So the deadline today is not a hard

25   deadline.  They're willing to extend the deadline to return

1    the funds.  The funds will stay with -- my understanding is

2    they will stay with IAF.  And there is no plan to dismantle

3    IAF.  In addition to Mr. Vought, the president has also

4    nominated a gentleman by the name of Kenneth Jackson as a

5    board member.  And there has also -- Mr. Marocco has since

6    appointed a new president of the foundation.  So the plan is

7    not to dismantle the agency.

8            **THE COURT:**  And this new president is willing to

9    extend the deadline until when?

10           **MR. BARDO:**  I mean, we're willing to extend it

11   until the Court rules on the PI.

12           **THE COURT:**  And so you would voluntarily maintain

13   the current status quo?

14           **MR. BARDO:**  We're not going to ask for the funds

15   back in terms of -- well, when Your Honor asked about the

16   current status quo, could you please specify?

17           **THE COURT:**  So I guess I'm just trying to figure

18   out, right now the kind of state of affairs is the money is

19   with the grantees to whom it's been disbursed?

20           **MR. BARDO:**  Right.

21           **THE COURT:**  And so you are committing to not

22   asking for it back?

23           **MR. BARDO:**  We're not -- yes, we're willing to

24   extend the deadline to return it until we get a ruling on

25   the preliminary injunction.

1      **THE COURT:**  And then for the grantees that have

2  returned it, you are committed to not doing anything with

3  that money that would prevent it from being redistributed

4  back to the grantees?

5      **MR. BARDO:**  It's staying with the foundation.

6      **THE COURT:**  And what about this April 4th RIF

7  deadline?

8      **MR. BARDO:**  I'm sorry, April 4th?

9      **THE COURT:**  I believe there's -- all of the other

10  employees, save for three, are supposed to be RIFed as of

11  April the 4th.

12      **MR. BARDO:**  May I confer?

13      **THE COURT:**  Of course.

14    (Discussion off the record)

15      **MR. BARDO:**  Your Honor, with respect, the RIF is

16  beyond the scope of this lawsuit.  The TRO is specifically

17  regarding the plaintiff and her efforts to try to be

18  returned as president of the foundation, so we don't have

19  any information about the RIF at this time.

20      **THE COURT:**  All right, thank you very much.

21  Anything else to add?

22      **MR. BARDO:**  Nothing else, Your Honor.

23      **THE COURT:**  All right.  Mr. Zelinsky.

24      **MR. ZELINSKY:**  Your Honor, two quick things.  The

25  first is that if the Court does not grant the administrative

1  stay, we would ask, one, that the government be ordered to

2  notify grantees that they do not need to return the funds.

3  The concern is that a number of these organizations have

4  already been ordered to return the funds, and so the fact

5  that the government won't seek to collect them won't help.

6  We need an immediate notification to those grantees that

7  they don't need to return the funds.

8        We also believe that the funds that have already

9  been returned should be given back to the grantees, because

10  it's important to understand the nature of the harm here.

11  These are not, as I said before, large organizations.  These

12  are small NGOs and other organizations on the ground that

13  are really day-to-day on their budgets.  And the return of

14  these funds, and frankly the relationships that IAF seeks to

15  build in the region over time, are severely harmed when -- a

16  lot of these, I think they're going to go bust, that's our

17  concern.  And to be clear, the reason that we're so

18  concerned about that is because that's the functioning of

19  the IAF, that's the job that it's supposed to do.

20        So one, we would ask the government be ordered to

21  notify all grantees that funds do not need to be returned;

22  and two, that funds that have been returned pursuant to this

23  order, that agents -- that those organizations should not be

24  penalized and go under merely because they complied early

25  with a law that's now been stayed -- with an order that's

1    now been stayed.

2              The other thing that I wanted just --

3              **THE COURT:**  Well, before you move on, do you know

4    how many grantees have returned their funds?

5              **MR. ZELINSKY:**  I have no idea because my client

6    hasn't been provided any access to the system.  So we do not

7    at this point know that number.

8              **THE COURT:**  All right, thank you.

9              **MR. ZELINSKY:**  The other thing that I just want to

10   underscore one more time is the -- I think my colleague just

11   said -- two quick things, one, that the RIF is beyond the

12   scope of this case.  I think the RIF goes to the core of

13   this case, because my colleague got up and said that the IAF

14   isn't being dismantled, and then he got up and said but

15   we're not going to talk about that every employee, save

16   three of them, is going to be RIFed.  That's the issue,

17   right, that's the dismantlement at the core of what's going

18   on.  It's twofold, it's sucking all the money out,

19   demolishing all of the work for decades that has been done

20   to build relationships with grantees, and then to get rid of

21   all of the people that do the work.

22              So even if my client walked back in and had no one

23   to do accounting, had no one to do budgeting, had no one to

24   do disbursement, she would be a captain without a ship at

25   that point.  And so the RIF is very much at the heartland of

1    what is going on here.  I also want --

2          THE COURT:  I'm just trying to -- so Mr. Marocco

3    ordered the RIF after he had made himself a board member

4    or --

5          MR. ZELINSKY:  My understanding is it's after he

6    made himself a board member he made himself president, and

7    then after he made himself president he ordered the RIF.

8          THE COURT:  All right.  And so your view is that

9    the RIF was part of the ultra vires actions.  And then what

10   is your client's standing to challenge that?

11         MR. ZELINSKY:  It's the same -- first of all, she

12   is the president, so someone is actually taking action in

13   her name.  You know, we could file a Rule 15 under quo

14   warranto for that action.  She's the rightful president of

15   the IAF, so there is right now someone taking ultra vires

16   action in her name.  And it's hard to think of a more

17   cognizable harm than an inferior officer of the United

18   States that has a pretender gutting her organization when

19   she should be in place.  That -- to me, that's the harm

20   right there, right.

21         The other issue is -- that I just want to speak

22   about for a moment, is the notion that there's a new

23   president of the IAF that has now been appointed.  First of

24   all, it's the first we've heard of this.  Second of all,

25   obviously that president, whoever it may be, if it's not

1    Mr. Marocco -- and we don't know who it is at this point,

2    has been appointed ultra vires by a board that doesn't have

3    any power, by Mr. Marocco.  So the fact that he's got

4    another name in there isn't an indication of very much of

5    anything and doesn't change the legal nature of the fact

6    that he didn't have the power to do it in the first place.

7            But at the end of the day, this agency is being

8    destroyed, there's no question about that.  Judge Leon talks

9    about -- in his opinion, he explicitly says this isn't --

10   the ADF isn't like the IAF in terms of what's happening.  I

11   should say, we have learned and have reason to believe that

12   actually after Judge Leon's opinion, that the same thing is

13   happening to the ADF right now; that while Judge Leon ruled

14   it wasn't sufficiently imminent, that there are now people

15   being placed on administrative leave at the ADF.

16           But talking about my client for a moment, it is a

17   fact that this agency has been reduced to ash.  That is a

18   fact.  And the ability to rebuild it is dwindling every day

19   and every minute.  We don't think that the government should

20   be allowed to run the clock out and destroy the agency in

21   clear contravention of Congress and the law.

22           **THE COURT:**  All right, thank you very much.

23   Mr. Bardo, how do you feel about the plaintiff's proposal

24   that you notify grantees that the deadline has been

25   extended?  I'll ask you that first, and then we can go to

1    the returning of the funds.

2          **MR. BARDO:**  Yes, we're willing to send out a

3    notice to the grantees.

4          **THE COURT:**  And then what about returning the

5    funds to grantees who have sent them back?

6          **MR. BARDO:**  That we cannot agree to.  That would

7    be an injunction, and it would be altering the status quo.

8    So to the extent there are grantees that haven't returned

9    the funds yet, we're willing to notify them that the

10   deadline's been extended.  But we're not going to agree to

11   give back the funds that have been given back.

12         **THE COURT:**  It wouldn't be an injunction if you

13   voluntarily did it.  Do you know how many grantees have

14   returned the funds?

