UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SARA AVIEL,<br><br>               Plaintiff,<br><br>       v.<br><br>SERGIO GOR, et al.,<br><br>               Defendants. | Civil Action No. 25-0778 (LLA) |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY
<u>RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

# TABLE OF CONTENTS

Background.............................................................................................................................2

    I.      Legal Background. .......................................................................................2

    II.     Factual Background .....................................................................................3

Legal Standards.....................................................................................................................4

Argument...............................................................................................................................5

    I.      Aviel Will Not Succeed on the Merits .........................................................5

    II.     Aviel Has Failed to Demonstrate Irreparable Harm. ..................................10

    III.    The Balance of Equities and Public Interest Favor Defendants. .................14

    IV.    Aviel Should Be Ordered to Post Security In Connection With Any Temporary or Preliminary Injunctive Relief. ..........................................................................16

Conclusion...........................................................................................................................17

Defendants, various government components and officials, including the President, sued in their official capacities, respectfully submit this memorandum in opposition to Plaintiff's motion for a temporary restraining order and preliminary injunction ("TRO Mot.") (ECF No. 5).

## INTRODUCTION

On February 24 and 26, President Donald Trump removed all board members from the Board of Directors of the Inter-American Foundation ("the Foundation") effective immediately. President Trump subsequently designated Pete Marocco as an acting Board member. In carrying out his duties as an acting Board member, Marocco removed Plaintiff Sara Aviel as president of the Foundation on February 28, 2025. The following week, Marocco selected Dominic Bumbaca as Aviel's replacement. Unhappy with these developments, Aviel sued seeking an injunction compelling Defendants, including the President, to recognize her position and treat her as president of the Foundation.

This Court should grant neither the TRO nor the preliminary injunction. To start, Aviel cannot succeed on the merits. The President acted pursuant to his constitutional and statutory authority in removing the Foundation Board members. The statute establishing the Foundation permits the President alone to select nine members for six-year terms subject to Senate confirmation. But nothing in the statute restricts the President's ability to remove those members he appoints. Furthermore, the President's power to "take care that the laws be faithfully executed" gives him the power to designate Marocco as an acting Board member so the Foundation is not left leaderless while the Senate considers his nominees to fill the Board positions for full terms. For that reason, Marocco had the authority to remove Aviel from her position as president of the Foundation.

Moreover, to the extent that Aviel's removal has caused her harm, that harm is not irreparable and thus extraordinary relief is not warranted. And because the relief that Aviel seeks would alter the status quo the balance of equities tilts decisively against entering any preliminary relief.

In short, Aviel's motion for extraordinary preliminary relief should be denied because the merits and the other temporary restraining order factors all cut against her.

## BACKGROUND

### I.    <u>Legal Background.</u>

In 1969, Congress established the Inter-American Foundation ("the Foundation") to "strengthen the bonds of friendship and understanding" among the peoples of the Western Hemisphere, "to support self-help efforts designed to enlarge the opportunities for individual development," to "stimulate and assist effective and ever wider participation of the people in the development process," and to "encourage the establishment and growth of democratic foundations . . . appropriate to the requirements" of the Nations in the Western Hemisphere. 22 U.S.C. § 290f(b). The Foundation carries out these purposes through "undertaking or sponsoring appropriate research and by planning, initiating, assisting, financing, administering, and executing programs and projects" in partnership with private entities. *Id.* § 290f(c). Congress established the Foundation as a nonprofit corporation with perpetual succession. *Id.* § 290f(c), (n). The Foundation is subject to the provisions of the Government Corporation Control Act [31 U.S.C. §§ 9101 et seq.]. 22 U.S.C. § 290f(t).

The Foundation's nine-member Board of Directors, appointed by the President and subject to Senate confirmation, manages the Foundation. 22 U.S.C. § 290f(g). Board members serve six-year terms and no more than five Board members can be members of any one political party. *Id.* § 290f(g). The President designates a Chairman and Vice Chairman from among the Board

Members.  *Id.*  The Board directs "the exercise of all the powers of the Foundation."  *Id.* § 290f(i).

