## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SARA AVIEL,

        *Plaintiff,*

      –v.–

SERGIO GOR, *et. al.*,

        *Defendants.*

Case No. 25-cv-00778-LLA

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**INTRODUCTION**.................................................................................................................... **1**

**ARGUMENT** ............................................................................................................................ **2**

    A.   Ms. Aviel Is Likely to Succeed on the Merits. ........................................................ 2

        I.   The President Lacks the Authority to Fire Ms. Aviel........................................... 3

        II.   Defendants Lack Any Authority to Appoint Marocco as a Member of the Board. ........ 4

    B.   Ms. Aviel Will Suffer Irreparable Harm Without Immediate Injunctive Relief. 8

    C.   The Balance of Hardships and Public Interest Favor Immediate Injunctive Relief. ................................................................................................................ 17

    D.   The Court Should Waive Any Security. .................................................................. 20

**CONCLUSION** ..................................................................................................................... **20**

# TABLE OF AUTHORITIES

## CASES

*Atlas Air, Inc. v. Int'l Bhd. of Teamsters,*
    280 F. Supp. 3d 59 (D.D.C. 2017) ........................................................................ 13

*Berry v. Reagan*,
    1983 WL 538 (D.D.C. Nov. 15, 1983) .............................................................. 14, 16

*Cherichel v. Holder,*
    *591 F.3d 1002* (8th Cir. 2010) .............................................................................. 7

*Dellinger v. Bessent,*
    No. 25-5052 (D.C. Cir. March 10, 2025)........................................................... 11, 15

*English v. Trump,*
    279 F. Supp. 3d 307 (D.D.C. 2018) ...................................................................... 14

*Escobar v. Garland,*
    55 F.4th 662 (8th Cir. 2022) .................................................................................. 7

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010)................................................................................................ 3

*Grundmann v. Trump,*
    No. CV 25-425 (SLS), 2025 WL 782665 (D.D.C. Mar. 12, 2025) ......................... 17

*Harris v. Bessent,*
    Civ. No. 25-0412 (RC), 2025 WL 521027 (D.D.C. Feb 18, 2025)............................ 15, 16, 19

*Harris v. Bessent,*
    Civ. No. 25-0412 (RC), 2025 WL 679303 (D.D.C. Mar. 4, 2025).......................... 19

*Harris v. Bessent,*
    Civ. No. 25-5052 (D.C. Cir. Mar. 28, 2025)......................................................... 19

*Hetreed v. Allstate Insurance Co.*,
    135 F.3d 1155 (7th Cir. 1998) ............................................................................... 13

*Huisha-Huisha v. Mayorkas,*
    27 F.4th 718 (D.C. Cir. 2022) ............................................................................... 19

*In re Hennen,*
    38 U.S. 230 (1839)................................................................................................. 5

*Kalbfus v. Siddons*,
    42 App. D.C. 310, 321 (D.C. Cir. 1914)..................................................................... 19

*Marxe v. Jackson*,
    833 F.3d 1121 (3rd Cir. 1987) ................................................................................... 14

*Noel Canning v. NLRB*,
    705 F.3d 490 (D.C. Cir. 2013) ..................................................................................... 8

*Open Cmty. All. v. Carson*,
    286 F. Supp. 3d 148 (D.D.C. 2017) ........................................................................... 17

*Patriot, Inc. v. U.S. Dep't of Housing & Urban Dev.*,
    963 F. Supp. 1 (D.D.C. 1997) .................................................................................... 13

*Pub. Citizen v. Burke*,
    655 F. Supp. 318, (D.D.C. 1987) ................................................................................. 7

*Raines v. Byrd*,
    521 U.S. 811 (1997)...................................................................................................11

*Sampson v. Murray*,
    415 U.S. 61 (1974)...............................................................................................10, 11

*Small v. Avanti Health Sys., LLC*,
    661 F.3d 1180 (9th Cir. 2011) ................................................................................... 17

*Smith v. Jackson*,
    246 U.S. 388 (1918)..................................................................................................... 7

*Wilcox v. Trump*,
    No. CV 25-334 (BAH), 2025 WL 720914 (D.D.C. Mar. 6, 2025) .......................... 16

*Xiaomi Corp. v. Dep't of Def.*,
    No. CV 21-280, 2021 WL 950144 (D.D.C. Mar. 12, 2021) .................................... 13

## STATUTES

22 U.S.C. § 290f, *et seq.* .......................................................................... 1,3, 5, 8, 18

5 U.S.C. § 3347(a) ...................................................................................................... 5, 7

5 U.S.C. § 3348, *et seq.*............................................................................................. 5, 6, 7

5 U.S.C. § 3349c, *et seq.*............................................................................................ 5, 6

Pub. L. No. 118-47, 138 Stat. 460 ...................................................................... 1, 15, 18

**COURT RULES**

U.S. Ct. of App. D.C. Cir. R. 36(e)(2) .............................................................11

**TREATISES**

Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2948 (3d ed.). ............................................. 13, 19

**OTHER AUTHORITIES**

Department of Government Efficiency (@DOGE), X (Mar. 4, 2025),
    https://x.com/doge/status/1897023739960680843 ..................................................... 9

Office of Legal Counsel, *Memorandum for Attorneys of the Office* (July 16, 2010),
    https://www.justice.gov/olc/page/file/1511836/dl ..................................................... 7

## INTRODUCTION

This is not a case about reasonable disagreements over the size of government, or how most effectively to spend allocated funds.  Defendants unlawfully terminated the President of the Inter-American Foundation (IAF) and replaced her with an *ultra vires* stand-in whose appointment is contrary to the Constitution and the law.  Now, Defendants have trained their fire on the IAF itself, cancelling its grants and terminating its staff.   Virtually all of the IAF's employees are on administrative leave and will be provided their formal walking papers in less than 48 hours.

