UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SARA AVIEL,

       Plaintiff,

    v.

SERGIO GOR, et al.,

       Defendants.

Civil Action No. 25-0778 (LLA)

**DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THERETO**

# TABLE OF CONTENTS

Table of Contents ................................................................................................................ i

Table of Authorities ............................................................................................................ ii

Background .......................................................................................................................... 2

    I.      Legal Background. ....................................................................................... 2

    II.     Factual Background. ..................................................................................... 3

Legal Standards .................................................................................................................... 4

Argument .............................................................................................................................. 5

    I.      Aviel was Lawfully Removed From her Position as President of the Foundation.. 5

           A.      President Trump Lawfully Designated Marocco as Acting Chair of the Foundation Board and Marocco, in Turn, Removed Aviel From Her Position as President of the Foundation .................................................... 6

           B.      If the President Does Not Have the Authority to Designate Acting Board Members, then the President Must Have the Authority to Remove Aviel Himself. ........................................................................................... 12

    II.     Aviel is Not Entitled to Equitable Relief ........................................................... 14

           A.      Aviel Should Not Have Been Reinstated ................................................... 15

           B.      Aviel Is Not Entitled to Permanent Injunctive Relief. ............................. 16

           C.      Aviel is Not Entitled to Declaratory Relief ............................................... 22

           D.      Aviel is Not Entitled to a Writ of Mandamus. .......................................... 23

Conclusion .......................................................................................................................... 24

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................................4, 5
*Baker v. Carr*,
  369 U.S. 186 (1962) ................................................................................................16
*Berry v. Reagan*, Civ. A.,
  No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983) ............................................19
*Bowsher v. Synar*,
  478 U.S. 714, (1986) ..............................................................................................14
*Brehm v. Marocco*, Civ. A.,
  No. 25-0660 (RJL), 2025 U.S. Dist. LEXIS 71326 (D.D.C. Mar. 11, 2025).........18
*Burns v. GAO Emps. Fed. Credit Union*,
  No. 88-cv-3424, 1988 WL 134925 (D.D.C. Dec. 2, 1988) ....................................19
*Cafeteria & Restaurant Workers Union v. McElroy*,
  367 U.S. 886 (1961) ...............................................................................................20
*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ..............................................................................................4, 5
*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006) ...............................................................................17
*Church v. Biden*,
  573 F. Supp. 3d 118 (D.D.C. 2021) .......................................................................17
*Clinton v. City of New York*,
  524 U.S. 417 (1998) ...............................................................................................21
*Collins v. Yellen*,
  594 U.S. 220 (2021) ..........................................................................................13, 22
*Consol. Edison Co. v. Ashcroft*,
  286 F.3d 600 (D.C. Cir. 2002) ...............................................................................23
*Davis v. Billington*,
  76 F. Supp. 3d 59 (D.D.C. 2014) ...........................................................................19
*Dellinger v. Bessent*,
  No. 25-5028, 2025 U.S. App. LEXIS 3987 (D.C. Cir. Feb. 15, 2025) ............16, 19
*EEOC v. City of Janesville*,
  630 F.2d 1254 (7th Cir. 1980) ................................................................................19
*Farris v. Rice*,
  453 F. Supp. 2d 76 (D.D.C. 2006) ..........................................................................19
*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000) ..................................................................................................9
*Franks v. Nimmo*,
  683 F.2d 1290 (10th Cir. 1982) ..............................................................................19
*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010) ...............................................................................5, 6, 13, 20

*Great Lakes Dredge & Dock Co. v. Huffman*,
  319 U.S. 293 (1943) ...........................................................................................22

*Grosdidier v. Broad. Bd. of Governors*,
  709 F.3d 19 (D.C. Cir. 2013) ...............................................................................5

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
  527 U.S. 308 (1999) ...........................................................................................16

*Harris v. Bessent*,
  No. 25-5037, 2025 U.S. App. LEXIS 7301 (D.C. Cir. Mar. 28, 2025) ...............13

*Hetreed v. Allstate Ins. Co.*,
  135 F.3d 1155 (7th Cir. 1998) ............................................................................19

*Holcomb v. Powell*,
  433 F.3d 889 (D.C. Cir. 2006) .............................................................................4

*Holder v. Humanitarian L. Project*,
  561 U.S. 1 (2010) ...............................................................................................20

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
  219 F. Supp. 2d 57 (D.D.C. 2002) .....................................................................20

*In re Cheney*,
  406 F.3d 723 (D.C. Cir. 2005) ...........................................................................23

*In re Nat'l Nurses United*,
  47 F.4th 746 (D.C. Cir. 2022) ............................................................................23

*In re Sawyer*,
  124 U.S. 200 (1888) ...........................................................................................16

*Kansas v. United States*,
  124 F.4th 529 (8th Cir. 2024) ............................................................................17

*Laningham v. Dep't of Navy*,
  813 F.2d 1236 (D.C. Cir. 1987) ...........................................................................5

*Levesque v. Maine*,
  587 F.2d 78 (1st Cir. 1978) ................................................................................19

*Lovitky v. Trump*,
  949 F.3d 753 (D.C. Cir. 2020) ...........................................................................24

*Macauley v. Waterman S.S. Corp.*,
  327 U.S. 540 (1946) ...........................................................................................22

*Marxe v. Jackson*,
  833 F.2d 1121 (3d Cir. 1987) .............................................................................19

*Morrison v. Olson*,
  487 U. S. 654, (1988) .........................................................................................14

*Myers v. United States*,
  272 U.S. 52 (1926) ............................................................................... 6, 12, 14, 15

*NAACP Legal Def. & Educ. Fund, Inc. v. Barr*,
  496 F. Supp. 3d 116 (D.D.C. 2020) ...................................................................23

*Nichols v. Agency for Int'l Dev.*,
  18 F. Supp. 2d 1 (D.D.C. 1998) .........................................................................19

*Parsons v. United States*,
  167 U.S. 324 (1897) ...........................................................................................15

*Printz v. United States*,
  521 U.S. 898 (1997) .............................................................................................7

