UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SARA AVIEL,<br><br>        Plaintiff,<br><br>  v.<br><br>SERGIO GOR, et al.,<br><br>        Defendants. | Civil Action No. 25-0778 (LLA) |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF**
**THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants, various government components and officials, including the President, sued in their official capacities, respectfully submit this reply in further support of their cross-motion for summary judgment (ECF No. 40).

## INTRODUCTION

Plaintiff Sara Aviel is not entitled to remain in her position as president of the Inter-American Foundation ("the Foundation"). Peter Marocco lawfully removed Aviel from her position as president of the Foundation after President Trump designated Marocco as acting Chairman of the Foundation Board. And if President Trump lacked the authority to designate Marocco as acting Chairman of the Foundation Board, then President Trump must have the authority to remove Aviel from her position himself because the lack of a Board means that there is no principal officer accountable to the President between Aviel and the President. Finally, because Aviel's claims fail on the merits, the Court lacked the authority to reinstate Aviel, she will not suffer irreparable harm, and she is not entitled to any of the equitable relief as she failed to identify a mandatory non-discretionary duty for Defendants to allow her to serve as president of the Foundation.

## ARGUMENT

**I.    Aviel Was Lawfully Removed From her Position as President of the Foundation.**

The Foundation Board has the power to remove the Foundation president, 22 U.S.C. § 290f(l)(1), and Marocco removed Aviel in his capacity as acting chair and sole member of the Board. IAF Board Tr. Feb. 28, 2025 (ECF No. 21-1). But if President Trump could not designate Marocco to act as chair of the Foundation Board, then President Trump needed the authority to remove Aviel himself because without a Board, Aviel is tantamount to a principal officer, running the Foundation on President Trump's behalf.

**A. As Acting Chair of the Foundation Board, Marocco Lawfully Removed Avial From Her Position as President of the Foundation.**

Plaintiff frames Defendant's arguments as fundamentally transforming the separation of powers. Opp'n at 11 (ECF No. 43). But by ruling in Defendants' favor, the Court would simply rule that President Trump has the power to temporarily designate Marocco as the acting chair of the Foundation Board to run the Foundation while the Senate considers his nominees for permanent positions. As Defendants explained, because Congress has not spoken to the contrary, President Trump has inherent authority to designate acting Foundation Board members as part of his Article II responsibility to "take care that the laws be faithfully executed." Defs' Mot. at 11 (ECF No. 40). In arguing that the President can only designate Foundation Board members with Senate confirmation or through recess appointment, Aviel ignores this presidential inherent authority. Opp'n at 10. Congress vested the Board with the authority to manage the Foundation. 22 U.S.C. § 290h-5(a). And "the continued functioning of the Board is plainly included in the constitutional responsibility of the President as the head of the executive branch to take care that the laws be faithfully executed." *Power of the President to Designate Acting Member of the Federal Home Loan Bank Board*, 1 Op. O.L.C. 150, 151 (1977) ("*Home Loan Bank Board*"). Without Marocco's designation, the Foundation lacks individuals who can undertake the "management" of the Foundation. 22 U.S.C. § 290h-5(a). "The President's power to make such interim designations flows from the President's responsibility to keep executive branch agencies in operation." *Home Loan Bank Board,* 1 Op. O.L.C. at 151.

Aviel argues no court has permitted a designation of an acting official like the one that President Trump made here. Opp'n at 13. But Aviel also cites no binding case law where a Court held that such designations are unlawful. *See generally Id*. Aviel also discounts the significance of the Office of Legal Counsel opinions that the President has the authority to temporarily

designate acting officials. Opp'n at 13. Although these opinions are not binding, Courts "look to them for their persuasive value" and thus the opinions cannot be disregarded. *Ctr. for Biological Diversity v. Int'l Dev. Fin. Corp.*, 77 F.4th 679, 689 (D.C. Cir. 2023). The Office of Legal Counsel opined, during the Carter Administration, that these designations are permissible, and the Office has not waivered since then. *Home Loan Bank Board,* 1 Op. O.L.C. at 151.