15         **MR. BARDO:**  I don't have that information, Your

16   Honor.

17         **THE COURT:**  Do you know how many grantees there

18   are total?

19         **MR. BARDO:**  I don't know that, Your Honor.

20         **THE COURT:**  So I like when parties are willing to

21   work together, which you seem to have been able to do.  So I

22   am going to take you at your word that you will extend the

23   deadline until I rule on the preliminary injunction, and

24   that you will notify by the close of business today the

25   grantees that they -- the deadline has been extended.  I

1    would also like you, by 5:00 p.m., to get me a filing with a

2    declaration of how many grantees there are total, how many

3    have returned their funds.  And I will defer on making a

4    decision about whether those funds need to be just held by

5    the IAF -- which you've already, I believe, represented that

6    you would do; is that correct?

7            **MR. BARDO:**  Yes.

8            **THE COURT:**  Or whether they need to be

9    redistributed.  And so if you could get that to me by

10   5:00 p.m., then I can get something out shortly thereafter.

11           **MR. BARDO:**  Understood, Your Honor.  And in terms

12   of a deadline to oppose their --

13           **THE COURT:**  Well, so that's -- so are you

14   satisfied with that, Mr. Zelinsky?

15           **MR. ZELINSKY:**  Your Honor, we'll take what we can

16   get.  Obviously we'd like Ms. Aviel back, but I think that

17   that -- if we have a quick and expedited -- not a week from

18   now, but we move very quickly on the TRO, then we can live

19   with that.

20           **THE COURT:**  So if we could look at our calendars.

21   When would you like to file your opposition?

22           **MR. BARDO:**  Ideally we would like a week.

23           **THE COURT:**  I'd be willing to give you a week if

24   you'd be willing to give the funds back.

25           **MR. BARDO:**  I can't agree to that today, Your

1    Honor, but we will extend the deadline for grantees that

2    haven't given the funds back.

3         **THE COURT:**  I'm going to propose two alternate

4    schedules, because if it turns out that most of the grantees

5    have not returned the funds, I think that, Mr. Zelinsky, you

6    would perhaps be amenable to giving them more than a few

7    days?

8         **MR. ZELINSKY:**  Yeah -- yes, Your Honor.  I mean,

9    the word most gives us concern, because some of these are

10   very small organizations that are going to go under.  And

11   even if only -- we'd want to see what the numbers look like

12   and how many have actually returned the funds.  But I am

13   inclined to agree for a little more time in the interest of

14   comity and trying to work together on this matter.

15        **THE COURT:**  I agree.  So actually then, Mr. Bardo,

16   why don't you get me that declaration by 4:00 p.m., and

17   plaintiffs, if you could file a response to that by

18   5:30 p.m.  And based on that, we can decide which of these

19   two proposed schedules to go with.  If the -- I would

20   certainly hope the grantees aren't anticipatorily complying

21   when they know there's litigation going on.

22        So if there are not a lot of grantees or grant

23   monies that are affected -- and I hope in that filing you

24   can also tell me what number of funds have been returned by

25   which organizations, I'm inclined to give you the week in

1    which case I would set your deadline as Wednesday,

2    March 26th, and I would ask for a reply by April 1st.  I

3    know that's not giving the full week to the plaintiffs, but

4    given your representation that the RIF is part of this case,

5    it seems like we would want to have a hearing on the matter

6    before the 4th.

7         MR. ZELINSKY:  Your Honor, we're willing to do it

8    even faster, if the Court can accommodate; that is, we could

9    do it -- on the 31st, we could get our reply in, if that

10   helps the Court to move faster.  We think it's an important

11   matter.

12        THE COURT:  All right, thank you.  So then our

13   first proposed schedule then will be the opposition to the

14   TRO and PI coming in on the 26th, and the reply coming in on

15   the 31st.  My inclination would be, if we can get this

16   scheduled, to consolidate the TRO and the PI and just hear

17   it altogether.  I assume the parties would have no objection

18   to that?

19        MR. ZELINSKY:  No, Your Honor.

20        MR. BARDO:  No, Your Honor.

21        THE COURT:  All right, thank you.  If it turns out

22   that a lot of the funds are being held up and your client is

23   unwilling to return them, then I think we would have to go

24   with a schedule wherein I would get the government's

25   opposition by end of day on the 21st, and any reply on end

1    of day of the 24th at which point we would schedule a

2    hearing sometime the week of the 24th.

3            If we go with our longer schedule -- which I think

4    would be more advantageous for all of us, I would anticipate

5    holding a hearing on possibly April 2nd or 3rd.  If we need

6    to have the hearing next week, that gets a little bit

7    trickier because the Court has a few things on the calendar.

8    But I think the Court would probably go with a hearing

9    either on the 26th or the 27th.

10           **MR. BARDO:**  Understood, Your Honor.  Will the

11   Court be issuing a minute order that I can share with my

12   client?

13           **THE COURT:**  Yes, we will get a minute order with

14   what we're looking for in the declaration, with the

15   deadlines, and we'll also sketch out these proposed

16   schedules.  And then I'll just wait to hear with your

17   declaration at 4:00 p.m. if you could tell me what you think

18   the appropriate schedule is, and then in your response if

19   you could tell me which adventure you would like to choose.

20           Is there anything else that the plaintiffs would

21   like to cover today, Mr. Zelinsky?

22           **MR. ZELINSKY:**  Nothing further, Your Honor.

23           **THE COURT:**  Anything else from --

24           **MR. ZELINSKY:**  I'm sorry, Your Honor, one brief

25   housekeeping issue.  We have motions for DDC pending, but we

1    just wanted to get the Court's permission that our counsel

2    that is a member of the bar that pro hac'd us in need not

3    attend future proceedings, that myself and Mr. Chou can

4    attend without Mr. Moore's presence?

5        **THE COURT:**  Yes, I believe I've granted both of

6    your pro hac motions; is that correct?

7        **MR. ZELINSKY:**  You have, Your Honor.

8        **THE COURT:**  Yes, then you don't need to have a

9    representative with you.

10        **MR. ZELINSKY:**  Thank you.

11        **MR. BARDO:**  Nothing from the government, Your

12    Honor.

13        **THE COURT:**  All right, thank you very much.  I

14    hope you're able to work things out and we can go with our

15    longer schedule.  But in any event, I will be on the lookout

16    for your filings today, I'll get that minute order out

17    shortly, and we will reconvene once this thing is fully

18    briefed.  Thank you very much.

19        (Proceedings adjourned at 12:02 p.m.)

20

21

22

23

24

25

1                    **C E R T I F I C A T E**

2

3              I, **Jeff M. Hook, Official Court Reporter,**

4    certify that the foregoing is a true and correct transcript

5    of the record of proceedings in the above-entitled matter.