The Board appoints a president of the Foundation, who acts as chief executive of the Foundation

and serves "on such terms as the Board may determine."  *Id.* § 290f(l)(1).

On February 19, 2025, President Trump signed an Executive Order to "commenc[e] a

reduction in the elements of the Federal bureaucracy that the President has determined are

unnecessary."  Executive Order No. 14,217, 90 Fed. Reg. 10577 (Feb. 25, 2025).  The Executive

Order directed that "the non-statutory components and functions of" four named governmental

entities "shall be eliminated to the maximum extent consistent with applicable law, and such

entities shall reduce the performance of their statutory functions and associated personnel to the

minimum presence and function required by law."  *Id.*  The Foundation was among the four entities

subject to the order.  *Id.* § 2(a)(ii).  The Executive Order directed the Foundation to "submit a

report to the Director of the Office of Management and Budget confirming compliance with this

[Executive Order] and stating whether the governmental entity, or any components or functions

thereof, are statutorily required and to what extent."  *Id.* § 2(a)(iii).

## II.  __Factual Background__

Plaintiff Sara Aviel was appointed president of the Foundation by the Board of Directors

on March 7, 2022.  Aviel Decl. ¶ 3 (ECF No. 5-2).  As of February 23, 2025, the Foundation had

only four Board Members.  The following day, as part of his efforts to implement Executive Order

14,217, President Trump removed three of the four Board members.  Compl. ¶ 65 (ECF No. 1).

President Trump removed the remaining Board member on February 26, 2025.  *Id.*  On February

28, 2025, President Trump designated Pete Marocco as acting chairman of the Board.  Marocco

Decl. ¶ 3 (ECF No. 14-1).  As the sole member of the Board, Marocco removed Aviel from her

position as president of the Foundation.  *Id.*  The following week, Marocco appointed Dominic

Bumbaca as president of the Foundation.  *Id.* ¶ 4.

President Trump does not intend for Marocco's designation as an acting board member to be permanent. On March 10, 2025, President Trump nominated Kenneth Jackson and Russell Vought to serve as members of the Foundation Board. *See* White House's Nomination to U.S. Senate (March 10, 2025) (attached).

## LEGAL STANDARDS

Both a temporary restraining order and a preliminary injunction are "an extraordinary remed[ies] never awarded as of right." *Winter v. Nat. Res. Def. Council,* 555 U.S. 7, 24 (2008). A party seeking preliminary relief must make a "clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest." *League of Women Voters v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (*quoting Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 505 (D.C. Cir. 2016)). The last two factors merge when the government is the opposing party. *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019); *accord Pub. Citizen Health Rsch. Grp. v. Acosta*, 363 F. Supp. 3d 1, 20 (D.D.C. 2018). "[P]laintiffs bear the burden of persuasion on all four preliminary injunction factors in order to secure such an 'extraordinary remedy.'" *Open Top Sightseeing USA v. Mr. Sightseeing, LLC,* 48 F. Supp. 3d 87, 90 (D.D.C. 2014). "The decision of whether to award a TRO is analyzed using the same factors applicable to preliminary injunctive relief[.]" *Chef Time 1520 LLC v. Small Bus. Admin*., 646 F. Supp. 3d 101, 109 (D.D.C. 2022)

Before the Supreme Court's decision in *Winter*, courts weighed these factors on a "sliding scale," allowing "an unusually strong showing on one of the factors" to overcome a weaker showing on another. *Damus v. Nielsen*, Civ. A. No. 18-0578 (JEB), 2018 WL 3232515, at *4 (D.D.C. July 2, 2018) (quoting *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009)). The Supreme Court subsequently reaffirmed the its disagreement with the sliding

scale approach holding that "a plaintiff seeking a preliminary injunction must make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Starbucks Corp. v. McKinney,* 602 U.S. 339, 346 (2024) (*quoting, Winter*, 555 U. S., at 20.) "Where, as here, a party "seeks a mandatory injunction—to change the status quo through action rather than merely to preserve the status quo—typically the moving party must meet a higher standard than in the ordinary case: the movant must show 'clearly' that [it] is entitled to relief or that extreme or very serious damage will result." *Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006).