These actions violate the law.  Congress has time and time again recognized the IAF's value.  It wrote the IAF into existence through legislation.  It directs the IAF to coordinate developmental activities in the Western Hemisphere with international organizations "to the maximum extent possible."  22 U.S.C. § 290f(d).  And it has consistently appropriated funds to the IAF, mandating that the IAF not use funds "to implement a reorganization, redesign, or other plan" to "expand, eliminate, consolidate, or downsize" the agency without first consulting with Congressional appropriations committees, and providing the committees with a detailed justification for any such plan.  Pub. L. No. 118-47, § 7063(a), Div. F. tit. III, 138 Stat. 460, 843–44.  This is because the IAF has long enjoyed broad bipartisan support for its direct, cost-effective, boots-on-the-ground approach to advancing U.S. interests in this hemisphere.

Ms. Aviel was placed directly at the crossroads of Defendants' actions.  She was asked by Defendants to acquiesce to their interpretation of "minimum statutory presence" and functionally gut the organization.  When she refused to take steps she thought were unlawful, Defendants sought to make an example by purporting to terminate her under the authority of the President of the United States—in direct contravention of established law on removal.  Now, Defendants have attempted to walk that step back by claiming that Ms. Aviel was terminated by apparent acting

Board member Marocco days later.  That re-firing, even if true, is plainly unlawful too.  In short, the events taking place at the IAF very much concern Ms. Aviel.  Her unlawful removal from a *leadership* role that she is statutorily entitled to is itself an irreparable harm because each and every day away from that position cannot be recovered.  What is more, how the IAF is run is a direct reflection on Ms. Aviel.  Defendants' annihilation of the agency which she has spent nearly three years leading directly damages her personal reputation which she has cultivated through a lifetime of public service.  And were Ms. Aviel to win at the merits stage without an injunction, such a ruling would ring hollow, because there will be no agency left for her to run.

This Court should find that Plaintiff has a high likelihood of success on the merits, and temporarily restrain and preliminarily enjoin Defendants' actions until this Court has decided the merits.

## ARGUMENT

### A.    Ms. Aviel Is Likely to Succeed on the Merits.

Defendants are mistaken about the facts.  Peter Marocco did not fire Ms. Aviel.  President Trump did.  The record is clear that President Trump terminated Ms. Aviel on February 26, 2025— two days *before* Peter Marocco was unlawfully appointed President of the IAF.  That alone should end the inquiry: only the Board had the power to fire Ms. Aviel, and the Board did not fire her.  Defendants' silence in the face of these facts is deafening.  They do not address these arguments at all; they seek to ignore them.  But pretending the facts don't exist will not make them go away.  And even if the Court were to consider Defendants' series of counterfactual events, any action taken by Marocco was *ultra vires* because his appointment to the IAF Board was unlawful.  He could not fire Ms. Aviel on February 28, 2025, because he was not the Chair of the Board; he could not appoint Dominic Bumbaca as President on March 7, because he had no power to do so.  No court has accepted, nor will any court accept, Defendants novel legal theories to the contrary, which

2

fly in the face of well-settled law.  There is no question that settled precedent clearly establishes that Ms. Aviel—and only Ms. Aviel—is the lawful President of the IAF.

## I.    The President Lacks the Authority to Fire Ms. Aviel.

As Ms. Aviel's motion explained in detail, courts have long held that in circumstances like these, the power to hire is the power to fire.  *See* ECF 5-1 ("TRO Mem.") at 15-19.  Where Congress vests the appointment of an "inferior officer" in the head of a department, "it is ordinarily the department head, rather than the President, who enjoys the power of removal."  *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 493 (2010).  Here, the Board serves as the IAF's principal officer, and the IAF's President is an inferior officer who is only subject to removal by the IAF Board.

Defendants dispute none of this.  They acknowledge that "[t]he Foundation president 'serves on such terms as the Board may determine.'"  ECF No. 19 ("Defs' Resp.") at 13 (quoting 22 U.S.C. § 290f(*l*)(1)).  And they do not contest that President Trump lacks the authority to remove Ms. Aviel, or that she is an inferior officer.  Instead, Defendants claim that Ms. Aviel was not terminated by the President but instead, that "Marocco, whom President Trump had lawfully designated as the sole member of the Foundation Board, removed Aviel as president of the Foundation."  *Id.* at 5.  They claim that this removal by Marocco occurred on February 28, 2025. *Id.* at 9 (citing ECF No. 14-1, Marocco Decl. ¶ 3).

But as a factual matter, Marocco was *not* the one who purported to fire Ms. Aviel.  Ms. Aviel's Complaint, TRO motion, and supporting declaration explained that on the evening of February 26, 2025, Ms. Aviel received an email from Trent Morse of the Presidential Personnel Office informing Ms. Aviel that her position at the IAF had been terminated *at the direction of President Trump*.  TRO Mem. at 12; ECF 5-2 ("Aviel Decl.") ¶ 14.  Ms. Aviel can confirm with a copy of the email from Morse that the communication was in fact sent on February 26.

Supplemental Decl. of Sara Aviel ("Supp. Decl.") ¶ 4; Ex. D.  Although they do not assert this, to the extent Defendants claim the email from Morse was sent in error, or that it was a precursor to Ms. Aviel's formal termination by Marocco on February 28, 2025, that simply cannot be the case either.  Defendants have not produced a single communication from Marocco on or after February 28 informing Ms. Aviel that he was terminating her.  To the contrary, Ms. Aviel's final Leave and Earnings Statement and formal Notification of Personnel Action both establish that she was only paid and employed through February 26, 2025; her employment was thus conclusively considered by the government to have terminated on that date.  Supp. Decl. ¶ 3; Ex. E.  Ms. Aviel is likely to succeed on the merits of her claim that her termination at the direction of President Trump was unlawful and should be enjoined.  Defendants present no argument to the contrary.