*Rubino v. City of Mount Vernon*,
  707 F.2d 53 (2d Cir. 1983) ............................................................................... 19
*Rush v. Kijakazi*,
  65 F.4th 114 (4th Cir. 2023) ............................................................................ 11
*Sampson v. Murray*,
  415 U.S. 61 (1974) ..................................................................................... 17, 20
*Samuels v. Mackell*,
  401 U.S. 66 (1971) ........................................................................................... 22
*Scott v. Harris*,
  550 U.S. 372 (2007) ........................................................................................... 4
*Seila L. LLC v. Consumer Fin. Prot. Bureau*,
  591 U.S. 197 (2020) ................................................................................... passim
*Severino v. Biden*,
  71 F.4th 1038 (D.C. Cir. 2023) ................................................................... 5, 11
*Shurtleff v. United States*,
  189 U.S. 311 (1903) ......................................................................................... 15
*Trump v. United States*,
  603 U.S. 593 (2024) ................................................................................... 16, 24
*West v. Spellings*,
  480 F. Supp. 2d 213 (D.D.C. 2007) ................................................................ 23
*Wiener v. United States*,
  357 U.S. 349 (1958) ......................................................................................... 15
*Wis. Gas Co. v. FERC*,
  758 F.2d 669 (D.C. Cir. 1985) ........................................................................ 17
*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952) ..................................................................................... 7, 10
*Zukerman v. United States Postal Serv.*,
  64 F.4th 1354 (D.C. Cir. 2023) ....................................................................... 17

**Statutes**

5 U.S.C. § 3347(a) ................................................................................................. 8
5 U.S.C. § 3348(d) ............................................................................................... 23
5 U.S.C. § 3348(d)(1) .......................................................................................... 10
5 U.S.C. § 3349c(1) ..................................................................................... 8, 9, 10
12 U.S.C. § 242 .................................................................................................... 22
22 U.S.C. § 290f .................................................................................................. 22
22 U.S.C. § 290f(g) ....................................................................................... 11, 12
22 U.S.C. § 290f(l) ............................................................................................... 14
22 U.S.C. § 290f(l)(1) .......................................................................................... 13
22 U.S.C. § 290f(q) .............................................................................................. 18
22 U.S.C. § 290f(t) ............................................................................................. 2, 3
22 U.S.C. § 290h-5(a) ............................................................................................ 7
22 U.S.C. § 290h-5(i) ............................................................................................. 8
28 U.S.C. § 2202 .................................................................................................. 22
31 U.S.C. §§ 9101 .................................................................................................. 2

Defendants, various government components and officials, including the President, sued in their official capacities, respectfully submit this memorandum in support of their cross-motion for summary judgment and in opposition to Plaintiff's motion for summary judgment. (ECF No. 20).

## INTRODUCTION

On February 24 and 26, 2025, President Donald Trump removed all members from the Board of Directors of the Inter-American Foundation ("the Foundation") effective immediately. President Trump subsequently designated Pete Marocco as the acting Chairman of the Board. In carrying out his duties as an acting Board member, Marocco removed Plaintiff Sara Aviel as president of the Foundation on February 28, 2025. The following week, Marocco selected Dominic Bumbaca as Aviel's replacement. Aviel brought this lawsuit claiming her removal was *ultra vires* and sought a preliminary injunction. Having obtained a preliminary injunction, which reinstated her as president of the Foundation, Aviel now seeks summary judgment in her favor.

The Court should deny Aviel's motion for summary judgment and grant Defendants' cross-motion for summary judgment. President Trump acted within his authority when he designated Marocco as acting Chairman of the Foundation Board, and Marocco lawfully removed Aviel when Marocco became the acting Chairman of the Board. Further, if President Trump did not have the authority to designate Marocco as an acting member of the Foundation Board, then President Trump must have the authority to remove Aviel from her position as president of the Foundation because without a Board of Directors, Aviel is the *de facto* leader of the Foundation and ultimately answers to the President.

Moreover, Aviel is not entitled to any of the equitable relief that she seeks because she has an adequate remedy at law, specifically, backpay. A district court lacks the authority to order

Aviel's reinstatement because deciding who should run the Foundation on the President's behalf is the President's prerogative, not the judiciary's. Moreover, Aviel's failure to succeed on the merits, demonstrate irreparable harm, or articulate any interest that override's the President's interest in having his preferred leadership at the Foundation renders her unable to obtain a permanent injunction, declaratory relief, or a writ of mandamus.

## BACKGROUND

### I.    <u>Legal Background.</u>

In 1969, Congress established the Inter-American Foundation ("the Foundation") to "strengthen the bonds of friendship and understanding" among the peoples of the Western Hemisphere, "to support self-help efforts designed to enlarge the opportunities for individual development," to "stimulate and assist effective and ever wider participation of the people in the development process," and to "encourage the establishment and growth of democratic foundations . . . appropriate to the requirements" of the Nations in the Western Hemisphere. *Id.* § 290f(b). The Foundation carries out these purposes through "undertaking or sponsoring appropriate research and by planning, initiating, assisting, financing, administering, and executing programs and projects" in partnership with private entities. *Id.* § 290f(c). Congress established the Foundation as a nonprofit corporation with perpetual succession. *Id.* § 290f(c), (n). The Foundation is subject to the provisions of the Government Corporation Control Act [31 U.S.C. §§ 9101 et seq.]. 22 U.S.C. § 290f(t).

The Foundation's nine-member Board of Directors, appointed by the President and subject to Senate confirmation, manages the Foundation. 22 U.S.C. § 290f(g). Board members serve six-year terms and no more than five Board members can be members of any one political party. *Id.* § 290f(g). The President designates a Chairman and Vice Chairman from among the Board Members. *Id.* The Board directs "the exercise of all the powers of the Foundation." *Id.* § 290f(i).

The Board appoints a president of the Foundation, who acts as chief executive of the Foundation and serves "on such terms as the Board may determine." *Id.* § 290f(l)(1).

On February 19, 2025, President Trump signed an Executive Order to "commenc[e] a reduction in the elements of the Federal bureaucracy that the President has determined are unnecessary." Executive Order No. 14,217, 90 Fed. Reg. 10577 (Feb. 25, 2025). The Executive Order directed that "the non-statutory components and functions of" four named governmental entities "shall be eliminated to the maximum extent consistent with applicable law, and such entities shall reduce the performance of their statutory functions and associated personnel to the minimum presence and function required by law." *Id.* The Foundation was among the four entities subject to the order. *Id.* § 2(a)(ii). The Executive Order directed the Foundation to "submit a report to the Director of the Office of Management and Budget confirming compliance with this [Executive Order] and stating whether the governmental entity, or any components or functions thereof, are statutorily required and to what extent." *Id.* § 2(a)(iii).