The Federal Vacancies Reform Act does not support Aviel's position because the Act does not apply to "any board, commission, or similar entity that is composed of multiple members; and governs an independent establishment or Government corporation." 5 U.S.C. § 3349c(1). This carve-out includes the Federal Vacancies Reform Act's provision—set out in section 3347—making the statute the "exclusive means" for the appointment of acting officials in some circumstances. In an effort to advance a reading inconsistent with the text of the statute excluding entities like the Foundation from the reach of the Vacancies Act, Plaintiff misconstrues the legislative history. Opp'n at 12. The Senate report explained that the "bill applies to all vacancies in Senate-confirmed positions in executive agencies with a few express exceptions." S. Rep. No. 105-250, at 2 (1998). Section 3349(c)(1) is one expressed exception, and the purpose of Section 3349(c)(1) was to confirm the lack of applicability to multi-member boards "has always been the case with respect to the Vacancies Act." S. Rep. No. 105-250 at 22. In passing the Federal Vacancies Reform Act, Congress sought to disavow the assertion that the Department of Justice was exempt from the Federal Vacancies Act but did not make the same finding with respect to multi-member boards like the Foundation. *Compare id*. at 3 *with Home Loan Bank Board,* 1 Op. O.L.C. at 151.

Moreover, Plaintiff cannot rely on Section 3348(d)(1) to neutralize Section 3349c(1). *Contra* Opp'n at 14. "An action taken by any person who is not acting . . . in the performance of

any function or duty of a vacant office to which to which this section and sections 3346, 3347, 3349, 3349a, 3349b, and 3349c apply shall have no force or effect." 5 U.S.C. § 3348(d)(1). Section 3349c(1) is among the listed sections and, as such, Marocco can be temporarily designated to be an acting member of the Foundation Board because of Section 3349c(1). By arguing that the carve-out in Section 3349c means that the President cannot designate individuals to temporarily act as Board members under any circumstances, Opp'n at 13-14, Aviel advances an interpretation that would make portions of Section 3348(d)(1) superfluous. Specifically, it would not be possible for someone to act "in the performance of function or duty to which [Section 3349c] appl[ies]," 5 U.S.C. § 3348(d)(1), unless Section 3349c contemplated some form of temporary designation. *See Nat'l Ass'n of Mfrs. v. Dep't of Defense*, 583 U.S. 109, 121-22 (2018) ("the Court is obliged to give effect, if possible, to every word Congress used.") (cleaned up). Rather than specify any limits on the President's temporary designation authority, Section 3349c simply lists the types of entities that are not subject to the Federal Vacancies Act. Accordingly, the President's authority to designate acting leadership of these entities, by default, is anchored in his inherent authority under Article II. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J. Concurring)

As Aviel notes, the D.C. Circuit's ruling in *Noel Canning v. NLRB,* 705 F.3d 490, 511 (D.C. Cir. 2013) contains the aside that "Congress has chosen not to provide for acting [Board] members." See Opp'n at 20. But that line has no applicability because the case did not deal with the Federal Vacancies Act, and the Supreme Court did not rely on this analysis in upholding the D.C. Circuit's view. *See generally, Noel Canning v. NLRB*, 573 U.S. 513 (2014). The dicta, therefore, cannot and does not control this case. "A bare assumption is not the type of 'carefully considered language of the Supreme Court' that [the D.C. Circuit] considers authoritative for

purposes of applying Supreme Court dictum." *Seed v. EPA*, 100 F.4th 257, 266 (D.C. Cir. 2024) (quoting *Zivotofsky ex rel. Zivotofsky v. Sec'y of State*, 725 F.3d 197, 211-12 (D.C. Cir. 2013)).

Aviel misconstrues the scope of Defendants' arguments regarding the Federal Vacancies Act. Opp'n at 15. Defendants do not dispute that Congress can limit the President's ability to designate individuals to temporarily act in offices that otherwise require Senate confirmation. But in enacting section 3349c(1) Congress chose not to exercise that prerogative with respect to the Foundation. Thus, President Trump retains the inherent authority under Article II to designate acting board members only because Congress declined to limit that authority. *See Youngstown Sheet & Tube Co*, 343 U.S. at, 637. Therefore, Aviel's grievances about the President's claim of authority to designate an acting Foundation Board Chair should be directed to Congress, not the Judiciary.

Finally, Defendants' arguments do not render the recess appointments clause superfluous. *Contra* Opp'n at 16. The recess appointments clause gives the President the power to "fill up all Vacancies that may happen during the Recess of the Senate, by granting Commissions which shall expire at the End of their next Session." U.S. Const. art. II § 2 cl. 3. Crucially, the recess appointments clause is only applicable during "Recess of the Senate." *Id*. The recess appointments clause allows the President to temporarily appoint an official to any position that otherwise requires Senate confirmation up until the expiration of the next Senate session if the vacancy occurs during a recess of the Senate. *Id*. At the time when President Trump designated Marocco as the acting Foundation Board member the Senate was not in recess and thus the recess appointments clause simply does not apply.