6

7

8

9        __March 19, 2025__              _____

10              **DATE**                      **Jeff M. Hook**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**DEPUTY CLERK:**
**[1]**   2/2
**MR. BARDO:**
**[47]**
**MR. ZELINSKY:**
**[38]**
**THE COURT:**
**[83]**

**0**

**0778 [1]**   1/4

**1**

**100 [1]**   1/13
**1000 [1]**   1/16
**10th [1]**   13/8
**11:04 [1]**   1/6
**11:33 a.m [1]**
23/17
**11:45 [1]**
23/12
**11:45 to [1]**
23/9
**11:47 a.m [1]**
23/18
**11:59 [1]**
10/22
**12:02 p.m [1]**
35/19
**14-day [1]**
3/12
**15 [2]**   23/13
28/13
**1800 [1]**   1/16
**19 [1]**   1/5
**19th [4]**   10/24
11/19 22/24
22/25
**1:25-cv-0778**
**[1]**   1/4
**1st [1]**   33/2

**2**

**20001 [1]**   1/25
**20036 [1]**   1/17
**2022 [1]**   9/5
**2025 [1]**   1/5
**20530 [1]**   1/20
**21202 [1]**   1/14
**21st [1]**   33/25
**2440 [1]**   1/13
**24th [2]**   34/1
34/2
**25-cv-778 [1]**
2/3
**26th [11]**   6/5
7/10 7/14 7/17

8/21 12/14
20/2 20/8 33/2
33/14 34/9
**27th [1]**   34/9
**28th [5]**   12/4
12/13 12/14
12/15 20/9
**2nd [1]**   34/5

**3**

**31st [2]**   33/9
33/15
**333 [1]**   1/24
**3rd [1]**   34/5

**4**

**4:00 p.m [2]**
32/16 34/17
**4th [7]**   7/11
7/25 23/1 25/6
25/8 25/11
33/6

**5**

**5:00 p.m [2]**
31/1 31/10
**5:30 p.m [1]**
32/18

**6**

**601 [1]**   1/20

**7**

**778 [1]**   2/3

**A**

**a.m [3]**   1/6
23/17 23/18
**AARON [4]**   1/12
1/15 2/6 2/7
**ability [5]**
4/14 5/19 18/1
18/3 29/18
**able [14]**   4/4
4/9 4/14 4/16
4/25 5/15 6/17
6/21 7/8 21/11
22/21 23/19
30/21 35/14
**above [1]**   36/5
**above-entitled**
**[1]**   36/5
**absence [2]**
22/12 22/19
**absent [1]**
18/9
**access [4]**
3/11 8/3 8/3
27/6

accommodate [1]
33/8
accounting [1]
27/23
achieve [1]
6/17
across [1]
21/17
**Act [5]**   14/5
14/7 14/11
18/16 18/17
acting [5]
12/5 12/11
13/1 14/4
18/18
action [6]   1/3
2/3 3/4 28/12
28/14 28/16
actions [2]
6/12 28/9
actually [7]
6/16 16/25
17/21 28/12
29/12 32/12
32/15
add [1]   25/21
addition [1]
24/3
additional [1]
11/3
address [2]
17/21 17/22
ADF [4]   3/17
29/10 29/13
29/15
adjourned [1]
35/19
administration
[1]   6/17
administrative
[13]   3/18
3/20 5/2 9/21
9/22 9/24 10/1
10/8 10/14
11/16 22/17
25/25 29/15
advantageous
[1]   34/4
adventure [1]
34/19
advice [2]
14/14 18/8
advise [1]   7/4
affairs [1]
24/18
affected [1]
32/23
afternoon [1]

23/11
again [8]   3/13
8/1 8/12 8/19
14/8 19/3 20/9
20/22
agencies [1]
21/16
agency [11]
5/25 6/1 15/16
15/21 22/3
22/7 22/8 24/7
29/7 29/17
29/20
agents [1]
26/23
agree [7]   10/7
14/11 30/6
30/10 31/25
32/13 32/15
agreement [1]
11/11
ahold [1]
23/19
aid [1]   21/16
al [2]   1/6 2/3
ALIKHAN [1]
1/9
allegations [1]
22/8
allow [5]   3/18
3/20 11/17
18/7 23/9
allowed [2]
8/4 29/20
allows [2]
18/5 21/14
alluded [1]
19/14
altering [1]
30/7
alternate [1]
32/3
altogether [1]
33/17
amenable [1]
32/6
anticipate [2]
15/2 34/4
anticipatorily
[1]   32/20
appearance [1]
2/5
APPEARANCES [1]
1/11
applies [1]
22/24
apply [1]
14/11

appoint [7]
13/1 14/4
14/14 18/3
18/8 19/4
19/18
appointed [7]
9/4 12/5 12/19
13/14 24/6
28/23 29/2
appointees [1]
13/21
appointment [1]
21/1
Appointments
[2]   18/20
18/23
appreciate [1]
7/20
appropriate [1]
34/18
appropriations
[2]   15/23
15/24
April [10]
7/11 7/14 7/25
9/5 23/1 25/6
25/8 25/11
33/2 34/5
April 1st [1]
33/2
April 26th [1]
7/14
April 2nd [1]
34/5
April 4th [5]
7/11 7/25 23/1
25/6 25/8
April of [1]
9/5
April the [1]
25/11
argue [1]
16/11
arguing [6]
15/12 16/18
16/20 16/21
18/3 19/2
argument [3]
17/11 17/25
18/2
argument's [1]
15/5
arrogation [1]
18/11
Article [5]
13/1 13/17
14/17 18/13
18/18

**A**

ash [1]    29/17
assessment [1]
  22/14
Assistant [1]
  2/11
assume [1]
  33/17
assuming [1]
  15/5
attempt [1]
  19/21
attempted [1]
  20/6
attend [2]
  35/3 35/4
Attorney [1]
  2/11
authority [14]
  9/23 10/8
  11/10 12/6
  12/11 12/21
  13/1 13/2
  13/20 13/23
  14/4 14/13
  14/16 18/4
available [3]
  9/25 10/10
  23/6
Avenue [1]
  1/24
AVIEL [18]    1/3
  2/3 2/7 2/15
  5/4 5/6 5/7
  5/9 6/4 6/19
  6/20 12/2
  12/12 12/16
  12/22 15/17
  21/25 31/16
Aviel's [1]
  2/22
awaiting [1]
  13/8
aware [2]    6/10
  19/1
away [1]    18/13

**B**

back [22]    4/1
  4/19 4/24 5/11
  11/21 13/18
  15/7 17/20
  20/12 22/3
  23/18 24/15
  24/22 25/4
  26/9 27/22
  30/5 30/11
  30/11 31/16

31/24 32/2
backpay [1]
  22/3
balance [1]
  7/7
balancing [1]
  3/22
Baltimore [1]
  1/14
Bankruptcy [1]
  1/24
bar [1]    35/2
BARDO [9]    1/18
  2/10 8/16 9/16
  16/6 21/23
  23/19 29/23
  32/15
based [1]
  32/18
basis [1]
  12/21
beginning [2]
  2/5 18/1
behalf [2]    2/7
  2/11
below [1]    17/1
Bessent [1]
  15/2
best [4]    7/7
  8/22 11/5 17/4
beyond [4]
  22/25 22/25
  25/16 27/11
binding [1]
  17/12
bit [5]    3/10
  3/18 4/6 6/22
  34/6
board [38]
board's [1]
  9/5
boards [1]
  14/7
both [1]    35/5
bottom [1]
  11/17
branch [2]
  6/12 13/21
breaking [1]
  16/9
Brehm [1]
  14/25
brief [8]    3/5
  9/21 11/16
  12/25 15/9
  21/9 23/8
  34/24
briefed [1]

35/18
briefing [7]
  3/15 3/19 3/21
  5/3 10/11 17/4
  21/15
briefly [2]
  2/24 19/25
bring [1]    7/8
broadcasting
  [1]    2/16
brother [6]
  16/12 16/15
  16/16 16/17
  16/17 16/20
brought [2]
  6/6 17/25
budgeting [1]
  27/23
budgets [1]
  26/13
build [3]    4/15
  26/15 27/20
building [2]
  5/18 8/4
business [2]
  16/19 30/24
bust [1]    26/16