## ARGUMENT

Aviel fails to satisfy any of the factors necessary for the extraordinary remedy she seeks—a mandatory temporary restraining order and preliminary injunction compelling Defendants, including the President, to reinstate her as president of the Foundation.

## I.     Aviel Will Not Succeed on the Merits

"'Failure to show a likelihood of success on the merits' is enough to show that a preliminary injunction is not warranted.'" *English v. Trump*, 279 F. Supp. 3d 307, 316 (D.D.C. 2018*); see also, Starbucks Corp*., 602 U.S. at 346. Aviel's claims will not succeed on the merits because Marocco, whom President Trump had lawfully designated as the sole member of the Foundation Board, removed Aviel as president of the Foundation. The Constitution vests the entirety of the "executive Power" in the President, who is given the sole responsibility to "take Care that the Laws be faithfully executed." Art. II, § 1, cl. 1; id. § 3; *see also Severino v. Biden*, 71 F.4th 1038, 1043–44 (D.C. Cir. 2023). "[A]s a general matter," the executive power encompasses "the authority to remove those who assist [the President] in carrying out his duties." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd*., 561 U.S. 477, 513–14 (2010). Without such power, the President would be

unable to control those who aid him in executing the laws and "could not be held fully accountable for discharging his own responsibilities." *Id.* at 514.

For nearly a century, the Supreme Court has repeatedly reaffirmed "the President's power to remove—and thus supervise—those who wield executive power on his behalf." *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 204 (2020) (citing *Myers v. United States*, 272 U.S. 52 (1926)). Consistent with this authority, President Trump removed the Foundation board members on February 24 and 26, 2025. *Id.* Notably, even Plaintiff concedes that President Trump lawfully removed the Board Members. Hearing Tr. at 18 (ECF No. 17) ("We are not arguing that the president lacks authority to remove members of the board. We grant that the case law allows that and that the board members can be removed"). The parties' dispute turns on whether President Trump lawfully designated Marocco as an acting Board member. As explained below, President Trump lawfully made this designation and, for that reason, Marocco had the authority to remove Aviel from her position as president of the Foundation.

The President must be able to designate acting officials to fulfill his duty to "take care that the laws be faithfully executed." *See* Art. II, § 1, cl. 1; id. § 3. The President has "powers not enumerated in the statutes—powers derived not from statutory grants but from the Constitution." *See Request of the Senate for an Opinion as to the Powers of the President "in Emergency or State of War,"* 39 Op. Att'y Gen. 343, 347 (1939). Relevant here, the President has the "concomitant power to name acting officials when necessary to fulfill his constitutional duties, at least where no statute precludes it." *Temporary Presidential Designation of Acting Board Members of the Inter-American Foundation and the United States African Development Foundation*, 49 Op. O.L.C. __, 4 (March 14, 2025) ("*Acting Board Members*"). Here, the President lawfully exercised his discretion in removing the Foundation Board members. No statute limits or prohibits the

President's prerogative to ensure that the Foundation has temporary leadership, particularly in the context of a presidential transition. Therefore, nothing required the President to leave the Foundation leaderless and unable to "direct the exercise of all the powers of the Foundation" as the Senate considers his nominees for to fill vacancies on the Board. 22 U.S.C. § 290f(i). Instead, the President has the concomitant authority, incident to his Article II power, to designate acting officers. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Robert Jackson, J. Concurring) ("congressional inertia, indifference or quiescence may sometimes, at least as a practical matter, enable, if not invite, measures on independent presidential responsibility"). The President's authority to designate in the face of statutory silence is consistent with the Framers' demand for "unity in the Federal Executive" to guarantee "both vigor and accountability." *Printz v. United States*, 521 U.S. 898, 922 (1997)