## II.    Defendants Lack Any Authority to Appoint Marocco as a Member of the Board.

Even if Marocco had terminated Ms. Aviel (and he did not), Ms. Aviel's purported termination was still *ultra vires*.  Marocco could not have been appointed[1] to serve as a sole, acting Board member.  The Federal Vacancies Reform Act (FVRA) provides the "exclusive means" for appointment of an acting official, unless another "statutory provision expressly" authorizes such an appointment or the President validly makes a recess appointment.  5 U.S.C. § 3347(a).  The FVRA specifies in no uncertain terms that "[u]nless an officer or employee is performing the functions and duties in accordance with sections 3345, 3346, and 3347"—that is, unless an official

---

[1] This is to say nothing of the fact that no indication was given by the members of the IAF Board that they had been removed by the President.  *See* Aviel Decl. ¶ 13; *see also* Ex. B.  Defendants contend that the President removed all Board members on February 24 and 26, Defs' Resp. at 1, but they provide no evidentiary support that termination notices were ever delivered or that the Board members were otherwise notified.  It is true that for purposes of this motion for preliminary injunctive relief only, Plaintiff does not necessarily dispute that the President has the "authority to remove members of the board," *id.* at 8.  But to be clear, that does not excuse Defendants from ultimately showing that removal was "made either by express notification, or [] by appointing another person to the same office."  *In re Hennen*, 38 U.S. 230, 247 (1839) (citation omitted).  For purposes of the instant motion, whether the President fired the Board does not bear on Plaintiff's likelihood of success, for the reasons discussed in this section.

was appointed under the terms of the FVRA or under another explicit statutory provision—any vacancy in an office requiring Senate confirmation "shall remain vacant." 5 U.S.C. § 3348(b).

The FVRA does not allow acting appointments to the IAF's multi-member Board. *See* 5 U.S.C. § 3349c(1). Nor does any provision of the IAF's organic statute authorize the appointment of acting members to the IAF's Board. *See* 22 U.S.C. § 290f *et seq.* Instead, the sole means of appointment to the Board, excepting Recess Appointments, is through appointment by the President, by and with the advice and consent of the Senate. 22 U.S.C. § 290f(g). Accordingly, under the FVRA, any IAF Board seat that is purported to be filled by an acting member must instead remain "vacant," 5 U.S.C. § 3348(b), and any action taken by such a purported official "shall have no force and effect," 5 U.S.C. § 3348(d)(1).

Defendants resist this conclusion through an impossibly contorted reading of the FVRA that mangles its text, history, and structure. They acknowledge that the FVRA excludes the appointment of a member of a multi-member board (like the IAF) on an acting basis. Defs' Resp. at 7 (citing 5 U.S.C. § 3349c(1)). But they contend that this means the provisions in 5 U.S.C. § 3348(b) and (d)(1), regarding the continuing vacancy and abnegation of actions when there is no proper appointment, do not apply. This is wrong for multiple reasons. First, under the FVRA's plain language, Congress contemplated and expressly rejected Defendants' argument—the statute specifies that "an action taken by any person who is not acting . . . in the performance of any function or duty of a vacant office to which this section ***and*** [*inter alia*] sections . . . 3349c apply shall have no force or effect," and "may not be ratified." 5 U.S.C. § 3348(d)(1)–(2) (emphasis added). Put another way, under Section 3348, when Section 3349c excludes multi-member boards from appointments of acting officers, those provisions of the FVRA still apply. And this makes practical sense. The provisions in 5 U.S.C. § 3348(b) and (d)(1) & (2) apply in harmony with the

rule excluding boards like the IAF's because exactly like 5 U.S.C. § 3349c(1), they set forth the legal effect *in the absence* of a proper appointment under the FVRA. *See also* 5 U.S.C. § 3348(b) ("***Unless*** an officer or employee is performing the functions and duties in accordance with sections 3345, 3346, and 3347 . . . .") (emphasis added).

From there, Defendants further contort by contending that because the FVRA excludes boards like the IAF's, *see* 5 U.S.C. § 3349c, such boards are excluded from the entirety of the law—notwithstanding the statute's plain statement that it is the "exclusive means" of appointment of acting officials. Defs' Resp. at 8. Therefore, according to Defendants, because the FVRA does not apply to fill the vacancies, the FVRA places no limitations on the President's power, and the President holds implicit Article II authority to appoint acting members to the Board (and any other multimember board like it—a category that is extensive and legion). In support of this expansive view of the Take Care Clause (which no court has ever upheld), Defendants cite several Office of Legal Counsel memorandum opinions. Those include a 1977 opinion concerning the designation of an acting member of the Federal Home Loan Bank Board, 1 Op. O.L.C. 150, which did *not* interpret or concern the FVRA. Defendants also rely on the OLC's opinion issued on March 14, 2025—just before this lawsuit was filed (and after *Brehm v. Marocco* had been filed)—attempting to justify the appointment of Marocco to the Board, 49 Op. O.L.C. __. *But see* Office of Legal Counsel, *Memorandum for Attorneys of the Office* (July 16, 2010), available at https://www.justice.gov/olc/page/file/1511836/dl ("As a prudential matter, OLC generally avoids opining on questions likely to arise in pending or imminent litigation involving the United States as a party[.]"). Those opinions are not binding on this Court. *See Pub. Citizen v. Burke*, 655 F. Supp. 318, 321–22 (D.D.C. 1987) (citing *Smith v. Jackson*, 246 U.S. 388, 390–91 (1918)) ("As interpreted by the courts, an Attorney General's opinion is binding as a matter of law on those who

request it until . . . overruled by the courts."); *see also Cherichel v. Holder*, 591 F.3d 1002, 1016 n.17 (8th Cir. 2010), *abrogated on other grounds by Escobar v. Garland*, 55 F.4th 662 (8th Cir. 2022) ("[T]he courts are not bound by [OLC opinions.]").  Their logic is wrong, and the fact that the March 14, 2025 OLC opinion appears to have been cooked up in anticipation of and issued during the *Brehm* litigation, contravening the OLC's well-settled prudential policy against issuing such opinions during pending litigation, only further calls it into to question.