## II.    <u>Factual Background.</u>

Plaintiff Sara Aviel was appointed president of the Foundation by the Board of Directors on March 7, 2022. Aviel Decl. ¶ 3 (ECF No. 5-2). As of February 23, 2025, the Foundation had only four Board members. The following day, as part of his efforts to implement Executive Order 14,217, President Trump removed three of the four Board members. Compl. ¶ 65 (ECF No. 1). President Trump removed the remaining Board member on February 26, 2025. *Id.* On February 28, 2025, President Trump designated Pete Marocco as acting Chairman of the Board. Marocco Decl. ¶ 3 (ECF No. 14-1). As the sole member of the Board, Marocco removed Aviel from her position as president of the Foundation. *Id.* The following week, Marocco appointed Dominic Bumbaca as president of the Foundation. *Id.* ¶ 4. President Trump did not intend for Marocco's designation as an acting board member to be permanent because on March 10, 2025, he nominated

Kenneth Jackson and Russell Vought to serve as members of the Foundation Board.  *See* White House's Nomination to U.S. Senate (March 10, 2025) (ECF No. 19-1).  Jackson and Vought are awaiting Senate confirmation.

On March 17, 2025, Aviel filed suit seeking reinstatement as president of the Foundation, claiming that her removal was *ultra vires, see generally*, Compl. (ECF No. 1), and simultaneously sought a temporary restraining order and preliminary injunction, *see* ECF No. 5, which Defendants opposed.  Def. Opp'n to TRO (ECF No. 19).  On April 4, 2025, the Court held a hearing on the motion and granted Aviel the preliminary injunction that she sought, which, in effect, reinstated Aviel as president of the Foundation and voided all actions that Marocco had taken as the acting Chairman of the Foundation Board.  Order (ECF No. 23).  Defendants moved to stay the Court's injunctive order pending appeal (ECF No. 27), but the Court denied that motion (ECF No. 30).  Defendants appealed the Court's order entering the preliminary injunction, Not. of Appeal (ECF No. 26), and simultaneously sought an immediate administrative stay, *see Aviel v. Gor*, No. 25-5105 (D.C. Cir. filed Apr. 7, 2025).  That motion remains pending before the D.C. Circuit.

## LEGAL STANDARDS

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the substantive outcome of the litigation.  *Anderson*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Holcomb*, 433 F.3d at 895.  When Rule 56 is invoked, the moving party has the initial burden of demonstrating the absence of a genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When the

moving party does not bear the burden of persuasion at trial, its burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, to defeat the motion the nonmoving party must designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted). Though courts must view this evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *see Grosdidier v. Broad. Bd. of Governors*, 709 F.3d 19, 23–24 (D.C. Cir. 2013), the nonmoving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his position—"there must be evidence on which the jury could reasonably find for [the nonmoving party]," *Anderson,* 477 U.S. at 252. The nonmoving party, moreover, "may not rest upon mere allegation or denials of his pleading but must present affirmative evidence showing a genuine issue for trial." *Laningham v. Dep't of Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (internal citation and quotation marks omitted).

## ARGUMENT

I.    <u>**Aviel was Lawfully Removed From her Position as President of the Foundation.**</u>

The Constitution vests the entirety of the "executive Power" in the President, who is given the sole responsibility to "take Care that the Laws be faithfully executed." Art. II, § 1, cl. 1; id. § 3; *see also Severino v. Biden*, 71 F.4th 1038, 1043–44 (D.C. Cir. 2023). "[A]s a general matter," the executive power encompasses "the authority to remove those who assist [the President] in carrying out his duties." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 513–14 (2010). Without such power, the President would be unable to control those who aid him in executing the laws and "could not be held fully accountable for discharging his own responsibilities." *Id.* at 514.

For nearly a century, the Supreme Court has repeatedly reaffirmed "the President's power to remove—and thus supervise—those who wield executive power on his behalf." *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 204 (2020) (citing *Myers v. United States*, 272 U.S. 52 (1926)). Consistent with this authority, President Trump removed the Foundation board members on February 24 and 26, 2025. *Id.* Notably, even Plaintiff concedes that President Trump lawfully removed the Board members. Hearing Tr. at 18 (ECF No. 17) ("We are not arguing that the president lacks authority to remove members of the board. We grant that the case law allows that and that the board members can be removed"). The parties' dispute turns on whether President Trump lawfully designated Marocco as an acting Board member. As explained below, President Trump lawfully made this designation and, for that reason, Marocco had the authority to remove Aviel from her position as president of the Foundation. Moreover, if President Trump could not have lawfully designated Marocco as the Chair of the Foundation Board, then President Trump himself must have the authority to remove Aviel.

### A. President Trump Lawfully Designated Marocco as Acting Chair of the Foundation Board and Marocco, in Turn, Removed Aviel From Her Position as President of the Foundation.

The President must be able to designate acting officials to fulfill his duty to "take care that the laws be faithfully executed." *See* Art. II, § 1, cl. 1; *id.* § 3. The President has "powers not enumerated in the statutes—powers derived not from statutory grants but from the Constitution." *See Request of the Senate for an Opinion as to the Powers of the President "in Emergency or State of War,"* 39 Op. Att'y Gen. 343, 347 (1939). "As part of his executive power," the President must be able to "select those who [are] to act for him under his direction in the execution of the laws." *Myers v. United States*, 272 U.S. 52, 117 (1926*); see also, e.g., Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492 (2010). Relevant here, the President has the "concomitant power to name acting officials when necessary to fulfill his constitutional duties, at least where no statute

precludes it." *Temporary Presidential Designation of Acting Board Members of the Inter-American Foundation and the United States African Development Foundation*, 49 Op. O.L.C. __, 4 (March 14, 2025) ("*Acting Board Members*"). The President's inherent powers under the Take Care Clause would extend to designating acting members of the Board" to manage the Foundation temporarily. *Id.* at 6.

Here, the President lawfully exercised his discretion in removing the Foundation Board members. There is no statute that limits or prohibits the President's prerogative to ensure the Foundation has temporary leadership while the Senate considers his nominees for permanent Board positions. Therefore, nothing required the President to leave the Foundation leaderless and unable to "direct the exercise of all the powers of the Foundation" until the Senate considers his nominees for to fill vacancies on the Board. 22 U.S.C. § 290h-5(a); *see also, Acting Board Members*, 49 Op. O.L.C. __, at 6 ("no statute specifically governs the President's authority to designate acting Board members."). Instead, the President has the concomitant authority, incident to his Article II power, to designate acting officers. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Robert Jackson, J., concurring) ("congressional inertia, indifference or quiescence may sometimes, at least as a practical matter, enable, if not invite, measures on independent presidential responsibility"). The President's authority to designate in the face of statutory silence is consistent with the Framers' demand for "unity in the Federal Executive" to guarantee "both vigor and accountability." *Printz v. United States*, 521 U.S. 898, 922 (1997).