Accordingly, Because Congress has chosen not to restrict the President's inherent authority to designate acting Board Members, President Trump lawfully designated Marocco as an acting

member of the Foundation Board and Marocco, in turn, lawfully removed Aviel from her position as President of the Foundation.

**B. If the President Could Not Designate Marocco As Acting Chair of the Foundation Board, then the Constitution Vests the President with the Inherent Authority to Remove Aviel.**

The President must have the authority to decide who exercises executive power on his behalf. *United States v. Arthrex, Inc.*, 594 U.S. 1, 26 (2021) ("President remains responsible for the exercise of executive power—and through him, the exercise of executive power remains accountable to the people."). By fixating on an email that was sent prematurely, Aviel overlooks this point. Opp'n at 9. Defendants do not argue that the President can remove any inferior officer under any circumstance. Defendants' argument is specific to the facts and procedural posture of this case. The President has the authority to remove Aviel from her position as president of the Foundation if and only if (1) the Foundation lacked a Board, and (2) the President lacked the authority to temporarily designate Marocco as acting Chair of the Foundation Board. Aviel concedes that the President had removed all Board members as of February 26, 2025. Opp'n at 9. The parties disagree as to whether the President had the authority to designate Marocco as an acting Board member, but assuming arguendo that the President lacked such authority, then the President must have the authority to remove Aviel.

"The exercise of executive power by inferior officers must at some level be subject to the direction and supervision of an officer nominated by the President and confirmed by the Senate." *Arthrex, Inc.*, 594 U.S. at 26. But without a Board, there are no officers nominated by the President and confirmed by the Senate. Therefore, it is Aviel who is exercising executive power on the President's behalf. Because Aviel is exercising executive power on the President's behalf, the President needs the power to remove her; otherwise, "the President could not be held fully

accountable for discharging his own responsibilities; the buck would stop somewhere else." *Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U. S. 477, 514 (2010).  The lack of a principal officer between President Trump and Aviel distinguishes this case from *National Treasury Employees Union v. Reagan*, 663 F.2d 239, at 247-48 (D.C. Cir. 1981), and from Aviel's hypothetical about the Saturday Night Massacre.  Opp'n at 18.  President Richard Nixon could not have fired Special Counsel Archbold Cox himself because there was a principal officer between President Nixon and Cox: the Solicitor General who was acting as the Attorney General.  *In re Olson*, 818 F.2d 34, 41 (D.C. Cir. 1987).  The argument that Defendants advance here would not have allowed President Nixon to remove Cox himself because the Solicitor General, not Cox, was running the Department of Justice on President Nixon's behalf.  Here, there are no principal officers to supervise Aviel and thus she must be accountable directly to the President.

For the first time in her opposition, Aviel appears to argue that former Foundation Board Chairman Eduardo Arriola is still on the Board because he was not properly given notice of his removal.  Opp'n at 18-19.  Specifically, Arriola claims to have never received an email terminating him from his position.  Arriola Decl. ¶ 3 (ECF No. 35-3).  As an initial matter, because Aviel did not raise this argument until her cross opposition and reply, the Court should not consider it. *Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 375 n.* (D.C. Cir. 2010) ("[A]n argument first made in a reply brief ordinarily comes too late for our consideration").  But even if the Court is inclined to address this argument, it is irrelevant because there cannot be any dispute Arriola has since learned of his termination throughout this case.  Moreover, Aviel admits that she learned of all four Board Member's terminations on February 24, 2025, when Aviel was still president of the Foundation.  Compl. ¶ 65.  Aviel's position as president of the Foundation made her an agent of the Foundation Board, 22 U.S.C. § 290f(l)(1), and "the general rule is that a principal is charged

with the knowledge of the agent acquired by the agent in the course of the principal's business." *Curtis, Collins & Holbrook Co. v. United States*, 262 U.S. 215, 222 (1923). Thus, if there were any doubt that Arriola, or any other board member had notice of their removal, the notice to Aviel on February 24, 2025, is sufficient to effectuate notice on all Board members, including Arriola.

Accordingly, should the Court determine that President Trump lacked the authority to designate Marocco as an acting board member, the Court must find that President Trump has the authority to remove Aveil, lest the Court deprive the President of his authority to exercise "all of" the executive power during his entire four years in office. *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203 (2020).

## II.     Aviel is Not Entitled to the Equitable Relief that She Seeks.

Because Aviel's claims fail as a matter of law, the Court need not consider whether she is entitled to the equitable remedies that she seeks. But to the extent that the Court were to consider Aviel's claims for equitable relief, including injunctive, declaratory, and mandamus relief, for the reasons explained below, the Court should reject those claims.