**C**

calendar [1]
  34/7
calendars [1]
  31/20
called [1]
  8/24
can [33]    3/5
  6/23 7/15 7/16
  8/12 9/7 9/13
  10/21 11/2
  11/2 11/11
  15/7 18/6
  18/17 20/17
  20/24 21/2
  21/4 21/10
  21/14 23/2
  23/7 29/25
  31/10 31/15
  31/18 32/18
  32/24 33/8
  33/15 34/11
  35/3 35/14
Canning [1]
  18/24
captain [1]
  27/24
care [1]    14/16
careful [1]
  6/9

carefully [1]
  3/22
carried [1]
  7/10
carry [1]    4/14
carve [1]    14/7
case [17]    2/25
  5/10 5/13 10/2
  11/4 13/18
  14/25 15/15
  17/10 17/17
  17/18 18/5
  19/12 27/12
  27/13 33/1
  33/4
cases [2]    17/9
  21/8
cause [3]    12/9
  13/22 21/10
caveat [1]
  8/19
cease [2]    6/1
  22/8
certain [1]
  9/13
certainly [10]
  3/5 10/10
  10/12 11/2
  11/2 11/11
  12/24 19/5
  19/12 32/20
certify [1]
  36/4
challenge [1]
  28/10
change [1]
  29/5
check [5]    7/15
  7/19 7/21 9/8
  9/8
chief [3]    8/11
  8/24 8/25
choose [1]
  34/19
CHOU [3]    1/15
  2/7 35/3
circuit [5]
  15/1 15/12
  15/13 16/12
  17/3
circumstance
  [2]    19/10
  20/10
circumstances
  [1]    18/21
CISO [1]    8/25
cite [1]    21/8
civil [3]    1/3

2/3 2/12
claiming [1]
  22/15
Clause [2]
  18/20 18/23
clear [5]    4/4
  16/10 16/22
  26/17 29/21
clearly [3]
  16/23 20/8
  20/11
client [21]
  4/4 7/4 8/15
  8/20 11/2 11/7
  16/2 20/1 20/1
  20/13 21/23
  22/20 23/2
  23/6 23/9
  23/20 27/5
  27/22 29/16
  33/22 34/12
client's [3]
  3/11 22/23
  28/10
clock [1]
  29/20
close [1]
  30/24
cloudy [1]    4/7
cognizable [1]
  28/17
colleague [3]
  17/6 27/10
  27/13
colleagues [1]
  14/24
collect [1]
  26/5
COLUMBIA [1]
  1/1
coming [2]
  33/14 33/14
comity [1]
  32/14
commissions [1]
  14/7
committed [1]
  25/2
committees [1]
  15/24
committing [1]
  24/21
complaint [4]
  3/14 6/16 20/2
  20/5
complement [1]
  19/24
complied [1]

**C**

complied... [1]
26/24
comply [1]
15/20
complying [1]
32/20
concede [2]
20/22 20/23
concern [3]
26/3 26/17
32/9
concerned [1]
26/18
concerning [1]
5/1
confer [2]
10/18 25/12
conference [2]
1/9 2/21
confidence [1]
2/19
confident [1]
8/22
confirmation
[2]    13/8 19/9
confirmed [3]
12/20 19/15
19/21
Congress [3]
18/12 19/19
29/21
congressional
[1]    15/22
consent [2]
14/14 18/8
consider [2]
3/21 10/15
considering [1]
15/9
consolidate [1]
33/16
Constitution
[3]    1/24
18/10 18/20
consultation
[1]    15/24
contact [2]
23/2 23/9
contemplate [1]
7/24
contemplated
[1]    10/2
contempt [1]
2/17
continue [3]
4/16 19/9

19/15
continued [1]
22/24
continuing [1]
19/13
continuity [1]
21/17
contours [1]
18/24
contract [1]
9/13
contravention
[1]    29/21
controls [1]
12/18
core [3]    15/21
27/12 27/17
correcting [1]
16/9
correctly [1]
5/5
cost [1]    18/12
counsel [5]
2/4 2/12 6/13
6/23 35/1
course [2]
22/15 25/13
court [27]    1/1
1/23 1/23 6/10
6/11 6/25 7/5
9/18 10/10
11/4 11/12
15/9 16/9
16/22 16/23
16/25 17/25
19/14 23/8
24/11 25/25
33/8 33/10
34/7 34/8
34/11 36/3
Court's [4]
7/16 10/8
20/16 35/1
courtroom [3]
2/8 7/15 10/9
courts [2]
1/24 9/23
cover [1]
34/21
covered [1]
14/5
create [1]
3/14
created [3]
4/22 18/23
19/20
creates [1]
12/10

crossed [1]
21/24
crosses [1]
22/16
current [3]
13/24 24/13
24/16
currently [1]
12/8
cut [3]    7/9
7/12 8/21
cv [2]    1/4 2/3

**D**

D.C [4]    15/1
15/13 16/11
17/2
date [4]    7/13
11/6 12/15
36/10
day [8]    3/12
10/22 26/13
26/13 29/7
29/18 33/25
34/1
days [1]    32/7
DC [4]    1/5
1/17 1/20 1/25
DDC [1]    34/25
dead [1]    3/3
deadline [21]
3/1 3/3 3/12
3/12 10/24
11/15 11/20
22/24 23/10
23/24 23/25
23/25 24/9
24/24 25/7
29/24 30/23
30/25 31/12
32/1 33/1
deadline's [1]
30/10
deadlines [1]
34/15
decades [2]
5/18 27/19
decide [2]    7/3
32/18
decision [2]
17/12 31/4
declaration [6]
22/22 23/11
31/2 32/16
34/14 34/17
declarations
[1]    22/19
dedicated [1]

7/6
defendant's [1]
6/14
defendants [5]
1/7 1/18 2/11
7/22 22/9
defer [1]    31/3
definitely [1]
9/14
delay [2]    6/7
7/6
Dellinger [5]
17/9 17/14
17/16 17/22
22/5
Dellinger's [1]
17/18
demolishing [1]
27/19
department [1]
8/10
deprived [1]
14/22
deputy [1]
2/12
desire [1]
19/13
destroy [1]
29/20
destroyed [1]
29/8
detail [1]
14/8
determine [2]
6/15 9/14
different [1]
22/4
difficult [1]
22/13
directed [1]
14/24
directly [1]
21/5
director [1]
8/9
disadvantage
[3]    3/10 8/2
8/21
disagree [1]
10/8
disbursed [1]
24/19
disbursement
[1]    27/24
discretion [1]
13/21
discuss [3]
2/18 14/19

16/2
discussed [1]
20/10
Discussion [4]
8/18 10/20
20/19 25/14
dismantle [2]
24/2 24/7
dismantled [1]
27/14
dismantlement
[1]    27/17
displaced [1]
12/22
dissolve [1]
5/1
distinguish [1]
17/22
distinguishable
[1]    17/15
distinguished
[2]    15/14
22/6
district [6]
1/1 1/1 1/10
1/24 9/23
16/25
division [1]
2/12
docket [1]
23/5
DOJ [1]    1/19
DOJ-USAO [1]
1/19
done [3]    5/19
15/24 27/19
double [3]
13/11 20/9
21/10
downsizing [1]
15/23
drop [1]    3/3
drop-dead [1]
3/3
duty [2]    13/11
22/1
dwindling [1]
29/18

**E**

e-mail [1]
20/2
e-mails [1]
8/3
earlier [1]
19/14
earliest [2]
10/17 22/21

**E**

**early [1]**
26/24
**efforts [1]**
25/17
**either [3]**
22/17 22/22
34/9
**else [7]**    14/18
16/3 16/4
25/21 25/22
34/20 34/23
**employee [5]**
5/24 8/25 9/1
20/7 27/15
**employees [5]**
7/11 7/23 8/7
8/23 25/10
**end [4]**    10/22
29/7 33/25
33/25
**ends [1]**    20/15
**enter [1]**    10/8
**Enterprise [2]**
21/7 21/9
**entirely [2]**
4/3 19/16
**entitled [1]**
36/5
**environment [1]**
6/2
**et [2]**    1/6 2/3
**even [11]**    4/18
4/24 5/20 15/5
20/8 20/13
22/14 22/19
27/22 32/11
33/8
**event [3]**
15/17 22/2
35/15
**exception [1]**
18/9
**executed [1]**
14/17
**executive [5]**
6/12 13/21
15/20 18/11
19/23
**Executor [2]**
13/19 19/7
**exercised [1]**
12/6
**exist [2]**    6/2
22/8
**existed [1]**
17/20