Aviel does not argue otherwise. Instead, she argues that the Federal Vacancies Reform Act of 1998 ("Vacancies Act") limits the President's authority to designate acting Board members for the Foundation. TRO Mot. at 26 (ECF No. 5). However, the Vacancies Act does not apply to "any member who is appointed by the President, by and with the advice and consent of the Senate to any board, commission, or similar entity that is composed of multiple members; and governs an independent establishment or Government corporation." 5 U.S.C. § 3349c(1). Aviel concedes that the Foundation qualifies as an entity described in this provision. TRO Mot. at 26 (ECF No. 5). But Aviel construes this provision to mean that the President does not have any authority to designate officials to act as Board members. *Id.* This interpretation is incorrect. If the Vacancies Act itself does not apply to the Foundation, then Section 3345, which governs procedures for designating acting officers in the event that a Senate-confirmed position becomes vacant, and Section 3346, which limits the amount of time that a designee can serve in an acting role, would

not apply to the Foundation either. *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 121 (2000) (statutory provisions "must [be] place[d] . . . in context"— including in the context of each other—and "interpret[ed] . . . to create a symmetrical and coherent regulatory scheme."). Aviel next argues that Section 3348(b) of the Vacancies Act requires the Foundation Board seats to remain vacant until the Senate confirms President Trump's nominees. TRO Mot. at 27 (citing 5 U.S.C. § 3348(b)(1)). But this reading of the statute would contradict the exclusion in Section 3349c, which provides that Section 3348 does not apply to entities like the Foundation. 5 U.S.C. § 3349c (stating "Sections 3345 through 3349b shall not apply to— (1) any member who is appointed by the President, by and with the advice and consent of the Senate to any board, commission, or similar entity that—(A) is composed of multiple members…").

Moreover, statutes like the Vacancies Act are a limitation on the President's power, not the sole source of his authority. *See, e.g.*, *Acting Board Members*, 49 Op. O.L.C. at 6–10; *Power of the President to Designate Acting Member of the Federal Home Loan Bank Board*, 1 Op. O.L.C. 150 (1977) ("Whatever the term 'independent' may mean …, the continued functioning of the Board is plainly included in the constitutional responsibility of the President as the head of the executive branch to take care that the laws be faithfully executed."); *Authority of the President to Remove the Staff Director of the Civil Rights Commission and Appoint an Acting Staff Director*, 25 Op. O.L.C. 103 (2001) (similar). Plaintiff's reliance on Section 3347 is misplaced. This provision provides that the Vacancies Act is the "exclusive means" for filling vacancies in positions that it covers, save for situations where there is a separate statutory authority providing for position-specific acting service or where the President exercises his power to make recess appointments. 5 U.S.C. § 3347. It does not speak to the available methods for filling vacancies on an acting basis in positions expressly excluded from the Vacancies Act under section 3349c.

Aviel's reliance on *NLRB v. Canning*, 573 U.S. 513 (2014) to argue the contrary is misplaced. *See* TRO Mot. at 27-28 (ECF No. 5). *Canning,* 573 U.S. at 519, concerned the scope of the President's power to make recess appointments to the National Labor Relations Board.    Here, President Trump did not appoint Marocco to the Foundation Board as a recess appointment; rather, the President simply designated Marocco to perform the duties of the Foundation while the Senate considers the two nominees for full terms.  Marocco Decl. ¶ 2 (ECF No. 14-1).