Moreover, the March 14 opinion overlooks the very same legal principles that Defendants now ignore in their response.  As Defendants necessarily acknowledge, Defs' Resp. at 8, the FVRA provides the "exclusive means" to appoint an acting official.  5 U.S.C. § 3347(a).  For the reasons set forth above, Defendants cannot prevail in arguing that the provisions in 5 U.S.C. § 3348(b) and (d)(1) & (2)—including the provision stating that any purported action taken by an acting member in a vacant seat shall have no force or effect—do not apply simply because the FVRA excludes boards like the IAF's.

Defendants are also wrong to suggest that without the FVRA, there is a vacuum of authority that the President is permitted to fill.  Congress specifically addressed the possibility that seats on the IAF Board would become vacant—not by authorizing the appointment of acting Board members, but instead by permitting Senate-confirmed Board members to remain in their positions until a successor is nominated and confirmed.  22 U.S.C. § 290f(g) ("[U]pon the expiration of his term of office a member shall continue to serve until his successor is appointed and shall have qualified.").  Therefore, Defendants are wrong to argue that "[n]o statute limits or prohibits the President's prerogative to ensure that the Foundation has temporary leadership."  Defs' Resp. at 6–7.

Finally, and in any case, Defendants may not disregard the strictures of the FVRA even if "Congress ha[d] chosen not to provide for acting [Board] members." *Noel Canning v. NLRB*, 705 F.3d 490, 511 (D.C. Cir. 2013), *aff'd*, 573 U.S. 513 (2014). If Defendants wish to name a new Board at the IAF, they must follow the process defined in Article II of the Constitution for the appointment of principal officers and the IAF's statute—that is, Presidential nomination and Senate confirmation. Contrary to Defendants' suggestion through the inclusion of their exhibit, the President's "*transmitt[al]*" (Defs' Resp. at 14) of two nominees to the IAF Board does *not* help them in this respect. Critically, the Senate has not yet confirmed any new members of the IAF Board. Until then, Defendants cannot rely on their own failure as justification for an acting appointment plainly prohibited by law. *See Noel Canning*, 705 F.3d at 511 ("We cannot accept an interpretation of the Constitution completely divorced from its original meaning in order to resolve exigencies created by—and equally remediable by—the executive and legislative branches."). What's more, if the President has the expansive authority to put in acting principal officers under Article II, why would the Founders have ever included a Recess Appointments Clause? And why would Congress have ever even passed the FVRA, all of which the Defendants' arguments would render mere surplusage? Because Marocco has not been validly appointed as an acting member of the Board, any actions he has taken or intends to take in that capacity must be treated as void and without effect. Ms. Aviel is entitled to relief reverting to the status quo before Marocco illegally exercised that authority.

## B.    Ms. Aviel Will Suffer Irreparable Harm Without Immediate Injunctive Relief.

Ms. Aviel is an inferior officer of the United States, the President of an independent agency created by Congress, and the lawful CEO of the Inter-American Foundation. Instead of carrying out her congressionally-mandated duties, she has instead been improperly fired, and an *ultra vires* officer installed in her place. The agency she runs, meanwhile, is being reduced to ash. In just

two days, a massive unlawful reduction-in-force will sever almost every member of the agency—potentially every member save just one.[2] Aviel Decl. ¶ 23; Supp. Decl. ¶ 6. If the employees are not reinstated, there will be further irreparable harm to Ms. Aviel's ability to carry out her job. Even if Ms. Aviel is eventually returned to her position, without a preliminary injunction there will be no agency left for her to lead. And this is by design. Defendants have made clear their intent is to finish off the IAF. *See* Aviel Decl. ¶ 19–23; Supp. Decl. ¶ 6. Comparing Ms. Aviel to a run-of-the-mill employee who can receive back wages fails utterly to place her in the proper context as an agency President and CEO. What's more, under the theories advanced by Defendants, there is no one who possibly has standing to enjoin the gutting of the IAF. This cannot be. Defendants should not be able to render this Court functionally powerless in the face of their clear violations of the law and the Constitution, and then return to tell the Court that the agency has already been reduced to ash so there is no case left to be had. The President of the IAF suffers harm when she is unlawfully removed, and the agency she runs burned to the ground, contrary to the clear law passed by Congress prohibiting such actions. Paying Ms. Aviel lost wages will not make her whole. Nor will it uphold the rule of law.

Defendants repeatedly compare Ms. Aviel to an ordinary employee who has been wrongly terminated from her job. *See* Defs' Resp. at 10. But Ms. Aviel is no ordinary employee. She is an inferior officer of the United States, and holds a position mandated by Congress. Defendants argue that the Supreme Court has foreclosed irreparable harm in circumstances like this one. *See id.* That is wrong. Defendants lean on *Sampson v. Murray*, 415 U.S. 61 (1974). *See id.* at 10, 15. But

---

[2] Ms. Aviel, who has no access to her work email or computer system, last heard there were three employees who had not yet been put on administrative leave. Aviel Decl. ¶ 19; Supp. Decl. ¶ 6. On March 4, 2025, the Department of Government Efficiency's official X account posted that "The Inter-American Foundation . . . has been reduced to its statutory minimum (*1 active employee*)." Department of Government Efficiency (@DOGE), X (Mar. 4, 2025), https://x.com/doge/status/1897023739960680843 (last visited Mar. 27, 2025) (emphasis added).