Because Congress has not provided for procedures that the President must undertake to fill vacancies on the Foundation board, "any actual test of power" depends on "imperatives of events and contemporary imponderables rather than on abstract theories of law." *Youngstown Sheet & Tube Co.*, 343 U.S. at 637. Here, President Trump needs individuals who could "direct the exercise

all powers of the Foundation," consistent with his agenda, until the Senate could confirm his nominees. 22 U.S.C. § 290h-5(i). "If the President could not task a politically accountable official to fill the [Foundation's] leadership positions in an acting capacity, the President functionally could not exercise his Take Care authority." *Acting Board Members*, 49 Op. O.L.C. __, at 9.

Aviel argues that the Federal Vacancies Act limits the President's authority to designate acting Board members for the Foundation. Pl. Mot. at 25 (ECF No. 35). This argument is incorrect because statutes like the Federal Vacancies Act are a limitation on the President's power, not the source of his authority. *See, e.g.*, *Acting Board Members*, 49 Op. O.L.C. at 6–10; *Power of the President to Designate Acting Member of the Federal Home Loan Bank Board ("Home Loan Bank Board")*, 1 Op. O.L.C. 150 (1977) ("Whatever the term 'independent' may mean …, the continued functioning of the Board is plainly included in the constitutional responsibility of the President as the head of the executive branch to take care that the laws be faithfully executed."); *Authority of the President to Remove the Staff Director of the Civil Rights Commission and Appoint an Acting Staff Director*, 25 Op. O.L.C. 103 (2001) (similar).

In that vein, the Federal Vacancies Act applies to "any office of an Executive agency" "for which appointment is required to be made by the President, by and with the advice and consent of the Senate" unless the Act specifies otherwise. 5 U.S.C. § 3347(a). The Federal Vacancies Act does indeed specify otherwise for entities like the Foundation because Congress excluded those entities from it. 5 U.S.C. § 3349c(1). Specifically, the Federal Vacancies Act does not apply to "any member who is appointed by the President, by and with the advice and consent of the Senate to any board, commission, or similar entity that is composed of multiple members; and governs an independent establishment or Government corporation." *Id.* The parties agree that the Foundation qualifies as an entity described in this provision. Pl. Mot at 25 (ECF No. 35). But Aviel construes

this provision to mean that the President does not have any authority to designate officials to act as Board members. *Id.* This interpretation is incorrect. If the Federal Vacancies Act itself does not apply to the Foundation, then section 3348(b) which requires certain principal offices to remain vacant until the Senate confirms the President's nominees, and Section 3348(d), which voids the actions of an individual not acting under the Federal Vacancies Act, would not apply to the Foundation either. *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 121 (2000) (statutory provisions "must [be] place[d] . . . in context"—including in the context of each other—and "interpret[ed] . . . to create a symmetrical and coherent regulatory scheme.").

The Executive Branch has long understood that "the President's power to make such interim designations" on a multi-member independent board "flows from the President's responsibility to keep executive branch agencies in operation." *Home Loan Bank Board.* 1 Op. O.L.C. at 151. Aviel has not identified any binding judicial precedent that contradicts this opinion. *See generally*, Pl. Mot. Aviel instead attempts to discount the *Home Loan Bank Board* opinion by noting that it was issued prior to 1998 when Congress enacted Section 3349c(1) of the Federal Vacancies Act. Pl. Mot at 28. But the Federal Vacancies Act itself existed since 1868. *See An Act To Authorize The Temporary Supplying of Vacancies in the Executive Departments*, 40th Cong., Sess. II, Ch. 227 (1868). In adding Section 3349c(1) to the Federal Vacancies Act, the Senate Committee on Government Affairs explained excluding multi-member boards "has always been the case with the respect to the Federal Vacancies Act and [the Committee] wishes to avoid any confusion that might result from the enactment of a replacement statute on this point. Thus, vacancies in these positions are not covered by this legislation." S. Rep. No. 105-250, at 22 (1998). In other words, in passing the 1998 amendments to the Federal Vacancies Act, Congress did not intend to alter the status quo by limiting or revoking the inherent authority that previous Presidents

claimed gave them the authority to make temporary designations on multi-member boards. This is despite the fact that Congress passed the 1998 amendments in part because of "the growing number of federal departments and agencies that now claim exemption from the Vacancies Act." *Id.* at 3. Prior administrations had understood the Vacancies Act to exclude multi-member boards and in enacting Section 3349c(1) Congress ratified this understanding. S. Rep. No. 105-250, at 22

Aviel argues that section 3348(d)(1), which voids of actions by individuals not acting under various provisions of the Federal Vacancies Act supports her interpretation. Pl. Mot. at 30 (ECF No. 35). But this provision supports Defendants' position. Under 5 U.S.C. § 3348(d)(1),

> [a]n action taken by any person who is not acting under section 3345, 3346, or 3347, or as provided by subsection (b), in the performance of any function or duty of a vacant office to which this section and sections 3346, 3347, 3349, 3349a, 3349b, and 3349c apply shall have no force or effect.

This provision supports Defendants' position because the Foundation Board is an office "to which Section 3349c appl[ies]." *Id.* Under Section 3349c(1), the Federal Vacancies Act's limits on presidential authority do not apply to the Foundation Board. Marocco was designated to act in a position in which Section 3349c applies and thus Section 3348(d)(1) is consistent with a finding that Marocco was lawfully designated an acting board member who had the authority to remove Aviel.

Moreover, the Court need not rule that the Federal Vacancies Act is unconstitutional to also rule that the President has the inherent authority to designate acting board members. *Contra* Pl. Mot at 29 (ECF No. 35). The President "can only rely upon his own independent powers" when he "acts in absence of either a congressional grant or denial of authority." *Youngstown Sheet & Tube Co.*, 343 U.S. at 637. The President's inherent authority to designate acting board members exists because Congress chose to exclude multi-member boards, like the Foundation, from the Federal Vacancies Act. 5 U.S.C. § 3349c(1). If Congress were to repeal Section 3349c(1) or

otherwise make the Foundation subject to the Vacancies Act, then the President would no longer have the inherent authority to make acting designations.