### A. The Court Lacked the Authority to Reinstate Aviel as President of the Foundation.

The Court lacked the authority to reinstate Aviel. Reinstatement of lawfully removed officers "put[s] the courts on a collision course with the President over his exercise of core executive power." *Harris v. Bessent*, No. 25-5037, 2025 U.S. App. LEXIS 8151, at *12 (D.C. Cir. Apr. 7, 2025) (Rao, J. dissenting); *see Dellinger v. Bessent*, No. 25-5028, 2025 U.S. App. LEXIS 3987, at *45 (D.C. Cir. Feb. 15, 2025) (Katsas, J. dissenting) (similar). Even though Aviel is an inferior officer, without a Board, she is the head of the Foundation tasked with exercising executive authority on the President's behalf. "The lesson from history is clear: Federal courts have no

equitable authority to enjoin the removal or to mandate the reinstatement of executive officers." *Harris*, 2025 U.S. App. LEXIS 8151, at *19 (Rao, J. dissenting).

The cases that Aviel relies on to argue that district courts have the power to order reinstatement are inapplicable to the facts of this case. Opp'n at 22. Although *Sampson v. Murray*, 415 U.S. 61, 63 (1974) opined that a district court "is not totally without authority to grant interim injunctive relief to a discharged Government employee," the Court did not grant that relief, much less explain what those circumstances are. Most of the cases that Aviel cites did not involve orders to reinstate Agency heads that the President had removed. *See Sampson*, 415 U.S. at 63 (program analyst on probationary status); *Vitarelli v. Seaton*, 359 U.S. 535, 536 (1959) (education and training specialist); *Service v. Dulles*, 354 U.S. 363, 365 (1957) (foreign service officer). This is a key distinction from Aviel's case because if the Court finds President Trump could not designate Marocco to act as chair of the Foundation Board, then President Trump himself had the authority to remove Aviel.

Although *Severino v. Biden*, 71 F.4th 1038, 1042–43 (D.C. Cir. 2023); and *Swan v. Clinton*, 100 F.3d 973, 980 (D.C. Cir. 1996) involved removals by the President, the D.C. Circuit did not order reinstatement in either case. Rather, the D.C. Circuit considered only its jurisdiction over an official's challenge to his removal. At most, those cases can be read to stand for the proposition that equitable relief might be available to require a subordinate officer to allow a plaintiff to exercise some of the privileges of the office such as by "including [him] in Board meetings," or "giving him access to his former office." *Swan*, 100 F.3d at 980; *see also Severino*, 71 F.4th at 1043. In contrast, the Court's order granting Aviel preliminary relief put Aviel back in her executive office and mandated that Aviel continue to serve as the *de jure* ranking official unless

and until the Senate confirms the President's new nominees to the Foundation's Board. Order (ECF No. 23)

Accordingly, because the Court lacks the authority to deny the President his preferred leadership of an executive branch Agency, the Court erred in ordering Aviel's reinstatement.

### B. Aviel is Not Entitled to Declaratory or Injunctive Relief.

As an initial matter, "a court cannot issue a permanent injunction without first finding that the applicant has demonstrated actual success on the merits." *Thomas v. Powell*, 247 F.3d 260, 267 (D.C. Cir. 2001). Aviel's claims for declaratory and injunctive relief fail primarily because Aviel's claims will not succeed on the merits. Aviel's reliance on the Federal Vacancies Act to argue that she is entitled to declaratory and injunctive relief is misplaced. Opp'n at 21-22. Although the Federal Vacancies Act provides that an individual who takes an action without the authority to act under that stastute "shall have no force or effect," 5 U.S.C. § 3348(d)(1), an order voiding Marocco's actions in his capacity as acting Chair of the Foundation Board would only be an available form of relief if the Foundation Board was subject to the Federal Vacancies Act. But as explained above, the Foundation is not subject to the Federal Vacancies Act giving the President the inherent authority to designate an acting Board Member as the Senate considers his nominees to serve full terms on the Board.