**expedited [3]**
3/5 3/6 31/17
**expire [1]**    9/5
**explains [1]**
6/6
**explicitly [1]**
29/9
**explore [1]**
21/14
**explores [1]**
18/24
**extend [6]**
23/25 24/9
24/10 24/24
30/22 32/1
**extended [3]**
29/25 30/10
30/25
**extent [1]**
30/8
**extra [1]**
13/17
**extra-statutory**
**[1]**    13/17

**F**

**face [1]**    18/15
**fact [12]**    3/19
5/1 16/17 17/1
19/19 19/22
20/5 26/4 29/3
29/5 29/17
29/18
**facts [2]**    11/3
17/15
**faith [1]**    6/15
**faithfully [1]**
14/17
**familiar [1]**
16/23
**family [1]**
16/19
**fast [1]**    6/25
**faster [2]**
33/8 33/10
**favor [3]**    3/15
5/2 16/25
**favorable [1]**
10/13
**February [10]**
6/5 7/10 7/17
8/21 12/4
12/13 12/14
12/14 12/15
20/2
**February 26th**
**[5]**    7/10 7/17
8/21 12/14

20/2
**February 28th**
**[4]**    12/4
12/13 12/14
12/15
**feel [1]**    29/23
**few [2]**    32/6
34/7
**figure [1]**
24/17
**figuring [1]**
7/7
**file [5]**    10/5
23/5 28/13
31/21 32/17
**filing [3]**
14/9 31/1
32/23
**filings [1]**
35/16
**finance [1]**
9/1
**find [4]**    6/13
6/23 7/2 20/17
**fire [6]**    19/18
21/2 21/4 21/5
21/11 21/13
**fireable [1]**
20/23
**fired [8]**    20/1
20/1 20/3 20/4
20/4 20/6 20/8
20/9
**firing [2]**
20/6 20/9
**firm [1]**    3/12
**first [9]**    3/8
4/3 25/25
28/11 28/23
28/24 29/6
29/25 33/13
**fly [1]**    18/15
**follow [3]**
11/3 19/5
20/25
**forbidden [1]**
2/17
**foregoing [1]**
36/4
**foreign [1]**
21/16
**forward [1]**
2/4
**foster [1]**
4/17
**foundation [5]**
12/3 13/4 24/6
25/5 25/18

**founders [1]**
18/25
**frankly [3]**
6/16 18/11
26/14
**Free [2]**    21/7
21/9
**Friday [2]**
10/22 10/22
**friend [1]**
17/25
**front [1]**    6/25
**full [3]**    10/11
19/23 33/3
**fully [1]**
35/17
**function [3]**
5/15 5/20
14/23
**functionally**
**[1]**    18/16
**functioning [2]**
4/5 26/18
**functions [1]**
15/21
**Fund [2]**    21/8
21/9
**fundamental [2]**
6/1 18/19
**funds [31]**    3/2
4/11 4/18
10/25 11/8
11/20 12/2
24/1 24/1
24/14 26/2
26/4 26/7 26/8
26/14 26/21
26/22 27/4
30/1 30/5 30/9
30/11 30/14
31/3 31/4
31/24 32/2
32/5 32/12
32/24 33/22
**further [4]**
11/22 11/23
12/24 34/22
**future [1]**
35/3

**G**

**gears [1]**    6/20
**gentleman [1]**
24/4
**gets [1]**    34/6
**given [7]**    3/10
9/10 11/14
26/9 30/11

32/2 33/4
**gives [1]**    32/9
**giving [2]**
32/6 33/3
**glass [1]**    4/7
**gloss [1]**
13/17
**goes [1]**    27/12
**good [9]**    2/6
2/9 2/10 2/14
2/14 6/15 9/17
16/21 23/15
**GOR [2]**    1/6
2/3
**government [8]**
19/2 20/7
21/18 26/1
26/5 26/20
29/19 35/11
**government's**
**[1]**    33/24
**grant [6]**
10/12 18/5
19/3 22/11
25/25 32/22
**granted [1]**
35/5
**grantee [1]**
6/2
**grantees [27]**
3/2 4/11 4/13
4/16 4/20 5/10
24/19 25/1
25/4 26/2 26/6
26/9 26/21
27/4 27/20
29/24 30/3
30/5 30/8
30/13 30/17
30/25 31/2
32/1 32/4
32/20 32/22
**granting [1]**
10/15
**grants [1]**
5/16
**grassroots [1]**
4/21
**ground [3]**
4/21 13/25
26/12
**guardrails [1]**
13/22
**guess [2]**    23/5
24/17
**gutting [2]**
17/17 28/18

**H**

**hac'd [1]**    35/2
**happening [2]**
29/10 29/13
**hard [3]**    17/9
23/24 28/16
**harm [12]**    3/24
5/10 14/21
15/4 15/8 17/2
22/2 22/16
22/18 26/10
28/17 28/19
**harmed [2]**
5/21 26/15
**harms [2]**    3/23
4/12
**Harris [2]**
15/1 16/25
**head [1]**    8/24
**hear [6]**    2/24
3/8 7/22 8/15
33/16 34/16
**heard [1]**
28/24
**hearing [6]**
2/16 33/5 34/2
34/5 34/6 34/8
**heartland [1]**
27/25
**held [2]**    31/4
33/22
**help [1]**    26/5
**helps [1]**
33/10
**highlight [1]**
17/7
**highlighting**
**[1]**    15/3
**himself [4]**
28/3 28/6 28/6
28/7
**hire [1]**    21/13
**hit [1]**    17/24
**hold [1]**    22/1
**holding [2]**
21/9 34/5
**Honor [47]**
**HONORABLE [1]**
1/9
**HOOK [3]**    1/23
36/3 36/10
**hope [3]**    32/20
32/23 35/14
**House [1]**    20/3
**housekeeping**
**[1]**    34/25
**Humphrey's [2]**

13/19 19/7
**hundreds [1]**
18/14

**I**

**IAF [16]**    3/2
4/1 4/5 4/15
4/22 21/3 22/6
24/2 24/3
26/14 26/19
27/13 28/15
28/23 29/10
31/5
**ice [1]**    11/17
**idea [1]**    27/5
**Ideally [1]**
31/22
**II [5]**    13/1
13/17 14/17
18/13 18/18
**immediate [1]**
26/6
**immediately [1]**
3/25
**imminent [1]**
29/14
**important [8]**
3/21 4/15 5/15
18/9 19/22
21/15 26/10
33/10
**importantly [1]**
4/10
**improper [1]**
15/6
**in the [1]**
13/5
**inability [1]**
3/11
**inadvertent [1]**
17/6
**inclination [1]**
33/15
**inclined [2]**
32/13 32/25
**including [1]**
14/25
**incredibly [1]**
5/1
**indicated [1]**
8/23
**indicates [2]**
11/15 19/12
**indication [1]**
29/4
**indulgence [2]**
7/16 20/17
**inferior [3]**

20/7 21/12
28/17
**information**
**[17]**    3/10
3/11 8/4 8/12
8/21 8/24 11/1
11/5 11/6
11/22 11/24
11/25 12/1
21/22 21/22
25/19 30/15
**inherent [1]**
13/1
**injunction [7]**
2/23 10/4 17/2
24/25 30/7
30/12 30/23
**injunctions [1]**
10/1
**injury [1]**
3/15
**institution [1]**
19/22
**intends [2]**
21/23 22/20
**intention [1]**
15/19
**interest [1]**
32/13
**interesting [1]**
19/11
**interests [2]**
4/17 6/18
**interim [1]**
21/1
**into [4]**    3/18
7/5 14/8 16/1
**involving [1]**
6/12
**irreparable [9]**
3/14 3/24
14/21 15/3
15/8 17/2 22/2
22/16 22/18
**irreparably [1]**
4/12
**irrevocable [1]**
11/9
**issue [12]**
15/10 15/12
15/15 16/1
17/16 19/7
20/1 20/6 22/7
27/16 28/21
34/25
**issued [4]**
16/24 17/3
17/3 17/4