Because Congress has not provided for procedures that the President must undertake to fill vacancies on the Foundation Board, and because the President must "take care that the laws be faithfully executed" from the beginning of his Administration and cannot wait for the Senate to confirm all nominees, the President must be able to "select those who [are] to act for him under his direction in the execution of the laws." *Myers*, 272 U.S. at 117.  This need was especially pressing here because the Board Members that President Trump removed signaled that they did not intend to comply with President Trump's Executive Order to "reduce the performance of [the Foundation's] statutory functions and associated personnel to the minimum presence and function required by law."  Executive Order No. 14,217; *see* Aviel Decl.  ¶¶ 11-13; *Acting Board Members*, 49 Op. O.L.C. at 9.

Finally, the Board selects the president of the Foundation "on such terms as the Board may determine." 22 U.S.C. § 290f(l)(1).  "A majority of the Board shall be required as a quorum*Id.* at § 290f(j).  As the sole Board member and thus the "majority of the Board," Marocco had this authority.  He lawfully exercised that authority when he removed Aviel as president of the Foundation on February 28, 2025, Marocco Decl. ¶ 3 (ECF No. 14-1), and again the following week when he appointed Bumbaca as Aviel's successor.  *Id.* ¶ 4.  Accordingly, because Aviel will

not succeed on the merits, the Court should deny her motion for a temporary restraining order and preliminary injunction.

## II.    Aviel Has Failed to Demonstrate Irreparable Harm.

The "high standard for irreparable injury"—even higher here insofar as Aviel requests a mandatory injunction that would alter the status quo, *Phillip v. Fairfield Univ.*, 118 F.3d 131, 133 (2d Cir. 1997)—requires a two-fold showing: First, because an irreparable injury "must be both certain and great," Aviel "must show 'the injury complained of is of such imminence that there is a "clear and present" need for equitable relief to prevent irreparable harm.'" *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (quoting *Wis. Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Second, "the injury must be beyond remediation." *Id*. Importantly, irreparable harm "is a threshold requirement for granting temporary injunctive relief." *Beattie v. Barnhart*, 663 F. Supp. 2d 5, 8 (D.D.C. 2009). For that reason, even if Aviel had a likelihood of success on the merits, which she does not, her motion should be denied because she failed to demonstrate irreparable harm.

Aviel argues she has suffered irreparable harm because Defendants denied her the "statutorily guaranteed right to remain" as president of the Foundation. TRO Mot. (ECF No. 5-1) at 29. But Aviel cites no injury of a kind that the Supreme Court has recognized as irreparable in this context. *See Sampson v. Murray*, 415 U.S. 61, 92 & n.68 (1974) (holding loss of income, face, and reputation do not amount to irreparable harm). Even if Aviel did have such a right, her attempt to show irreparable harm would still fail because settled law dictates that loss of employment does not constitute irreparable harm. Although a public official's "loss of salary" amounts to a judicially cognizable harm, his "loss of political power" does not. *Raines v. Byrd*, 521 U.S. 811, 820 (1997); *Dellinger v. Bessent*, No. 25-5052 (D.C. Cir. March 10, 2025) slip op. at 6-7 (denying a stay pending appeal, giving effect to the removal of appellee from his position as Special Counsel for

the U.S. Office of Special Counsel); *See also Hetreed v. Allstate Ins. Co.*, 135 F.3d 1155, 1158 (7th Cir. 1998); *Davis v. Billington*, 76 F. Supp. 3d 59, 65–66 (D.D.C. 2014) (collecting cases); *Farris v. Rice*, 453 F. Supp. 2d 76, 79–80 (D.D.C. 2006) ("cases are legion holding that loss of employment does not constitute irreparable injury").