*Sampson* concerned a completely different set of facts: a probationary employee at the Public Building Services of the General Services Administration (GSA) who was four months into her job. *See Sampson*, 415 U.S. at 62–63. Ms. Aviel is as far from a probationary employee who has worked four months as is imaginable: she is the President of an independent agency who has served nearly three years in that position. Aviel Decl. ¶ 3. What's more, the very footnote cited by Defendants in their response explicitly cabins *Sampson*'s holding to circumstances "when discharge of probationary employees is an issue." *See Sampson*, 415 U.S. at 92 n.68.

Even if read more broadly as the Government erroneously contends, *Sampson* explicitly left open the possibility of a preliminary injunction, *even for probationary employees*. *Id*. Ms. Aviel's case is the type of "genuinely extraordinary situation" where "the circumstances surrounding an employee's discharge, together with the resultant effect on the employee . . . so far depart from the normal situation that irreparable injury" exists. *Id.* That Plaintiff is the President of a prominent U.S. foreign assistance agency that reaches millions of people in the Western Hemisphere only adds to the extraordinary nature of this illegal discharge. *See* Aviel Decl. ¶ 27.[3]

Next, Defendants argue that Ms. Aviel complains only of a "loss of political power," which they argue is not an irreparable harm. Defs' Resp. at 10 (citing *Raines v. Byrd*, 521 U.S. 811, 821 (1997)). But that is also not what *Raines* holds, and that is not what Ms. Aviel is contending. *Raines* concerned a completely unrelated issue: could a member of Congress sue to challenge the Line Item Veto in a purely official capacity? (The Court said no.) *See* 521 U.S. at 821. In fact, the *Raines* Court expressly distinguished that case from other situations where an individual sues in their personal capacity because, for example, they had been "deprived of something to which

---

[3] Finally, unlike the probationary employee in *Sampson*, Ms. Aviel furnished an affidavit describing in detail why she suffered irreparable harm as a result of the complete gutting of the agency which she supervises. *Compare with Sampson*, 415 U.S. at 88 ("[T]he affidavit [plaintiff] submitted to the District Court did not touch in any way upon considerations relevant to irreparable injury.").

they *personally* are entitled—such as their seats as Members of Congress." *Id.* (emphasis in original). In other words, *Raines* holds just the opposite of what Defendants want it to: a plaintiff like Ms. Aviel, who sues in both her official *and* personal capacities, suffers an injury when she is improperly removed from her position to which she is personally entitled.

Now as to *Dellinger*. *See* Defs' Resp. at 10. As this Court properly noted at the status conference held on March 19, *Dellinger* is an unpublished opinion by a motions panel and therefore has no precedential value. U.S. Ct. of App. D.C. Cir. R. 36(e)(2). That alone should end the inquiry. But in any case, *Dellinger* does not say what Defendants think it says. Far from precluding relief in this case, *Dellinger* clearly states that the stay assessment is "dependent upon the circumstances of the particular case." *Dellinger v. Bessent*, No. 25-5052 (D.C. Cir. March 10, 2025), slip op. at 7. What's more, the particular facts of *Dellinger* are demonstrably different from those here. The panel in *Dellinger* emphasized that "[a]t worst, Dellinger would remain out of office for a short period of time." *Id.*, slip op. at 4. There was no allegation that the Office of the Special Counsel was being gutted. *See generally id.* Here, Ms. Aviel will have no job to return to because all her employees will have been fired, all of the grants cancelled, and all of the grantee and partner relationships she has been nurturing for years destroyed. In addition, the Court noted in *Dellinger* that the injury from the government "having to try and unravel Dellinger's actions is substantial." *Id.*, slip op. at 4. That is not the case here. If the Court grants the preliminary injunction and Ms. Aviel subsequently loses her case, there is nothing to prevent the government from restarting its slash-and-burn approach the very same day. But if this Court fails to grant the preliminary injunction and Ms. Aviel subsequently wins, hers will be at best a Pyrrhic victory, because the agency she runs will have been reduced to nothingness during the period of time she was unlawfully removed.

Defendants next argue that courts have "repeatedly rejected the notion that the deprivation of a unique, singular, or high-level position is any more of an irreparable injury." Defs' Resp. at 11. But no case they cite is remotely similar to this one, where an agency will be burned to the ground while its President is improperly removed. The only one they cite that even comes close, *Brehm v. Marocco*, explicitly supports issuing an injunction in *this specific* case. First, *Brehm*'s conclusion that the plaintiff did not identify any cognizable irreparable harm to himself as opposed to his agency is arguably in tension with authoritative caselaw that recognized irreparable harm stemming from the inability to carry out one's statutory duties. *See* discussion *infra* (including *Berry*). But even setting aside that issue, the court's conclusion is factually distinguishable. Ms. Aviel does face a different, cognizable personal harm that was simply not present in *Brehm*. Unlike the plaintiff in that case, Ms. Aviel has served as President and CEO of the IAF for nearly three years. Aviel Decl. ¶ 3. She has dedicated much of her life to the public interest. *Id.* ¶ 4. It is because she possessed that background that she decided to carry out the IAF's obligations to implement community development programs and advance U.S. strategic interests in the region. *See id.* The forced shutdown of the IAF has undermined that mandate, and by extension, Ms. Aviel's reputation as President. In addition to the harms described in Ms. Aviel's original motion, this damage to reputation can constitute irreparable harm, too. *See Atlas Air, Inc. v. Int'l Bhd. of Teamsters,* 280 F. Supp. 3d 59, 104 (D.D.C. 2017), *aff'd*, 928 F.3d 1102 (D.C. Cir. 2019) (loss of trust and reputation from disrupted operations ruled irreparable); *Patriot, Inc. v. U.S. Dep't of Housing & Urban Dev.,* 963 F. Supp. 1, 5 (D.D.C. 1997) (damage to business reputation irreparable); *Xiaomi Corp. v. Dep't of Def.,* No. CV 21-280, 2021 WL 950144, at *9 (D.D.C. Mar. 12, 2021) (collecting cases). Because "[i]njury to reputation or goodwill is not easily measurable

in monetary terms," it is typically "viewed as irreparable." Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.).