To the extent that there is ambiguity in the Federal Vacancies Act, that ambiguity should be resolved in Defendants' favor. Although Congress can establish procedures for temporarily filling vacant positions that otherwise require Senate confirmation, a "court cannot impose additional constraints on the President's appointment of acting officers without a clear congressional command, lest [the court] infringe on the executive prerogative." *Rush v. Kijakazi*, 65 F.4th 114, 123 (4th Cir. 2023); *Severino*, 71 F.4th at 1044 ("Congress must make it clear in a statute if it wishes to restrict the President's removal power"). Congress's decision to exempt multi-member boards from the Federal Vacancies Act is far from a "clear congressional command" establishing a limit on the President's authority to designate acting board members. *Rush*, 65 F.4th at 123. Thus, the Court should revert to the default assumption that the president has the inherent authority to temporarily designate individuals to act as Foundation Board members.

Aviel's argument also lacks support in the Foundation's organic statute. *Contra* Pl. Mot. at 25 (ECF No. 35). Although the statute provides that Board members who serve for full terms must be confirmed by the Senate, the statute is silent on the procedures for temporary designations of Board members while the Senate considers the President's nominees. 22 U.S.C. § 290f(g). Aviel also misunderstands the scope of the statute's procedures for filling vacancies. The statute allows a Board member whose term has expired to "continue to serve until a successor is appointed and shall have qualified." *Id*. But Marocco was not designated in place of a Board member whose term has expired. Rather, Marocco was designated in place of Board members whom the President had removed.

- 11 -

Because Congress has not provided for procedures that the President must undertake to fill vacancies on the Foundation board and the President must "take care that the laws be faithfully executed," the President must be able to "select those who [are] to act for him under his direction in the execution of the laws," *Myers*, 272 U.S. at 117, even those that simply act as "acting" members until the Senate confirms a permanent replacement. Marocco's designation was not intended to be permanent because President Trump has nominated Jackson and Vought to serve full terms as members of the Foundation Board. Jackson and Vought's nominations were referred to the Senate Committee on Foreign Relations on March 14, 2025. *See* PN29-1 — Kenneth Jackson — Inter-American Foundation; PN29-4 — Russell Vought — Inter-American Foundation. After the Senate-confirmed Board members begin serving and can make decisions on the Foundation's behalf, Marocco's temporary designation will end.

Finally, the Board selects the president of the Foundation "on such terms as the Board may determine." 22 U.S.C. § 290f(l)(1). "A majority of the Board shall be required as a quorum. *Id.* at § 290f(j). As the sole Board member and thus the "majority of the Board," Marocco had this authority. He lawfully exercised that authority when he removed Aviel as president of the Foundation on February 28, 2025, Marocco Decl. ¶ 3 (ECF No. 14-1), and again the following week when he appointed Bumbaca as Aviel's successor. *Id.* ¶ 4.

Accordingly, because Marocco lawfully removed Aviel from the Foundation presidency, the Court should grant summary judgment in Defendants' favor.

**B.** **If the President Does Not Have the Authority to Designate Acting Board Members, then the President Must Have the Authority to Remove Aviel Himself.**

Even if the Court determines that the President lacked the authority to designate Marocco as the acting board chair, Aviel's removal as President of the Foundation was still lawful because the Board's removal made Aviel the *de facto* leader of the Foundation. As president of the

Foundation, Aviel is subordinate to the Board.  22 U.S.C. § 290f(l)(1).  If the President cannot appoint an acting Board member to supervise Aviel, then Article II supplies the ultimate background rule: the President must have the constitutional authority to supervise and remove those who wield executive power on his behalf.  *See Free Enter. Fund*, 561 U.S. at 493 (recognizing the "executive power include[s] a power to oversee executive officers through removal"); *Cf. Collins v. Yellen*, 594 U.S. 220, 250 (2021) (finding acting Department Head to be removable at will even when the Department Head otherwise had statutory removal protections). Because the Board's removal makes Aviel the leader of the Foundation, the Court's decision preventing her removal when she lacks the President's confidence prevents the President from exercising all of" the "executive Power" of the United States.  *Seila L. LLC*, 591 U.S. at 203; *Cf. Harris v. Bessent*, No. 25-5037, 2025 U.S. App. LEXIS 7301, at *48-49 (D.C. Cir. Mar. 28, 2025) (Walker, J., Concurring) ("The forcible reinstatement of a presidentially removed principal officer disenfranchises voters by hampering the President's ability to govern during the four short years the people have assigned him the solemn duty of leading the executive branch.")

Because the President can remove Foundation Board members at-will he can remove them for any reason, which would include their refusal to remove a subordinate officer.  But without a Board in place, the President is unable to exercise this power and must accept an Executive Branch agency with leadership that lacks his confidence until the Senate confirms his nominees for Foundation board positions.  Jackson and Vought are still awaiting Senate confirmation, and by forcing the President to allow Aviel to run the Foundation while the Senate considers his nominees, the Court would give the Senate an effective veto over the "President's power to remove—and thus supervise—those who wield executive power on his behalf," which is precisely the type of infringement on Article II that the Supreme Court rejected "in the landmark decision [of] *Myers*."

*Seila L. LLC*, 591 U.S. at 204; *Myers,* 272 U.S. at 161 (holding that Congress lacks "the power to remove or the right to participate in the exercise of that power.")  "The President must have the authority to remove the leadership of an agency because it is "'only the authority that can remove' such officials that they 'must fear and, in the performance of [their] functions, obey.'"  *Seila L. LLC*, 591 U.S. at 214-15 (*quoting Bowsher v. Synar*, 478 U.S. 714, 726, (1986)).

To be sure, as president of the Foundation, Aviel is an inferior officer, but in the context of inferior officers the Supreme Court has only recognized exceptions to the President's removal authority for "inferior officers with limited duties and no policymaking or administrative authority." *Seila L. LLC*, 591 U.S. at 204 (*citing, Morrison v. Olson*, 487 U. S. 654, (1988)).  As president of the Foundation, especially when there is no Board to supervise her, Aviel does not meet this standard.  Aviel is the chief executive of the Foundation, 22 U.S.C. § 290f(l), and with no Board members, the "management of the foundation" is, by default, vested in Aviel.  *Id.* § 290f(g).  Thus, Aviel could not credibly claim that she lacks "policymaking or administrative authority" that would prevent the President from removing her simply because she is an inferior officer.