Aviel has otherwise failed to demonstrate that she will suffer irreparable harm if an injunction is not issued. Even if Aviel is correct that she is being deprived of a "statutory right to function" as president of the Foundation, "that does not mean such injury is irreparable and weighs in h[er] favor." *Dellinger v. Bessent*, No. 25-5052, 2025 U.S. App. LEXIS 6914, *10 (D.C. Cir. Mar. 10, 2025). Aviel again asserts that if she is not reinstated, then the Foundation will be "completely destroyed." Opp'n at 24. But "harm that might befall unnamed third parties does not

satisfy the irreparable harm requirement in the context of [] injunctive relief, which must instead be connected specifically to the parties before the Court." *New Mexico v. Musk*. --- F. Supp. 3d ---, 2025 WL 520583, at *4 (D.D.C. Feb. 18, 2025) (quoting *Church v. Biden*, 573 F. Supp. 3d 118, 146 (D.D.C. 2021). The propriety of Defendants' plans to reduce the Foundation's "statutory functions and associated personnel to the minimum presence and function required by law," Exec. Order No. 14,217, 90 Fed. Reg. 10577 (Feb. 25, 2025), are separate from the question of whether Aviel is entitled to serve as president of the Foundation. Indeed, even if Aviel can remain as president of the Foundation, she will be subordinate to the Foundation Board, and the Board will eventually be composed of members willing to run the Foundation consistent with Executive Order No. 14,217. Thus, Aviel's argument that allowing her to remain as president of the Foundation will prevent irreparable harm by preventing Defendants from making changes to the Foundation and ensure that the Foundation operates in a manner consistent with what Aviel believes is the optimal statutory function lacks merit. Opp'n at 24. Indeed, this argument cuts against Aviel in the weighing of the equities: her position is that she wants to run the Foundation in a manner contrary to the President's stated policy goals.

That Aviel openly seeks to undermine the President's policy is a reason to deny her control over the Foundation rather than to enable it. The President's power to have his preferred leadership at the Foundation flows from core Article II principles. "Only the President (along with the Vice President) is elected by the entire Nation." *Seila L. LLC,* 591 U.S. at 224. And the President has entrusted Marocco with temporary leadership of the Foundation. Voiding Marocco's actions as chair of the Foundation Board and ordering Aviel's reinstatement as Foundation president, even temporarily, deprives the President of his power and responsibility to oversee the exercise of executive power. Forcing the President to retain Foundation leadership against his will would be

an intrusion into the President's authority to exercise "all of" the "executive Power" of the United States. *Seila L. LLC*, 591 U.S. at 203; *Dellinger v. Bessent*, 2025 U.S. App. LEXIS 3987 (D.C. Cir. Feb. 15, 2025) (Katsas, J., Dissenting) ("Allowing another branch of government to insulate executive officers from presidential control—whether by congressional statute or judicial injunction—would sever a key constitutional link between the People and their government."). In other words, the Court's order reinstating Aviel breaks the chain of command that ensures that officials exercising executive power are ultimately accountable to the President and, through him, to the American people.

### C. Aviel is Not Entitled to Mandamus Relief.

As Defendants explained, Def. Mot. at 28 (ECF No. 40) a plaintiff seeking mandamus relief must establish that "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff.*"* *In re Nat'l Nurses United*, 47 F.4th 746, 752 n.4 (D.C. Cir. 2022). Rather than explain why she has satisfied these elements, Aviel cites a string of cases and treatises, many of which are Old English cases, where mandamus relief was afforded for wrongful removal. Opp'n at 27-28. The cases and commentaries that Aviel cites predate the enactment of Section 706(1) of the Administrative Procedures Act, which created an alternative remedy to mandamus because, like mandamus, Section 706(1) "allows a reviewing Court to compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see Dunne v. Ricolcol*, No. 21-56254, 2024 U.S. App. LEXIS 31553, at *3 (9th Cir. Dec. 12, 2024) (affirming district court's dismissal of Mandamus claim "because there would be an adequate remedy under the APA for any claims determined to have merit").

As the party seeking mandamus relief, it is Aviel's burden to identify a mandatory, non-discretionary duty. *NAACP Legal Def. & Educ. Fund, Inc. v. Barr*, 496 F. Supp. 3d 116, 145

(D.D.C. 2020); *West v. Spellings*, 480 F. Supp. 2d 213, 217 (D.D.C. 2007) ("A plaintiff bears a heavy burden of showing that his right to a writ of man is 'clear and indisputable.'"). Aviel identified no mandatory non-discretionary duty that "indisputably" requires that she be reinstated. For that reason, her mandamus claim fails.

## CONCLUSION

For these reasons and the reasons stated in Defendants' motion for summary judgment (ECF No. 40), the Court should deny Aviel's cross-motion for summary judgment grant summary judgment in Defendants favor.

Dated: May 21, 2025
　　　　Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: _____/s/ John J. Bardo_____
JOHN J. BARDO, D.C. Bar #1655534
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 870-6770

*Attorneys for the United States of America*