**issues [2]**
3/22 17/22
**issuing [1]**
34/11

**J**

**Jackson [1]**
24/4
**James [1]**
18/20
**JEFF [3]**    1/23
36/3 36/10
**job [6]**    5/21
6/21 7/7 15/7
15/9 26/19
**JOHN [4]**    1/18
1/19 2/10 2/12
**joined [1]**
2/12
**JUDGE [9]**    1/10
3/17 14/25
15/14 22/5
22/6 29/8
29/12 29/13

**K**

**keep [3]**    11/16
17/9 19/22
**Kenneth [1]**
24/4
**kind [1]**    24/18
**kinds [1]**
22/13
**knowledge [1]**
17/5
**knows [1]**
16/23

**L**

**lack [1]**    15/3
**lacking [2]**
21/22 21/22
**lacks [1]**    18/4
**language [2]**
15/23 19/14
**large [1]**
26/11
**late [1]**    11/14
**later [2]**    4/19
4/24
**law [10]**    13/18
18/5 18/7
18/14 19/5
20/25 20/25
21/17 26/25
29/21
**laws [2]**    10/2
14/17

**issues [2]**
**lawsuit [2]**
7/8 25/16
**lawyers [2]**
7/2 7/3
**lay [1]**    12/24
**lays [1]**    6/16
**lead [1]**    6/20
**learned [1]**
29/11
**least [3]**    7/21
22/10 22/22
**leave [1]**
29/15
**legal [2]**    6/11
29/5
**legislative [1]**
21/15
**length [1]**
18/24
**Leon [5]**    3/17
14/25 22/6
29/8 29/13
**Leon's [3]**
15/14 22/5
29/12
**less [2]**    3/6
10/13
**line [3]**    2/15
2/20 21/24
**list [1]**    9/11
**litigation [2]**
6/11 32/21
**little [4]**
3/18 6/22
32/13 34/6
**live [1]**    31/18
**LLP [2]**    1/13
1/16
**longer [3]**
17/20 34/3
35/15
**look [2]**    31/20
32/11
**looked [1]**
16/1
**looking [5]**
4/6 6/19 6/20
6/21 34/14
**lookout [1]**
35/15
**LOREN [1]**    1/9
**loss [1]**    4/6
**lot [4]**    7/1
26/16 32/22
33/22

**M**

**Madison [1]**

**M**

**Madison... [1]**
18/21
**mail [1]**  20/2
**mails [1]**  8/3
**maintain [3]**
22/10 22/18
24/12
**makes [1]**
15/21
**making [1]**
31/3
**manager [1]**
9/2
**many [6]**  27/4
30/13 30/17
31/2 31/2
32/12
**March [7]**  1/5
10/24 11/19
13/8 22/24
22/25 33/2
**March 10th [1]**
13/8
**March 19th [4]**
10/24 11/19
22/24 22/25
**March 26th [1]**
33/2
**Marocco [17]**
12/4 12/4
12/10 12/16
12/22 13/11
14/1 14/14
14/25 20/4
20/5 20/9
20/10 24/5
28/2 29/1 29/3
**massive [1]**
4/20
**mathematician
[1]**  16/18
**matter [7]**
4/10 16/24
17/3 32/14
33/5 33/11
36/5
**matters [1]**
6/11
**may [8]**  2/17
5/1 10/18
17/25 18/13
20/5 25/12
28/25
**MD [1]**  1/14
**mean [3]**  7/17
24/10 32/8

**meaningless [1]**
18/16
**meantime [1]**
13/3
**meet [1]**  4/25
**member [9]**
12/5 12/11
13/7 13/25
22/11 24/5
28/3 28/6 35/2
**members [12]**
12/7 12/19
13/2 13/3
13/12 18/2
18/4 18/6 18/8
19/4 19/8 21/5
**merely [2]**
11/20 26/24
**midnight [1]**
3/6
**might [3]**
15/16 19/23
22/1
**minute [5]**
2/16 29/19
34/11 34/13
35/16
**minutes [1]**
23/14
**missed [1]**
9/11
**misstep [1]**
17/6
**moment [4]**
8/15 9/8 28/22
29/16
**money [8]**  3/25
4/7 4/23 4/24
6/3 24/18 25/3
27/18
**monies [1]**
32/23
**MOORE [2]**  1/15
2/7
**Moore's [1]**
35/4
**more [9]**  4/10
10/16 14/8
21/14 27/10
28/16 32/6
32/13 34/4
**morning [6]**
2/6 2/9 2/10
2/14 2/14 9/17
**most [3]**  11/6
32/4 32/9
**motion [3]**
2/22 10/3

17/23
**motions [3]**
17/10 34/25
35/6
**move [3]**  27/3
31/18 33/10
**moved [3]**  6/9
6/24 6/25
**movement [1]**
6/21
**Mr. [35]**  3/8
8/16 9/16
10/18 12/4
12/10 12/16
12/22 13/10
13/11 14/1
14/14 15/11
16/6 16/7
16/11 16/13
20/4 20/5 20/9
20/10 21/23
23/19 24/3
24/5 25/23
28/2 29/1 29/3
29/23 31/14
32/5 32/15
34/21 35/3
**Mr. Bardo [7]**
8/16 9/16 16/6
21/23 23/19
29/23 32/15
**Mr. Chou [1]**
35/3
**Mr. Marocco
[15]**  12/4
12/10 12/16
12/22 13/11
14/1 14/14
20/4 20/5 20/9
20/10 24/5
28/2 29/1 29/3
**Mr. Truong [1]**
10/18
**Mr. Vought [2]**
13/10 24/3
**Mr. Zelinsky
[9]**  3/8 15/11
16/7 16/11
16/13 25/23
31/14 32/5
34/21
**Ms. [16]**  2/7
2/15 2/22 5/4
5/9 6/4 6/19
6/20 12/2
12/12 12/16
12/22 15/17
16/25 21/25

31/16
**Ms. Aviel [14]**
2/7 2/15 5/4
5/9 6/4 6/19
6/20 12/2
12/12 12/16
12/22 15/17
21/25 31/16
**Ms. Aviel's [1]**
2/22
**Ms. Harris [1]**
16/25
**much [10]**  9/15
10/16 16/5
21/19 25/20
27/25 29/4
29/22 35/13
35/18
**myself [1]**
35/3

**N**

**name [4]**  24/4
28/13 28/16
29/4
**names [1]**  8/7
**Nathaniel [1]**
16/12
**nature [2]**
26/10 29/5
**need [17]**  2/18
2/19 8/7 9/8
10/15 11/22
11/23 12/19
26/2 26/6 26/7
26/21 31/4
31/8 34/5 35/2
35/8
**needs [2]**
15/23 20/25
**new [4]**  19/4
24/6 24/8
28/22
**next [1]**  34/6
**NGOs [1]**  26/12
**Noel [1]**  18/23
**nominated [2]**
13/6 24/4
**note [3]**  2/4
12/9 13/5
**noted [1]**  2/16
**notice [1]**
30/3
**notices [1]**
7/24
**notification
[1]**  26/6
**notify [5]**

26/2 26/21
29/24 30/9
30/24
**notion [2]**
18/12 28/22
**number [5]**
6/10 21/8 26/3
27/7 32/24
**numbers [1]**
32/11
**NW [3]**  1/16
1/20 1/24

**O**

**objection [2]**
3/19 33/17
**obviously [4]**
3/9 8/20 28/25
31/16
**off [7]**  2/19
8/18 8/21 9/20
10/20 20/19
25/14
**officer [6]**
8/11 8/25 9/1
20/7 21/12
28/17
**Official [2]**
1/23 36/3
**old [1]**  16/9
**once [4]**  4/7
6/23 9/11
35/17
**one [16]**  8/9
8/10 9/11 10/5
10/9 10/15
16/10 18/9
26/1 26/20
27/10 27/11
27/22 27/23
27/23 34/24
**only [7]**  5/9
5/12 6/6 13/25
18/15 21/2
32/11
**opened [1]**
2/15
**operating [5]**
4/6 8/2 8/11
8/20 9/1
**operations [1]**
22/25
**opinion [3]**
22/5 29/9
29/12
**opportunity [4]**
3/21 10/5
12/24 14/22