Courts have also repeatedly rejected the notion that the deprivation of a unique, singular, or high-level position is any more of an irreparable injury. *See Hetreed*, 135 F.3d at 1158 (loss of position as senior manager leading audit department not irreparable injury); *Marxe v. Jackson*, 833 F.2d 1121, 1122 (3d Cir. 1987) (division manager); *Rubino v. City of Mount Vernon*, 707 F.2d 53 (2d Cir. 1983) (mayoral-appointed City Assessor); *Franks v. Nimmo*, 683 F.2d 1290, 1291 (10th Cir. 1982) (Associate Chief of Staff for Research and Development position at Department of Veterans Affairs Medical Center); *EEOC v. City of Janesville*, 630 F.2d 1254, 1256 (7th Cir. 1980) (Chief of Police); *Levesque v. Maine*, 587 F.2d 78, 79 (1st Cir. 1978) (Maine Commissioner of Manpower); *Brehm v. Marocco*, Civ. A. No. 25-0660 (RJL), slip op. at 5 (D.D.C.) (ECF No. 15) (president of U.S. Africa Development Foundation); *Nichols v. Agency for Int'l Dev.*, 18 F. Supp. 2d 1, 2, 4 (D.D.C. 1998) (Chief of Information Management Systems, Office of Inspector General); *Burns v. GAO Emps. Fed. Credit Union*, Civ. A. No. 88-3424, 1988 WL 134925, at *1– 2 (D.D.C. Dec. 2, 1988) (President of Credit Union Board of Directors). Here, if the Court determines, at the conclusion of this case that Aviel's removal was unlawful, then Aviel can obtain monetary relief in the form of back pay. In other words, if Aviel's removal caused an injury to her legally protected interests, that injury can be remedied and thus any harm that Aviel experiences is not irreparable in the interim. *English*, 279 F. Supp. 3d at 335 (any harm that an agency director suffered from removal "can be remediated in the ordinary course of this case."); *Davis*, 76 F. Supp.

3d at 65 ("The plaintiff fails to meet this high standard as he has no concrete proof that the vacancy . . . will not be available when this matter is ultimately resolved.").

Aviel next argues that she has established irreparable harm because her removal will do "immeasurable damage" to the Foundation.  TRO Mot. (ECF No. 5) at 31.  But this argument conflates Aviel's fortunes with those of the Foundation.  To demonstrate irreparable harm, Aviel must explain how removing her as president of the Foundation cause irreparable harm not to the Foundation, but to her.  *Brehm,* Civ. A. No. 25-0660 (RJL), slip op. at 5 (denying the plaintiff a temporary restraining order to stop his removal as President of the U.S. Africa Development Foundation for lack of irreparable harm because the plaintiff "has not identified any cognizable irreparable harm to himself as opposed to potential harm to the agency and its partners.").  Aviel's assertions about possible changes to the Foundation would only affect the Foundation, not Aviel personally.  *English,* 279 F. Supp. 3d at 335 (finding that terminated agency director failed to establish irreparable harm even if "there could be harm suffered by the [Agency] or by other parties if it is later determined that  [plaintiff's replacement] has not been lawfully the acting Director[.]").  Under the law, Aviel must demonstrate the likelihood of irreparable harm to herself—not to the Foundation—if an injunction does not issue.  *Id*.  Because she has not done so, Aviel is not entitled to a temporary restraining order.

Despite this, citing *Harris v. Bessent*, Civ. A. No. 25-0412 (RC), 2025 WL 521027 (D.D.C. Feb. 18, 2025), Aviel argues she has established harm to her specifically because the harm to her and to the Foundation are "inextricably intertwined."  TRO Mot. at 31 (ECF No. 5-1).  But the D.C. Circuit subsequently questioned *Harris*, rejecting a removed director of the Office of Special Counsel's assertion of irreparable harm based on a "statutory right to function."  *Dellenger v. Bessent,* No. 25-5052, slip op. at *8 (D.C. Cir. Mar. 10, 2025) (holding that "remain[ing] out of

office for a short period of time" is not irreparable harm even even "[a]ssuming he is correct that his removal is statutorily ultra vires, and assuming that his removal constitutes a cognizable injury.")  Nevertheless, *Harris* is inapposite here.  In that case, the court found the President's decision to remove an MSPB board member without cause encroached on the MSPB's statutorily created independence.  *Harris*, 2025 WL 521027, at *8.  The court noted how the plaintiff's removal as a member of the Merit Systems Protection Board would affect the MSPB's independence because the board members could only be removed "for cause."  *Id.* ("Were the President able to displace independent agency heads from their positions for the length of litigation such as this, those officials' independence would shatter").  The same concerns about independence are not present with the Foundation.  The Foundation president "serves on such terms as the Board may determine," 22 U.S.C. § 290f(l)(1).