What's more, Judge Leon's analysis was clearly predicated on the notion that "the Court could remedy any harm by reinstating [Brehm] to his position and ordering him back pay." *Brehm*, ECF No. 15, slip op. at 5. But Judge Leon explicitly noted that "Brehm's assertions regarding the extent of the harm are speculative," *id.*, slip op. at 7, because "the mere possibility that defendants will follow the same path as they did with IAF falls short of the imminent threat of injury required to grant a TRO." *Id.* (internal quotation marks and citation omitted). Judge Leon held there was no irreparable harm in *Brehm* because the ADF was not the IAF. This case is the *exact* case Judge Leon used as a foil for *Brehm*. Brehm could not prove his case would be like the IAF, so he lost. Ms. Aviel's case *is* the IAF.

Similar flaws pervade Defendants' other cited cases, such as *Hetreed v. Allstate Insurance Co.*, 135 F.3d 1155 (7th Cir. 1998) (cited at Defs' Resp. at 11). That case concerned an employee of an insurance company who helped supervise an audit department. *Id.* A private audit supervisor sits in a demonstrably different posture from an officer of the United States who heads a government agency, which will be utterly destroyed in her absence. And the Seventh Circuit in *Hetreed* explicitly discussed how the particular preference against interlocutory relief in employment discrimination cases played a significant role in the decision not to issue a preliminary injunction, *id.*, but this is not an employment discrimination case. Or consider the Third Circuit's decision in *Marxe v. Jackson*, 833 F.3d 1121 (3rd Cir. 1987) (cited at Defs' Resp. at 11), also an employment discrimination case. There, the Third Circuit explicitly stated that its holding was premised on the unique law of employment discrimination. *Id.* at 1127. That has nothing to do with this case. In all, the vast majority of cases cited by Defendants related to employees (almost

all of whom were not of the United States), not officers, and they certainly did not concern agencies on the way to being reduced to rubble.

On the other hand, cases where plaintiffs are more similarly positioned to Ms. Aviel uniformly cut against Defendants. Consider Defendants' reliance on *English v. Trump*, 279 F. Supp. 3d 307 (D.D.C. 2018). *See* Defs' Resp. at 11 (citing *English* for the proposition that "any harm that an agency director suffered from removal 'can be remediated in the ordinary course of this case'"). *English* cuts directly against Defendants. The court there explicitly relied on the fact that "[t]he CFPB *is not and will not be shuttered; it continues to operate* . . . . with the backing of the CFPB's General counsel and senior management." *Id.* at 335 (emphasis added). In contrast, the IAF's General Counsel is set to be terminated in 48 hours, along with all of its senior management. Supp. Decl. ¶ 6. *English* supports issuing a preliminary injunction in this case.

Indeed, for all of its string citations, it is telling what Defendants do not address: *Berry v. Reagan*, 1983 WL 538, at *5 (D.D.C. Nov. 15, 1983). *See* TRO Mem. at 30 (citing *Berry* as the longstanding support for the relief Plaintiff seeks, comparable to *Harris*). But ignoring *Berry* does not undercut its significance. *Berry* held that a preliminary injunction could be issued to prevent the firing by the President of members of the Civil Service Commission. 1983 WL 538, at *5. The *Berry* court's irreparable harm holding was focused on the "likel[ihood] that the Commission's ability to fulfill its mandate is disrupted by plaintiff[']s removal." *Id.* The exact same is true here: removal of Ms. Aviel, an inferior officer of the United States, clearly disrupts the ability of the IAF to do its work, since with her, the IAF would not be gutted and reduced to ashes, in clear contravention of statute expressly ordering otherwise. *See* Pub. L. No. 118-47, Div. F., § 7063(a), 138 Stat. 460, 843–44 (2024) (limiting use of "funds for reorganization, redesign, or other

plan . . . without prior consultation . . . with the appropriate congressional committees"). *Berry* goes unaddressed because it provides a compelling argument for Ms. Aviel's requested relief.

Defendants' argument is similarly analogous to arguments rejected in *Harris v. Bessent ("Harris I")*, Civ. No. 25-0412 (RC), 2025 WL 521027 (D.D.C. Feb 18, 2025), *stay of dec'n granted*, No. 25-5037 (D.C. Cir. Mar. 28, 2025). *E.g.*, *id.* at *6 (ruling that member of Merit Systems Review Board with for-cause removal protection "has established that this case represents a 'genuinely extraordinary situation' meriting injunctive relief for a discharged Government employee"). Defendants argue that "the D.C. Circuit subsequently questioned *Harris*, rejecting a removed director of the Office of Special Counsel's assertion of irreparable harm based on a 'statutory right to function.'" Defs' Resp. at 12. Not true. Nowhere in the non-precedential opinion in *Dellinger* was *Harris* addressed at all, much less "questioned." What's more, the D.C. Circuit's subsequent ruling in *Harris explicitly acknowledged the existence of a statutory right to function*. Judge Walker declared: "The assertion of a 'statutory right' is, of course, entangled with the merits because a statutory right exists only if the statute is constitutional." No. 25-5037, slip. op. at 46 (D.C. Cir. Mar. 28, 2025) (Walker, J., concurring). In other words, Judge Walker's concurrence states that where a constitutional statute exists (as is no doubt the case here), a statutory right "exists." The opinion does not discard the notion of a statutory right to function. It endorses it.[4]

Defendants also claim that *Harris*'s logic does not apply because MSPB members could be removed only for cause. *See* Defs' Resp. at 13. First, this was not a critical element in the *Harris* irreparable-harm analysis. Second, the fact that Defendants may have improperly removed

---

[4] To the extent that Defendants may argue that the panel opinion in *Wilcox* and *Harris* undermine Plaintiff's argument here, Plaintiff respectfully requests the opportunity to argue and brief that issue on an extremely expedited schedule. The D.C. Circuit in *Wilcox* and *Harris* was concerned nearly exclusively with whether to apply *Humphrey's Executor* to the MSPB and NLRB, a legal issue that does not exist here.