Accordingly, if the President cannot designate an acting Board member to remove Aviel from her position as president of the Foundation, then the President retains the authority to remove Aviel himself.

## II.    Aviel is Not Entitled to Equitable Relief

As redress, Aviel seeks declaratory relief, a permanent injunction, and a writ of mandamus. Pl. Mot at 30-38 (ECF No. 35).  But as demonstrated below, Aviel is not entitled to any of these remedies.  As an initial matter, respectfully, the Court's decision reinstating Aviel as president of the Foundation was improper because the Court lacks the authority to manage the President's personnel decisions.  Aviel is not entitled to an injunction because she has not established that she

suffered any harm, let alone irreparable harm, that could not be remedied through backpay. For the same reason, Aviel is not entitled to declaratory relief either. Finally, because Aviel has not identified a mandatory, non-discretionary duty that any Defendants failed to execute, Aviel is not entitled to a writ of mandamus.

### A.    Aviel Should Not Have Been Reinstated.

Although Marocco removed Aviel as president of the Foundation on February 28, 2025, Marocco Decl. ¶ 3 (ECF No. 14-1), the Court's order granting Aviel's motion for a preliminary injunction reinstated her as president of the Foundation and prevented Marocco from acting as Chair of the Foundation Board. *See* Order (ECF No. 23); Defs. Status Rpt. (ECF No. 29). With respect, the Court's Order was in error because it empowered Aviel to exercise executive authority on the President's behalf, even though the President lacked confidence in her leadership. Traditionally, executive officers challenging their removal have sought back pay, not reinstatement. *See Wiener v. United States*, 357 U.S. 349, 350 (1958) (suit "for recovery of his salary"); *Humphrey's Executor*, 295 U.S. at 612 (suit "to recover a sum of money alleged to be due . . . for salary"); *Myers,* 272 U.S. at 106 (suit "for his salary from the date of his removal"); *Shurtleff v. United States*, 189 U.S. 311, 318 (1903) (suit "for salary"); *Parsons v. United States*, 167 U.S. 324, 326 (1897) (suit "for salary and fees"). That rule reflects the obvious separation of powers problems that arise if a court attempts to reinstate an executive branch official that the President has directed be removed.

Even though Aviel is not a principal officer appointed by the President and confirmed by the Senate, she was the leader of the Foundation because the Court's Order (ECF No. 23) meant that Marocco was unable to act as Chair of the Foundation Board (*see supra* Part I(B)). The President cannot be compelled to retain the services of an officer whom he no longer believes should be entrusted with the exercise of executive power. Requiring the President to recognize

and work with Foundation leadership that lacks his confidence "impinges on the 'conclusive and preclusive' power through which the President controls the Executive Branch that he is responsible for supervising." *Dellinger v. Bessent*, No. 25-5028, 2025 U.S. App. LEXIS 3987, at *45 (D.C. Cir. Feb. 15, 2025) (Katsas , J. dissenting) (*quoting Trump v. United States*, 603 U.S. 593, 608-09 (2024)); *Harris*, 2025 WL 1021435, at *4 (Rao, J., dissenting) ("The government is likely to succeed on its remedial challenge because the injunctive relief concocted by the district court is wholly unprecedented and transgresses historical limits on our equitable authority.").

An injunction reinstating plaintiff also exceeds the scope of the district court's equitable powers. A federal court may grant only those equitable remedies that were "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.,* 527 U.S. 308, 319 (1999). Reinstatement of a public official is not such a remedy. "It is . . . well settled that a court of equity has no jurisdiction over the appointment and removal of public officers." *In re Sawyer*, 124 U.S. 200, 212 (1888). Thus, "the power of a court of equity to restrain by injunction the removal of a [public] officer has been denied in many well-considered cases." *Id.*; *see, e.g*., *Baker v. Carr*, 369 U.S. 186, 231 (1962) (decisions that "held that federal equity power could not be exercised to enjoin a state proceeding to remove a public officer" or that "withheld federal equity from staying removal of a federal officer" reflect "a traditional limit upon equity jurisdiction"). This principle applies equally where, as here, relief is directed to the President's subordinate officers.

### B.    Aviel Is Not Entitled to Permanent Injunctive Relief.

For Aviel to establish that she is entitled to a permanent injunction, Aviel must demonstrate "(1) that [the plaintiff] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4)

that the public interest would not be disserved by a permanent injunction." *Zukerman v. United States Postal Serv.*, 64 F.4th 1354, 1364 (D.C. Cir. 2023). The "high standard for irreparable injury" requires a significant showing. An irreparable injury "must be both certain and great." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). Accordingly, Aviel "must show '[t]he injury complained of is of such imminence that there is a "clear and present" need for equitable relief to prevent irreparable harm.'" *Id.* (*quoting Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Aviel has not established any of these factors.

Aviel first seeks to establish an irreparable injury by conflating the alleged harm that she will suffer if removed from her position with the harm to the Foundation itself. Pl. Mot. at 34. But harm to the Foundation is not harm to Aviel. To demonstrate irreparable harm, Aviel must explain how removing her as president of the Foundation cause irreparable harm not to the Foundation, but to her. *English,* 279 F. Supp. 3d at 335 (finding that terminated agency director failed to establish irreparable harm even if "there could be harm suffered by the [Agency] or by other parties if it is later determined that [plaintiff's replacement] has not been lawfully the acting Director[.]"). "[H]arm that might befall unnamed third parties does not satisfy the irreparable harm requirement in the context of emergency injunctive relief, which must instead be connected specifically to the parties before the Court." *New Mexico v. Musk.* --- F. Supp. 3d ---, 2025 WL 520583, at *4 (D.D.C. Feb. 18, 2025) (quoting *Church v. Biden*, 573 F. Supp. 3d 118, 146 (D.D.C. 2021)); *see also Kansas v. United States*, 124 F.4th 529, 534 (8th Cir. 2024) ("The irreparable-harm analysis focuses on the moving party, not the nonmoving party or some third party.") (citation omitted). Aviel relies on *Sampson v. Murray*, 415 U.S. 61, 92 n. 68 (1974) to argue that she presented a "genuinely extraordinary situation" where loss of employment constitutes irreparable harm. Pl. Mot. at 34. But *Sampson,* 415 U.S. 92 n. 68 merely opined that such

situations may occur but "are hard to define in advance of their occurrence." Aviel has identified

no binding cases where harm to an organization that results from a loss of employment is sufficient

to meet this standard. Pl. Mot. at 34.