**O**

**oppose [3]**
9/22 10/3
31/12

**opposing [1]**
10/14

**opposition [4]**
15/3 31/21
33/13 33/25

**option [1]**
10/12

**order [7]**
2/16 2/22 9/24
10/11 15/14
15/20 26/23
26/25 34/11
34/13 35/16

**ordered [5]**
26/1 26/4
26/20 28/3
28/7

**orders [1]**
9/25

**organization
[6]** 5/14 5/17
5/24 6/22
17/17 28/18

**organizations
[9]** 4/14 4/20
4/21 26/3
26/11 26/12
26/23 32/10
32/25

**otherwise [1]**
13/20

**ousted [1]** 6/5

**out [19]** 4/14
5/18 6/16 7/7
12/24 14/7
15/8 16/14
20/17 24/18
27/18 29/20
30/2 31/10
32/4 33/21
34/15 35/14
35/16

**over [3]** 18/25
20/6 26/15

**oversee [1]**
4/4

**P**

**p.m [6]** 31/1
31/10 32/16
32/18 34/17
35/19

**panel [2]** 17/4
17/12

**panel's [2]**
17/10 17/10

**paper [1]** 20/6

**part [5]** 17/16
17/21 19/19
28/9 33/4

**particularly
[1]** 21/16

**parties [5]**
2/18 3/5 10/11
30/20 33/17

**payroll [4]**
4/25 7/10 7/11
7/12

**penalized [1]**
26/24

**pending [1]**
34/25

**people [5]** 7/2
18/18 18/22
27/21 29/14

**performed [1]**
4/12

**perhaps [2]**
11/16 32/6

**permanent [1]**
13/6

**permission [1]**
35/1

**persists [1]**
19/21

**Pete [2]** 12/4
12/4

**phone [1]** 23/6

**phrase [1]** 6/9

**PI [3]** 24/11
33/14 33/16

**place [3]** 3/18
28/19 29/6

**placed [1]**
29/15

**places [1]**
13/22

**plaintiff [7]**
1/4 1/12 2/5
5/9 5/12 15/6
25/17

**plaintiff's [2]**
10/3 29/23

**plaintiffs [5]**
21/21 22/15
32/17 33/3
34/20

**plan [2]** 24/2
24/6

**please [2]** 2/4
24/16

**pleasure [1]**

**point [14]**
2/18 4/3 4/19
11/21 17/24
18/17 19/16
20/13 21/24
21/25 27/7
27/25 29/1
34/1

**position [8]**
4/9 6/5 9/21
12/3 14/23
17/19 22/1
22/23

**positions [1]**
8/8

**possible [5]**
3/16 6/24
19/16 20/7
23/3

**possibly [2]**
3/6 34/5

**potential [1]**
3/23

**power [13]**
18/12 18/13
18/18 19/2
19/3 19/4 19/8
19/17 19/18
21/13 21/13
29/3 29/6

**PPO [1]** 20/3

**practice [1]**
4/24

**Pratt [1]** 1/13

**precedent [2]**
18/14 18/15

**precise [1]**
15/12

**preliminarily
[1]** 9/25

**preliminary [7]**
2/23 10/1
10/4 17/1
22/14 24/25
30/23

**prepared [2]**
10/3 11/5

**presence [3]**
19/13 19/17
35/4

**present [2]**
2/8 7/15

**president [43]**

**president's [3]**
13/23 14/16
15/20

**pretender [1]**

**prevent [1]**
25/3

**pro [2]** 35/2
35/6

**probably [2]**
19/19 34/8

**proceedings [3]**
35/3 35/19
36/5

**program [1]**
22/25

**programs [1]**
22/11

**promote [1]**
4/17

**pronouncing [1]**
5/4

**proper [1]** 4/5

**proposal [1]**
29/23

**propose [1]**
32/3

**proposed [3]**
32/19 33/13
34/15

**proves [1]**
18/10

**provided [1]**
27/6

**public [3]**
2/15 2/19 7/6

**pulled [2]**
5/18 6/3

**pulling [1]**
13/10

**purpose [1]**
2/15

**purposes [1]**
21/17

**pursuant [1]**
26/22

**put [6]** 3/14
3/18 18/18
18/22 20/2
21/12

**Q**

**quick [3]**
25/24 27/11
31/17

**quickly [8]**
3/15 6/9 6/24
9/14 10/16
17/24 20/17
31/18

**quite [1]**
14/10

**quo [4]** 24/13
24/16 28/13
30/7

**R**

**read [1]** 7/5

**reading [1]**
12/17

**ready [1]**
19/24

**real [1]** 3/14

**really [2]** 6/1
26/13

**reason [3]**
15/15 26/17
29/11

**reasons [1]**
21/15

**rebuild [1]**
29/18

**receive [2]**
10/11 22/2

**received [1]**
7/24

**recess [4]**
18/20 18/23
23/9 23/17

**reconvene [2]**
23/13 35/17

**record [9]** 2/2
2/5 8/18 10/20
16/10 20/19
23/18 25/14
36/5

**recording [1]**
2/17

**redistributed
[2]** 25/3 31/9

**reduced [1]**
29/17

**refunded [2]**
3/25 4/9

**regarding [4]**
14/20 18/1
18/2 25/17

**region [1]**
26/15

**reinstated [2]**
5/20 15/17

**reinstating [1]**
15/7

**rejected [1]**
14/24

**rejection [1]**
17/10

**relationship
[1]** 4/13

**relationships
[6]** 4/16 4/17

**R**

relationships.. 5/18
5/22 26/14
27/20
reliance [1]
17/21
relief [1]
9/24
remain [1]    4/1
remedy [1]
15/6
removal [4]
12/9 13/12
13/22 21/10
remove [6]
13/2 13/20
18/1 18/4 19/8
20/24
removed [3]
12/3 17/18
18/6
removing [1]
15/6
reply [4]    33/2
33/9 33/14
33/25
Reporter [3]
1/23 1/23 36/3
represent [1]
11/8
representation
[1]  33/4
representations
[6]  22/10
22/12 22/13
22/19 22/23
23/22
representative
[1]  35/9
represented [1]
31/5
requires [1]
3/4
residual [1]
18/13
resistance [1]
6/20
respect [1]
25/15
respond [1]
14/22
responding [1]
11/13
response [6]
10/5 10/16
10/21 15/18

32/17 34/18
22/16
restraining [2]
2/22 9/25
result [1]
2/17
results [1]
3/25
retained [1]
6/24
return [10]
3/2 4/18 15/16
23/25 24/24
26/2 26/4 26/7
26/13 33/23
returned [14]
6/3 11/20 25/2
25/18 26/9
26/21 26/22
27/4 30/8
30/14 31/3
32/5 32/12
32/24
returning [5]
4/11 4/23
10/24 30/1
30/4
reviewing [1]
15/14
rid [1]    27/20
RIF [11]    7/24
25/6 25/15
25/19 27/11
27/12 27/25
28/3 28/7 28/9
33/4
RIFed [2]
25/10 27/16
right [30]
5/15 7/1 7/19
8/14 9/15
10/23 14/18
14/23 15/13
16/3 16/5
21/19 23/3
23/4 23/16
24/18 24/20
25/20 25/23
27/8 27/17
28/8 28/15
28/20 28/20
29/13 29/22
33/12 33/21
35/13
rightful [2]
20/14 28/14
risk [1]    16/8
role [2]    5/14
5/23

rubicon [1]
22/16
rug [1]    5/18
rule [3]    16/9
28/13 30/23
ruled [1]
29/13
rules [2]    9/6
24/11
ruling [4]
16/24 16/25
17/3 24/24
run [2]    6/22
29/20
rundown [1]
9/19
running [2]
13/4 19/22
runs [1]    5/25
Russell [1]
13/6