Next, Aviel claims irreparable harm because Defendants intended to dissolve the Foundation and, even if reinstated, she would be leading a practically non-existent entity.  Again, this is not a personal harm to Aviel, but a restatement of her argument that the Foundation will be harmed.  Regardless, Aviel's contention about harm to the Foundation is unfounded because the Executive Order that caused Aviel's removal only eliminates the Foundation's "non-statutory components and functions."  Executive Order No. 14,217.  In creating the Foundation, Congress mandated that the Foundation "maintain its principal office in the metropolitan Washington, D.C., area," but gave the Foundation discretion to "establish agencies, branch offices, or other offices in any place or places outside the United States in which the Foundation may carry on all or any of its operations and business."  22 U.S.C. § 290f(q).  Congress also specified the Foundation's "powers and functions."  *Id*. § 290f(e).  In accordance with the Executive Order, the Foundation will continue to operate at its principal office and carry out the statutory functions that Congress

- 13 -

directed it to perform. "Congress has defined the agency's minimum level of functioning already." *Brehm,* Civ. A. No. 25-0660 (RJL), slip op. at *6-7.  In fact, the President has already transmitted his two nominees to the Board to the Senate for confirmation on March 10, 2025 (Ex. 1).  Thus, Aviel's claim the Defendants intend to "effectively shutter" the Foundation is not justified by the text of the Executive Order.   It is instead based on speculation.  But speculation cannot establish irreparable harm. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (holding that a movant cannot show "certain[] impending" injury when the asserted injury is based on a "speculative chain of possibilities"); *Brehm,* Civ. A. No. 25-0660 (RJL), slip op. at *6 (finding no irreparable harm in removal of the U.S. Africa Foundation president in part because "defendants have stated that they will maintain USADF at the statutorily required  "'minimum presence and function'").

Aviel also claims irreparable harm because Defendants are reducing the Foundation's staff and grants.  Mot TRO at 32.  But in advancing this argument, Aviel is claiming that she would maintain the Foundation at a "higher level of functioning."  *Brehm*, Civ. A. No. 25-0660 (RJL), slip op. at *6.  Congress has already defined the Foundation's "minimum level of functioning" and accepting this argument, the Court would be "substituting [Aviel's] judgment for that of Congress."  *Id.* at *6-7.  In any event, even if Aviel is reinstated, she would still be subordinate to the Foundation Board and thus could not override any changes that the Board made to the Foundation.  22 U.S.C. § 290f(l)(1).

Accordingly, because Aviel has not suffered irreparable harm and the Court should deny Aviel's request for immediate injunctive relief.

## III.    The Balance of Equities and Public Interest Favor Defendants.

The final two factors required for preliminary injunctive relief—a balancing of the harm to the opposing party, and the public interest—merge when the Government is the opposing party. *See, e.g., Nken v. Holder*, 556 U.S. 418, 435 (2009); *Colo. Wild Horse v. Jewell*, 130 F. Supp. 3d

205, 220-21 (D.D.C. 2015).  Courts must "[give] particular regard [to] the public consequences in employing the extraordinary remedy of injunction."  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982).