Ms. Aviel in a *different way* than the improper removal in *Harris* does not mitigate the argument's application here.  Ms. Aviel could only be fired by the Board.  Instead, she was wrongly terminated by the President of the United States in clear contravention of the law.  *See supra* § A.I.  Then, to the extent she was re-terminated after her first firing by Marocco (a fact which Ms. Aviel contests), that action was also *ultra vires*.  *See supra* § A.II.  The D.C. Circuit panel all appears to agree that, were the organic statute at issue constitutional (as there is no question is the case here), the firing in *Harris* was unlawful.  So too here; the firing here was unlawful.  Both plaintiffs are officers of the United States.  And both play a critical role in running their agency.

The same is true of *Wilcox v. Trump*, where Judge Howell ruled: "Courts have recognized as irreparable harms the 'unlawful removal from office by the President' and 'the obviously disruptive effect' that such removal has on the organization's functioning."  No. CV 25-334 (BAH), --- F. Supp. 3d ---, 2025 WL 720914 (D.D.C. Mar. 6, 2025) (quoting *Berry*, 1983 WL 538, at *5). That is exactly what has occurred here.  The President has unlawfully removed Ms. Aviel from her position, and there has been an "obviously disruptive effect" on the organization's functioning.  As Judge Contreras properly noted in *Harris*, "[b]y vindicating [her] right to occupy th[at] office[], th[is] plaintiff[] act[s] as much in [her] own interests as those of [her] agenc[y's] . . . . Striking at the independence of these officials accrues harm to their offices, as well."  2025 WL 521027, at *7 (citations omitted).  Nothing in the D.C. Circuit's subsequent reversal of these opinions for independent reasons related to *Humphrey's Executor* challenges the analytical persuasiveness of the district courts' assessments of irreparable harm.  Indeed, the D.C. Circuit appears to not only acknowledge the existence of a "statutory right to function," but Judge Walker also noted for *Wilcox* that the NLRB's ability to function was not seriously at issue in that case, unlike here where the IAF is being unlawfully gutted.  *See* No. 25-5037, slip op. at 49 (Walker, J. concurring)

Because Ms. Aviel's harms are immediate, irreparable, and not compensable by money damages, immediate injunctive relief is both necessary and appropriate.[5]

## C.    The Balance of Hardships and Public Interest Favor Immediate Injunctive Relief.

Both sides agree: the balance of the equities and the public interest inquiries merge into one factor when the government is the non-movant, as here.  *See* Defs' Resp. at 14.  And both sides agree: "the public interest favors applying federal law correctly." *Id.* at 15 (quoting *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1197 (9th Cir. 2011)); *see also Open Cmty. All. v. Carson*, 286 F. Supp. 3d 148, 179 (D.D.C. 2017) (cited at TRO Mem. at 28) ("[T]here is substantial public interest in having governmental agencies abide by the federal laws . . . that govern their existence and operations.").  That is where the agreement ends.  The substantial public interest in applying the law correctly weighs heavily in Ms. Aviel's favor, in a case where Defendants are eliding federal statutes governing the selection of principal officers and inferior officers, and where they are working to dismantle an agency in contravention of Congressional mandate.

In citing President Trump's Executive Orders, Defendants suggest that the new administration has different goals in mind for the IAF and that Ms. Aviel's leadership would undermine those goals.  *See* Defs' Resp. at 15–16.  That argument overlooks Congress's role with respect to federal agencies and what Congress has already mandated regarding the IAF's role.  Congress alone has historically held the power to creates statutes that instruct agencies like the IAF on their mission.  *See Grundmann v. Trump*, No. CV 25-425 (SLS), --- F. Supp. 3d ---, 2025 WL 782665, at *1 (D.D.C. Mar. 12, 2025) ("From its earliest days, Congress exercised [its Article I] power by creating institutions to structure the government.  And for almost a century and a half,

---

[5] Should the Court conclude that a preliminary injunction is not available here, Plaintiff requests that the Court grant the requested relief via mandamus.  *See, e.g.*, *In re Sawyer*, 124 U.S. 200, 212 (1888) (confirming that courts have jurisdiction to "determine the title to a public office . . . either by *certiorari*, error, appeal, or by *mandamus*, prohibition, *quo warranto*, or information in the nature of a writ of *quo warranto*").

Congress has created independent federal agencies with specific expertise . . . ."). Here, specifically, Congress directed the IAF to "provide support for developmental activities . . . in the Western Hemisphere," including by "plac[ing] *primary emphasis* on the enlargement of educational opportunities at all levels, the production of food and the development of agriculture, and the improvement" of conditions such as health, housing, and economic needs of the people. 22 U.S.C. § 290f(b) (emphasis added). It directed the agency "*to the maximum extent possible*, [to] coordinate its undertakings with the developmental activities in the Western Hemisphere" with various groups, including international organizations and other entities engaged in promoting social and economic development in Latin America. 22 U.S.C. § 290f(d) (emphasis added).