In any event, Aviel's claims about harm to the Foundation are unfounded. The Executive

Order that caused Aviel's removal only eliminates the Foundation's "non-statutory components

and functions." Exec. Order No. 14,217. In creating the Foundation, Congress mandated that the

Foundation "maintain its principal office in the metropolitan Washington, D.C., area," but gave

the Foundation discretion to "establish agencies, branch offices, or other offices in any place or

places outside the United States in which the Foundation may carry on all or any of its operations

and business." 22 U.S.C. § 290f(q). Congress also specified the Foundation's "powers and

functions." *Id.* § 290f(e). In accordance with the Executive Order, the Foundation will continue

to operate at its principal office and carry out the statutory functions that Congress directed it to

perform. "Congress has defined the agency's minimum level of functioning already." *Brehm v.*

*Marocco*, Civ. A. No. 25-0660 (RJL), 2025 U.S. Dist. LEXIS 71326, at * 9 (D.D.C. Mar. 11,

2025). President Trump has even nominated two individuals to serve full terms as Foundation

Board members, which demonstrates his intention to keep the Foundation in operation after Aviel

is removed. *See* PN29-1 — Kenneth Jackson; PN29-4 — Russell Vought. Thus, Aviel's claim

the Defendants intend to "effectively shutter" the Foundation is not justified by the Executive

Order or by President Trump's actions since issuing the Executive Order.

Aviel claims that the "loss of a statutory right to perform her congressionally-directed

mission transcends the loss of income involved in a typical employment action and cannot be

restored by an award of damages." Pl. Mot. at 34. But Plaintiff cited no injury of a kind that the

Supreme Court has recognized as irreparable in this context. Rather, courts in this Circuit and

others have concluded that loss of employment does not constitute irreparable harm. *See, e.g.,*
*Hetreed v. Allstate Ins. Co*., 135 F.3d 1155, 1158 (7th Cir. 1998); *Davis v. Billington*, 76 F. Supp.
3d 59, 65–66 (D.D.C. 2014) (collecting cases); *Farris v. Rice*, 453 F. Supp. 76, 79–80 (D.D.C.
2006) ("cases are legion holding that loss of employment does not constitute irreparable injury").

Indeed, courts have repeatedly rejected the notion that the deprivation of a unique, singular,
or high-level position is any more of an irreparable injury. *See Hetreed*, 135 F.3d at 1158 (loss of
position as senior manager leading audit department not irreparable injury); *Marxe v. Jackson*, 833
F.2d 1121,1122 (3d Cir. 1987) (division manager); *Rubino v. City of Mount Vernon*, 707 F.2d 53
(2d Cir. 1983) (mayoral-appointed City Assessor); *Franks v. Nimmo*, 683 F.2d 1290, 1291 (10th
Cir. 1982) (Associate Chief of Staff for Research and Development position at Department of
Veterans Affairs Medical Center); *EEOC v. City of Janesville*, 630 F.2d 1254, 1256 (7th Cir. 1980)
(Chief of Police*); Levesque v. Maine*, 587 F.2d 78, 79 (1st Cir. 1978) (Maine Commissioner of
Manpower*); Nichols v. Agency for Int'l Dev*., 18 F. Supp. 2d 1, 2, 4 (D.D.C. 1998) (Chief of
Information Management Systems, Office of Inspector General); *Burns v. GAO Emps. Fed. Credit
Union*, No. 88-cv-3424, 1988 WL 134925, at *1–2 (D.D.C. Dec. 2, 1988) (President of Credit
Union Board of Directors).

To support her argument that her removal as president of the Foundation would cause
irreparable harm, Aviel cites to *Berry v. Reagan*, Civ. A. No. 83-3182, 1983 WL 538 (D.D.C. Nov.
14, 1983), an unpublished district court opinion from more than forty years ago. Pl. Mot. at 34-35
(ECF No. 35). But *Berry* 1983 WL 538, at *5 is distinguishable because those challenged removals
deprived the agency of a quorum making it unable to operate. *See Dellinger v. Bessent,* No. 25-
5028, 2025 U.S. App. LEXIS 3987, at *44 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting). Here,
removing Aviel from her position as president of the Foundation does not prevent the Foundation

from operating.   The Foundation will continue to operate and in a manner consistent with Executive Order 14,217.   Moreover, as explained in Part II(a) *supra*, executive branch officials have historically challenged their removals in suits for back-pay.   Remedies at law thus exist and could make Aviel whole here, foreclosing any showing of irreparable harm.

The balance of equities and public interest weigh strongly against a permanent injunction. The President designated Marocco as acting chair of the Foundation Board, and Marocco removed Aviel from her position as president of the Foundation.   Therefore, the public interest would be undermined if the President did not have a Foundation Board and the appropriate leadership who holds the President's confidence to effectively serve him in executing his duties as Chief Executive.   *See Sampson*, 415 U.S. at 83 (quoting *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 896 (1961)) ("[T]he Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'").   Imposing such a remedy would prevent the President from implementing his electoral mandate through his subordinates and undermine the accountability of the Executive Branch enshrined in the Constitution.   The President "is elected by the entire Nation" and all executive officers "remain[] subject to the ongoing supervision and control of the elected President."   *Seila Law*, 591 U.S. at 224.   Adding additional exceptions to that constitutional rule "heightens the concern that" the Executive Branch "may slip from the Executive's control, and thus from that of the people."   *Free Enter. Fund*, 561 U.S. at 499. Injunctive relief would displace and frustrate the President's decision and process about how to best address relations with other Western-Hemispheric Nations, and the Court must give deference to the Executive Branch's "evaluation of the facts" and the "sensitive and weighty interests of national security and foreign affairs."   *Holder v. Humanitarian L. Project*, 561 U.S. 1, 33–34 (2010), including "the timing of those . . . decisions."   *Holy Land Found. for Relief & Dev. v.*

*Ashcroft*, 219 F. Supp. 2d 57, 74 n.28 (D.D.C. 2002), *aff'd*, 333 F.3d 156 (D.C. Cir. 2003); *see also, Clinton v. City of New York*, 524 U.S. 417, 445 (1998) (the President's Article II inherent authority is most commonly exercised "in the foreign affairs arena.").