**S**

sake [1]    15/5
same [6]    5/21
5/22 6/2 16/15
28/11 29/12
sanctions [1]
2/18
sand [1]    6/19
SARA [2]    1/3
2/2
satisfied [1]
31/14
save [2]    25/10
27/15
saw [1]    22/5
saying [2]
17/1 19/4
schedule [8]
2/24 3/6 33/13
33/24 34/1
34/3 34/18
35/15
scheduled [1]
33/16
schedules [3]
32/4 32/19
34/16
scheduling [1]
2/21
scope [2]
25/16 27/12
second [2]
8/25 28/24
secure [1]
6/13
security [1]

8/24
seek [1]    26/5
seeking [1]
3/20
seeks [1]
26/14
seem [1]    30/21
seems [4]
11/14 13/10
15/13 33/5
Senate [4]
12/20 13/7
14/15 18/9
send [1]    30/2
sense [1]
11/19
sent [1]    30/5
separation [1]
7/24
SERGIO [2]    1/6
2/3
servant [1]
7/6
serve [3]
13/13 19/9
19/15
serves [1]
20/21
set [3]    16/10
23/10 33/1
sets [1]    9/3
several [1]
14/24
severely [2]
5/21 26/15
share [1]
34/11
ship [1]    27/24
short [3]    3/20
5/2 22/20
shortcoming [1]
6/14
shortly [3]
8/13 31/10
35/17
side [1]    10/13
similar [1]
3/17
simple [1]
21/12
simultaneously
[1]    3/22
situation [6]
3/17 6/15
13/25 17/19
21/11 22/4
six [1]    13/13
sketch [1]

34/15
small [3]    4/21
26/12 32/10
somebody [2]
5/24 13/3
somehow [1]
4/24
someone [4]
19/19 19/21
28/12 28/15
sometime [1]
34/2
somewhat [2]
3/6 8/2
soon [1]    23/3
sorry [2]    25/8
34/24
sort [3]    3/3
22/16 23/11
sought [1]
6/14
Sounds [1]
23/15
source [1]
14/13
space [1]
21/16
Spaeder [2]
1/13 1/16
speak [2]    8/15
28/21
specific [2]
7/13 9/18
specifically
[2]    19/1
25/16
specify [1]
24/16
spent [2]    5/17
5/17
spite [1]
19/22
sponsoring [1]
4/13
stage [1]
22/14
staggering [1]
18/11
standing [1]
28/10
start [1]    9/20
state [1]
24/18
STATES [6]    1/1
1/10 4/18 6/18
21/3 28/18
status [6]    1/9
2/25 12/2

**S**

status... [3]
24/13 24/16
30/7
statute [6]
12/10 12/17
13/12 13/19
19/12 19/20
statutes [1]
10/2
statutory [6]
5/15 13/17
14/23 15/13
15/21 22/1
stay [14]    3/18
3/20 5/2 7/20
9/21 9/23 10/1
10/14 11/16
13/13 22/17
24/1 24/2 26/1
stayed [2]
26/25 27/1
staying [1]
25/5
stays [2]    9/24
10/9
stick [1]    7/3
still [2]    8/10
20/14
straight [1]
17/9
strategic [3]
4/15 4/17 6/17
Street [3]
1/13 1/16 1/20
structure [1]
18/19
subdivision [1]
5/25
submit [2]
11/3 11/12
submitted [1]
13/7
substantial [1]
8/20
successor [1]
13/14
successors [2]
19/10 19/15
sucking [1]
27/18
sufficiently
[1]   29/14
suit [1]    6/6
Suite [2]    1/13
1/16
suppose [1]

23/5
supposed [3]
3/2 25/10
26/19
sure [3]   7/16
8/11 10/19
swift [1]   3/4
switched [1]
4/19
system [1]
27/6

**T**

table [1]    2/12
talk [2]   19/25
27/15
talking [3]
4/21 5/24
29/16
talks [1]   29/8
temporary [3]
2/22 9/25 13/9
term [5]    9/4
9/5 20/15
20/15 20/22
terminate [2]
12/7 12/11
terminated [1]
12/16
terms [5]   2/25
13/13 24/15
29/10 31/11
theory [1]
14/22
thereafter [1]
31/10
third [2]   8/12
9/1
three [5]   7/23
8/6 8/23 25/10
27/16
throw [1]   6/19
tie [1]   5/10
timeline [1]
3/4
times [1]   7/1
today [18]   2/8
2/21 3/1 3/7
3/13 7/15 10/6
10/16 11/11
11/12 11/15
14/19 19/3
23/24 30/24
31/25 34/21
35/16
together [2]
30/21 32/14
told [1]   6/4

tomorrow [2]
11/12 11/14
tonight [1]
22/17
took [1]   6/22
total [3]
17/17 30/18
31/2
transcript [2]
1/9 36/4
Treasury [2]
4/1 11/21
trickier [1]
34/7
TRO [9]   10/4
10/12 10/22
17/23 22/17
25/16 31/18
33/14 33/16
true [1]   36/4
Trump [2]   12/6
12/6
TRUONG [3]
1/19 2/13
10/18
try [3]   6/15
23/7 25/17
trying [4]   7/7
24/17 28/2
32/14
turn [1]   2/19
turns [2]   32/4
33/21
twin [3]   16/15
16/16 16/17
two [6]   9/24
25/24 26/22
27/11 32/3
32/19
twofold [1]
27/18
types [3]   9/24
22/7 22/12

**U**

U.S [2]   1/24
2/11
ultra [4]
20/11 28/9
28/15 29/2
unable [1]
23/10
uncertain [1]
7/1
under [7]   5/19
6/11 9/5 14/17
26/24 28/13
32/10

undermines [1]
18/19
underscore [1]
27/10
understood [4]
18/21 23/12
31/11 34/10
undone [1]
21/24
unique [1]
5/23
UNITED [6]   1/1
1/10 4/18 6/18
21/3 28/17
unless [1]
13/19
unpublished [1]
17/12
unwilling [1]
33/23
up [8]   7/20
11/3 11/6 18/1
22/20 27/13
27/14 33/22
USAO [1]   1/19
use [1]   18/18

**V**

Vacancies [5]
14/5 14/7
14/11 18/16
18/17
vacancy [2]
18/3 21/1
view [2]   19/6
28/8
vires [4]
20/11 28/9
28/15 29/2
voluntarily [2]
24/12 30/13
Vought [3]
13/6 13/10
24/3

**W**

wait [1]   34/16
walked [1]
27/22
wanted just [1]
27/2
warranting [1]
22/17
warranto [1]
28/14
was the [1]
17/10
Washington [5]

1/5 1/17 1/20
1/25 7/1
wasteland [1]
17/20
way [4]   4/22
6/1 19/20
21/12
weakness [1]
18/10
Wednesday [1]
33/1
week [10]   6/6
10/5 10/16
31/17 31/22
31/23 32/25
33/3 34/2 34/6
weren't [1]
22/7
what's [6]
9/20 11/18
16/24 18/17
27/17 29/10
wherein [1]
33/24
White [1]   20/3
willing [11]
11/7 23/25
24/8 24/10
24/23 30/2
30/9 30/20
31/23 31/24
33/7
wish [1]   14/19
without [6]
9/12 14/14
18/8 19/4
27/24 35/4
wondering [1]
3/3
word [2]   30/22
32/9
work [10]   4/11
4/15 5/19 6/16
16/15 27/19
27/21 30/21
32/14 35/14
working [1]
5/17
worthwhile [1]
11/17

**Y**

years [3]   5/17
13/13 18/14
yesterday [3]
11/4 15/12
16/11
younger [1]

**Y**

**younger... [1]**
  16/17

**Z**

**ZELINSKY [11]**
  1/12  2/7  3/8
  15/11  16/7
  16/11  16/13
  25/23  31/14
  32/5  34/21
**Zuckerman [2]**
  1/13  1/16