In this case, the balance of equities and the public interest tip strongly in favor of the Government, for "the public interest favors applying federal law correctly."  *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1197 (9th Cir. 2011).  As discussed above, Marocco, as the designated acting chairman of the Foundation Board, lawfully removed Aviel from her position as president. Granting the extraordinary relief requested would be an intrusion into the President's authority to exercise "all of" the "executive Power" of the United States.  *Seila Law v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203 (2020).  Moreover, the public interest would be undermined if the President did not have a Foundation Board and leadership appointed by that Board who holds the President's confidence and, accordingly, will effectively serve him in executing his duties as Chief Executive.  "[T]he Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'"  *Sampson*, 415 U.S. at 83 (quoting *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 896 (1961)).

The public also has an interest in "reducing the size of the Federal Government," to minimize Government waste and abuse, reduce inflation, and promote American freedom and innovation."  Executive Order No. 14,217.  President Trump has determined that "reducing the performance of [the Foundation's] statutory functions and associated personnel to the minimum presence and function required by law" is necessary to achieve this goal.  *Id*.  If Aviel is reinstated, then Aviel could issue irrevocable grants or take other actions that undermine these goals. Preliminary injunctive relief would displace and frustrate the President's decision and process about how to best address relations with other Nations in the Americas, and the Court must give

deference to the Executive Branch's "evaluation of the facts" and the "sensitive and weighty interests of national security and foreign affairs," *Holder v. Humanitarian L. Project*, 561 U.S. 1, 33–34 (2010), including "the timing of those . . . decisions." *Holy Land Found. for Relief & Dev. v. Ashcroft,* 219 F. Supp. 2d 57, 74 n.28 (D.D.C. 2002), *aff'd*, 333 F.3d 156 (D.C. Cir. 2003).

Additionally, in seeking an order reinstating her as president of the Foundation, Aviel seeks a change in the status quo. Injunctions that "'would change the status quo' are disfavored as 'an even more extraordinary remedy' than the typical preliminary injunction, 'especially when directed at the United States Government.'" *Strait Shipbrokers Pte. Ltd. v. Blinken*, 560 F. Supp. 3d 81, 93 (D.D.C. 2021) (quoting *Abdullah v. Bush*, 945 F. Supp. 2d 64, 67 (D.D.C. 2013), and *Sierra Club v. Johnson*, 374 F. Supp. 2d 30, 33 (D.D.C. 2005)). Injunctions that alter the status quo, on balance, favor the non-movant. *See, e.g., Davis*, 76 F. Supp. 3d at 68; *Elite Entm't, Inc. v. Reshammiya*, Civ. A. No. 08-0641, 2008 WL 9356287, at *4 (D.D.C. Apr. 18, 2008). Because the preliminary injunctive relief that Aviel seeks will alter the status quo, the third and fourth factors weigh against granting the preliminary injunction.

## IV.    Aviel Should Be Ordered to Post Security In Connection With Any Temporary or Preliminary Injunctive Relief.

For the reasons stated above, Defendants submit that the Court should deny Aviel's motion in its entirety. However, should the Court be inclined to order any injunctive relief, the Court should also order Aviel to post security. Under Federal Rule of Civil Procedure 65(c), the Court may issue a preliminary injunction "only if the movant gives security" for "costs and damages sustained" by Defendants if they are later found to "have been wrongfully enjoined." Fed. R. Civ. P. 65(c). In the event the Court issues an injunction here, the Court should require Aviel to post an appropriate bond commensurate with the scope of any injunction. *See DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999) (stating that Rule 65(c) places "broad discretion in the

district court to determine the appropriate amount of an injunction bond").  Particularly given that the relief requested by Aviel could hinder Defendants' ability to install new leadership that will operate the Foundation in a manner consistent with President Trump's policies, the Court should consider the implications of any order prohibiting the President from having his preferred leadership at the Foundation in determining the amount of bond to require from Aviel.

## CONCLUSION

For these reasons, the Court should deny Plaintiff's motion for a temporary restraining order and preliminary injunction.

Dated: March 26, 2025

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

By:        */s/ John J. Bardo*
    JOHN J. BARDO, D.C. Bar #1655534
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 870-6770

*Attorneys for the United States of America*