Congress has continued to appropriate funds that the IAF is instructed to disburse, including as recently as last month. *See* Compl. ¶¶ 43–44; Supp. Decl. ¶ 7. Most notably, Defendants completely fail to mention or acknowledge that Congress has specifically directed *by law* that the IAF may not use appropriated funds "to implement a reorganization, redesign, or other plan" to "expand, eliminate, consolidate, or downsize" the agency without first consulting with Congressional appropriations committees, and providing the committees with a detailed justification for any such plan. Pub. L. No. 118-47, § 7063(a), Div. F. tit. III, 138 Stat. 460, 843–44. Supposed adherence to the administration's new policy goals does not provide cover for the reduction of the IAF to a skeletal staff that administers a single grant, in complete disregard of the statutorily mandated missives from Congress. The public interest weighs heavily in favor of respecting Congress's role in the creation, structure, and funding of the IAF, and in favor of curtailing Defendants' attempted circumvention of the same. Indeed, Ms. Aviel seeks—and sought—to align the IAF with the government and President Trump's expressed priorities and efficiency goals whenever lawful. Aviel Decl. ¶¶ 7. But the key is that this must be done lawfully.

18

Finally, Defendants argue that Ms. Aviel should be denied a preliminary injunction that "seeks a change in the status quo." Defs' Resp. at 16. But Defendants' argument flies in the face of binding authority. In *Huisha-Huisha v. Mayorkas*, the D.C. Circuit rejected the very same argument that Defendants raise here: that denying a preliminary injunction would "preserve the pre-litigation status quo." 27 F.4th 718, 733 (D.C. Cir. 2022). "But that's backwards. The status quo is the last *uncontested* status which preceded the pending controversy." *Id.* (emphasis in original, and internal quotation marks and citation omitted). "The traditional goal of a preliminary injunction is to preserve *that* status quo." *Id.* (emphasis in original); *see also* 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2948 (3d ed. 1998) ("Courts also have awarded preliminary injunctions when it is necessary to compel defendant to correct injury already inflicted by defining the status quo as 'the last peaceable uncontested status' existing between the parties before the dispute developed.").

Like in *Huisha-Huisha*, the status quo here is "the regime in place before the [government's disputed] orders." 27 F.4th at 733. Ms. Aviel is the one seeking to revert to the status quo by asking this Court to confirm that at all relevant times, she has been the lawfully-appointed President and CEO of the IAF, and that at no relevant time has Marocco lawfully been able to exercise authority on behalf of the IAF. *See also Harris v. Bessent ("Harris II")*, 2025 WL 679303, at *11 n.13 (D.D.C. Mar. 4, 2025), *stay of dec'n granted*, No. 25-5037 (D.C. Cir. Mar. 28, 2025) (citing *Kalbfus v. Siddons*, 42 App. D.C. 310, 321 (D.C. Cir. 1914) (explaining that a plaintiff does not "seek a court order returning her to [office]" if she "was never in fact removed"). The only reason the current state of affairs are what they are is because Defendants wrongly concluded that President Trump could appoint Marocco as acting Chair of the Board, that Marocco could appoint then himself as President of the IAF, and that Marocco could then terminate Ms.

Aviel (post hoc).  But as explained in Ms. Aviel's motion and herein, those conclusions rest on sand beds; none of those actions is legally justified.  Ms. Aviel seeks recognition of that through this lawsuit, and in the meantime, asks that the case be preserved at the "last uncontested status." *Huisha-Huisha*, 27 F.4th at 733.  Defendants have simply altered the "status quo" so rapidly and brazenly that they now attempt to claim this as the norm.  This Court should not give air to that effort.

**D.    The Court Should Waive Any Security.**

In asking that Ms. Aviel be required to post a bond commensurate with the scope of an issued injunction, Defs' Resp. at 16 (as far as counsel for Ms. Aviel can tell, this request is the first of its kind in recent, similar cases), Defendants fail to acknowledge Ms. Aviel's arguments on this very issue raised in both her Complaint and Motion.  *See* Compl. at prayer n.6; TRO Mem. at 15 n.1.  For the reasons set forth therein, Ms. Aviel continues to request that the Court exercise its broad discretion to waive the security in this case.  To the extent the Court decides that any security is necessary, it should be nominal (Plaintiff proposes $1.00) because the scope of the injunction is not expansive—and Defendants have not provided any indication of how to calculate such a security.  As discussed in the section above, Ms. Aviel merely seeks to return to the true status quo and confirm what has already lawfully been the case.

<u>CONCLUSION</u>

For the foregoing reasons, this Court should grant the requested temporary restraining order and preliminary injunction, ordering Defendants to refrain from improperly removing Plaintiff as President and CEO of the IAF pending resolution of this action, including any appeal.

Dated: March 31, 2025                    Respectfully submitted,

                                         _/s/ Aaron S.J. Zelinsky_____
                                         Aaron S.J. Zelinsky*
                                         ZUCKERMAN SPAEDER LLP
                                         100 East Pratt Street, Suite 2440
                                         Baltimore, MD 21202
                                         Tel: (410) 332-0444
                                         Fax: (410) 659-0436
                                         azelinsky@zuckerman.com

                                         Aaron Chou (DC Bar No. 90020425)*
                                         M Moore (DC Bar No. 90004368)
                                         ZUCKERMAN SPAEDER LLP
                                         2100 L Street NW, Suite 400
                                         Washington, DC 20037
                                         Tel: (202) 778-1800
                                         Fax: (202) 822-8106
                                         achou@zuckerman.com
                                         mmoore@zuckerman.com

                                         *Counsel for Plaintiff Sara Aviel*

                                         *Admitted pro hac vice*

21

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 31st day of March, 2025, I caused the foregoing to be served

on counsel of record via the Court's electronic case filing system.

/s/ Aaron S.J. Zelinsky
Aaron S.J. Zelinsky

*Attorney for Plaintiff Sara Aviel*