Moreover, the public interest is better served by Foundation leadership who holds the President's confidence and, accordingly, will more effectively serve him in executing his duties as Chief Executive. "Allowing another branch of government to insulate executive officers from presidential control . . . would sever a key constitutional link between the People and their government," contrary to the public interest. *Dellinger*, 2025 U.S. App. LEXIS 3987, at *53 (Katsas J., dissenting). Thus, Aviel's claimed equities cannot outweigh the grave and unprecedented harm an injunction would cause to the separation of powers and the President's authority to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. Aviel argues that the injury to the Executive Branch is self-inflicted because the President removed the prior board members. Pl. Mot. at 36. But the President removed the Board members pursuant to his prerogative to ensure exercise "all of" the "executive Power" of the United States. *Seila L. LLC*, 591 U.S. at 203. Forcing the President to retain a Foundation Board against his will would undermine that prerogative thus causing harm to the executive Branch.

Finally, the Court should disregard Aviel's fearmongering about the consequences of a ruling in Defendants' favor. *See* Pl. Mot. at 37. A ruling from the Court that President Trump lawfully removed the foundation board members, designated Marocco as an acting board member, and that Marocco used his authority as an acting board member to remove Aviel as president of the Foundation would not give the President *carte blanche* to fire the entire "Federal Reserve Board tomorrow and appoint acting members for the next-nearly-four years." Pl. Mot at 39. Aviel's contention is illogical and not supported by law. Courts "generally presume that the

President holds the power to remove at will executive officers and that a statute must contain 'plain language to take [that power] away.'" *Collins*, 594 U.S. at 250. The President can only remove members of the Federal Reserve Board "for cause." 12 U.S.C. § 242. In contrast, the Foundation's organic statute contains no restrictions on the President's authority to remove Foundation Board members, 22 U.S.C. § 290f, and Aviel has not advanced any arguments to the contrary. *See generally* Pl. Mot.

###    C.    Aviel is Not Entitled to Declaratory Relief.

The same principles that foreclose Aviel from obtaining reinstatement foreclose her claim for a declaratory judgment. A declaratory-judgment suit is "essentially an equitable cause of action." *Samuels v. Mackell*, 401 U.S. 66, 70 (1971) (citation omitted). "[T]he Declaratory Judgment Act provides that after a declaratory judgment is issued the district court may enforce it by granting 'further necessary or proper relief,' 28 U.S.C. § 2202, and therefore a declaratory judgment . . . might serve as the basis for a subsequent injunction." *Samuels*, 401 U.S. at 72. "[E]ven if the declaratory judgment is not used as a basis for actually issuing an injunction, the declaratory relief alone has virtually the same practical impact as a formal injunction would." *Id.* As a result, "the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment." *Id.* at 73. To be sure, there may be "unusual circumstances" where "a declaratory judgment might be appropriate" even though "an injunction [would] be withheld." *Id.* But "ordinarily," "where an injunction would be impermissible," "declaratory relief should . . . be denied as well." *Id.* at 73; *see Macauley v. Waterman S.S. Corp.*, 327 U.S. 540, 545 n.4 (1946) ("The same principles which justified dismissal of the cause insofar as it sought injunction justified denial of the prayer for a declaratory judgment."); *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 300 (1943) (noting that the Declaratory Judgment Act "only provided a new form

of procedure for the adjudication of rights in conformity" with "established equitable principles.").

Therefore, Aviel is not entitled to declaratory relief for the same reasons that she is not entitled to

an injunction.

Moreover, with respect to the declaratory relief that Aviel seeks under the Federal

Vacancies Act, Pl. Mot. at 32, that declaratory relief would only be available if the Court agrees

with Aviel that President Trump designated Marocco as the acting chair of the Foundation Board

in violation of the Federal Vacancies Act.  As explained in Part I above, the Federal Vacancies Act

does not apply to the Foundation, which forecloses Aviel from obtaining relief under the

declaratory relief provision in the Federal Vacancies Act.  5 U.S.C. § 3348(d).

### D.    Aviel is Not Entitled to a Writ of Mandamus.

Aviel alternatively seeks a writ of mandamus if this Court denies injunctive relief.  Pl. Mot.

at 38.  But mandamus "is drastic" and "is available only in extraordinary situations."  *In re Cheney*,

406 F.3d 723, 729 (D.C. Cir. 2005) (en banc) (quotation marks omitted).  It requires that a

petitioner establish that "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear

duty to act; and (3) there is no other adequate remedy available to plaintiff."  *In re Nat'l Nurses

United*, 47 F.4th 746, 752 n.4 (D.C. Cir. 2022).  Moreover, mandamus is "inappropriate except

where a public official has violated a 'ministerial' duty."  *Consol. Edison Co. v. Ashcroft,* 286 F.3d

600, 605 (D.C. Cir. 2002).   Aveil has not established that Defendants have a mandatory

nondiscretionary duty to allow her to remain as President of the Foundation and  the party seeking

mandamus relief (i.e.,  Aviel) has the burden to identify a mandatory, non-discretionary duty.

*NAACP Legal Def. & Educ. Fund, Inc. v. Barr*, 496 F. Supp. 3d 116, 145 (D.D.C. 2020); *West v.

Spellings*, 480 F. Supp. 2d 213, 217 (D.D.C. 2007) ("A plaintiff bears a heavy burden of showing

that his right to a writ of mandamus is 'clear and indisputable.'").   Aviel's failure to identify such

a duty, standing alone, is reason enough to dismiss her mandamus claim.

The President's selection of who should lead an Executive Branch agency is certainly not a mere ministerial task—rather, it is a "conclusive and preclusive" prerogative of the President. *Trump*, 603 U.S. at 608-09 (citation omitted); *see also Harris*, 2025 WL 1021435, at *5 n.2 (Rao, J., dissenting) ("The President's exercise of his appointment and removal authority can in no way be denominated as 'ministerial,' however, as these powers are essential to his Article II power to control and supervise 'those who wield executive power on his behalf.'"). Finally, "mandamus jurisdiction" "merges with the merits," *Lovitky v. Trump*, 949 F.3d 753, 759 (D.C. Cir. 2020), and because the premise of this lawsuit, namely that Aviel's removal was *ultra vires*, is incorrect, her mandamus claim fails.

## CONCLUSION

For these reasons, the Court should deny Plaintiff's cross motion for summary judgment and grant cross summary judgment in Defendants' favor.

Dated: May 7, 2025

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney


By: _____/s/ John J. Bardo_____
    JOHN J. BARDO, D.C. Bar #1655534
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 870-6770

*Attorneys for the United States of America*